UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

JOHN BROTHERSTON and JOAN GLANCY,   :
individually and as representatives of a class of
similarly situated persons, and on behalf of the   :
Putnam Retirement Plan,

   :

        Plaintiffs,                 Civil Action
   :   No. 15-13825-WGY

      v.                        :

PUTNAM INVESTMENTS, LLC, PUTNAM
INVESTMENT MANAGEMENT, LLC, PUTNAM   :
INVESTOR SERVICES, INC., the PUTNAM
BENEFITS ADMINISTRATION COMMITTEE, the :
PUTNAM BENEFITS INVESTMENT
COMMITTEE, ROBERT REYNOLDS, ELLEN   :
NEARY, and JOHN DOES 1-30,

   :

        Defendants.

   :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

James R. Carroll
Eben P. Colby
Michael S. Hines
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
500 Boylston Street
Boston, Massachusetts 02116
(617) 573-4800

Counsel for Defendants Putnam Investments,
LLC, Putnam Investment Management LLC,
Putnam Investor Services, Inc., Putnam
Benefits Administration Committee, Putnam
Benefits Investment Committee, Robert
Reynolds, Ellen Neary and John Does 1-30

Dated:  February 5, 2016

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................................................1

BACKGROUND ......................................................................................................................3

    A.    The Parties ...............................................................................................................3

    B.    The Plan ...................................................................................................................3

ARGUMENT ..........................................................................................................................5

I.     THE COMPLAINT FAILS TO STATE A CLAIM, AND
      SHOULD THEREFORE BE DISMISSED, BECAUSE PLAINTIFFS'
      ALLEGATIONS DO NOT SUPPORT A PLAUSIBLE ERISA VIOLATION ................5

    A.    Count I Should Be Dismissed Because The Complaint
         Is Devoid Of Well-Pleaded Allegations Of A Fiduciary Breach............................5

         1.    Allegations That Putnam "Loaded" The Plan With Putnam-
             Affiliated Investment Options Do Not State A Claim Because
             ERISA Permits Mutual Fund Companies To Offer Affiliated Funds..........6

         2.    Allegations Concerning "Excessive"
             Fees And Investment Performance Have Been
             Repeatedly Rejected As Insufficient To State A Claim..............................7

             (a)    Plaintiffs' Assertion That The Plan's Fees
                   Are Too High Is Not Supported By Factual
                   Allegations, And Courts Have Found Fee Ranges Identical
                   To The Plan's Fee Range Reasonable As A Matter Of Law...........8

             (b)    Allegations That Certain Funds
                   Underperformed Or Had No Performance
                   History Are Impermissibly Based On Hindsight..........................11

    B.    Counts II And III Should Be Dismissed Because
         The Plan's Investments In Putnam-Affiliated Funds
         Are Permitted Under ERISA's Prohibited Transaction Exemptions.....................12

    C.    Counts IV And V Should Be Dismissed
         Because There Can Be No Liability For Those
         Counts In The Absence Of An Underlying ERISA Violation...............................15

i

II.    PUTNAM, PUTNAM MANAGEMENT, MR. REYNOLDS, AND
MS. NEARY SHOULD BE DISMISSED BECAUSE PLAINTIFFS
DO NOT ALLEGE ADEQUATELY THAT THEY WERE FIDUCIARIES .................15

III.   IF THE COMPLAINT IS NOT DISMISSED -- AND IT SHOULD
BE -- PLAINTIFFS' CLAIMS SHOULD BE SUBSTANTIALLY NARROWED..........17

      A.    Plaintiffs Lack Standing To Pursue Claims Concerning
The Fifty-Six Plan Options In Which They Did Not Invest .................................17

      B.    Counts II And III -- Plaintiffs' Prohibited
Transaction Claims -- Should Be Dismissed Insofar
As They Purport To Challenge Transactions Barred By ERISA's
Six-Year Statute Of Repose Or Three-Year Statute Of Limitations......................18

CONCLUSION............................................................................................................................20

## **TABLE OF AUTHORITIES**

**CASES**                                                                    **PAGE(S)**

*Alves v. Harvard Pilgrim Health Care, Inc.*,
    204 F. Supp. 2d 198 (D. Mass. 2002) ...........................................................................8

*Amron v. Morgan Stanley Investment Advisors Inc.*,
    464 F.3d 338 (2d Cir. 2006)..........................................................................................9

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...............................................................................................5, 12

*Beddall v. State Street Bank & Trust Co.*,
    137 F.3d 12 (1st Cir. 1998).........................................................................................16

*Bell Atlantic Corp v. Twombly*,
    550 U.S. 544 (2007).....................................................................................................6

*Bunch v. W.R. Grace & Co.*,
    555 F.3d 1 (1st. Cir. 2009) .........................................................................................11

*Bunch v. W.R. Grace & Co.*,
    532 F. Supp. 2d 283 (D. Mass. 2008) ........................................................................15

*Commil USA, LLC v. Cisco Systems, Inc.*,
    135 S. Ct. 1923 (2015)...............................................................................................10

*David v. Alphin*,
    704 F.3d 327 (4th Cir. 2013) ......................................................................................19

*Dupree v. Prudential Insurance Co. of America*,
    No. 99-8337, 2007 WL 2263892 (S.D. Fla. Aug. 10, 2007) .......................................7

*Edes v. Verizon Communications, Inc.*,
    417 F.3d 133 (1st Cir. 2005).......................................................................................19

*Hecker v. Deere & Co.*,
    556 F.3d 575 (7th Cir. 2009) ............................................................................. *passim*

*Hull v. Policy Management Systems Corp.*,
    No. Civ. A. 3:00-778-17, 2001 WL 1836286 (D.S.C. Feb. 9, 2001)..............................16

*In re Lehman Bros. Securities & ERISA Litigation*,
    683 F. Supp. 2d 294 (S.D.N.Y. 2010)........................................................................17

i

*Lockheed Corp. v. Spink*,
    517 U.S. 882 (1996) .......................................................................................17

*Loomis v. Exelon Corp.*,
    658 F.3d 667 (7th Cir. 2011) .......................................................................10

*Mehling v. New York Life Insurance Co.*,
    163 F. Supp. 2d 502 (E.D. Pa. 2001) ..........................................................14

*Pegram v. Herdrich*,
    530 U.S. 211 (2000) .....................................................................................16

*Pension Benefit Guaranty Corp. v. Morgan Stanley Investment Management Inc.*,
    712 F.3d 705 (2d Cir. 2013) ..............................................................6, 11, 12

*Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp.*,
    632 F.3d 762 (1st Cir. 2011) .................................................................17, 18

*Rinehart v. Akers*,
    722 F.3d 137 (2d Cir. 2013) .........................................................................15

*Tibble v. Edison International*,
    729 F.3d 1110 (9th Cir. 2013) .....................................................................10

*Young v. General Motors Investment Management Corp.*,
    550 F. Supp. 2d 416 (S.D.N.Y. 2008) ..........................................................19

## STATUTES

29 U.S.C. § 1101 (ERISA § 401) ...............................................................................14

29 U.S.C. § 1104 (ERISA § 404) ..............................................................................5, 8

29 U.S.C. § 1106 (ERISA § 406) .............................................................................1, 12

29 U.S.C. § 1108 (ERISA § 408) ...............................................................................13

29 U.S.C. § 1113 (ERISA § 413) .........................................................................18, 19

29 U.S.C. § 1132 (ERISA § 502) ...............................................................................15

**OTHER AUTHORITIES**

Class Exemption Involving Mutual Fund In-House Plans Requested by the Investment
    Company Institute, 42 Fed. Reg. 18,734 (Mar. 31, 1977)……………………..….7, 13, 14

Notice of Proposed Rulemaking, Participant Directed Individual Account Plans,
    56 Fed. Reg. 10,724 (Mar. 13, 1991)............................................................................1, 6

Vanguard.com, https://about.vanguard.com/what-sets-vanguard-apart/why-ownership-matters
    (last visited Jan. 7, 2016) ......................................................................................................9

## PRELIMINARY STATEMENT

The core of Plaintiffs' First Amended Complaint (the "Complaint," cited as "Compl. ¶ __") is that Putnam Investments, LLC ("Putnam") and the other Defendants violated the Employee Retirement Income Security Act of 1974 ("ERISA") because they "loaded the Plan exclusively with Putnam's mutual funds" in order to "promote Putnam's mutual fund business and maximize profits at the expense of the Plan and its participants." (Compl. ¶ 3.)  The Complaint fails, however, because the Department of Labor ("DOL") itself permits a mutual fund company to offer its own mutual funds to its own employees through its in-house 401(k) plan.  Indeed, the DOL has made the common sense observation that it would be "contrary to normal business practice for a company whose business is financial management to seek financial management services from a competitor."  Notice of Proposed Rulemaking, Participant Directed Individual Account Plans, 56 Fed. Reg. 10,724, 10,730 (Mar. 13, 1991).  Moreover, while Plaintiffs use the word "exclusively," their own Complaint acknowledges that Plan participants also had a brokerage option and could invest directly in stocks, bonds, mutual funds, or just about anything else, from other companies, including Putnam's direct competitors.

Each of Plaintiffs' five Counts fail to state a claim.  Count I alleges that Defendants breached ERISA fiduciary duties by "select[ing] and retain[ing] high-cost proprietary mutual funds," "neglect[ing] to remove poorly-performing funds" from Putnam's 401(k) Plan (the Putnam Retirement Plan, the "Plan"), adding new funds to the Plan that had no performance history, and "fail[ing] to implement a process to monitor" the Plan's investments. (Compl. ¶¶ 117-18.)  Plaintiffs allege in Counts II and III that Defendants engaged in prohibited transactions in violation of 29 U.S.C. § 1106 (*id.* ¶¶ 121-31), Count IV alleges that Putnam and Putnam's Chief Executive Officer, Robert Reynolds, failed to adequately monitor Plan fiduciaries (*id.* ¶¶ 132-139), and Count V seeks "other appropriate equitable relief" (*id.* ¶¶ 140-

44).  Plaintiffs purport to bring their claims on behalf of all participants and beneficiaries of the

Plan "at any time on or after November 13, 2009."  (*Id.* ¶ 106.)

Each Count of the Complaint should be dismissed because the Plan

Document -- as permitted by ERISA and the DOL -- explicitly requires that Putnam-affiliated

mutual funds be offered as investments under the Plan.  Additionally, directly contrary to

Plaintiffs' theory, Plan participants are *not* limited to Putnam-affiliated investments because they

have access to thousands of mutual funds unaffiliated with Putnam, including funds offered by

Putnam's competitors, through the Plan's self-directed brokerage window.

Plaintiffs' additional allegations do not save the Complaint.  The allegation that

Putnam failed to implement a process to monitor Plan investments is wholly conclusory, as

Plaintiffs concede they have no knowledge of Defendants' processes concerning Plan

investments.  (*Id*. ¶ 104.)  The allegations that Defendants selected and maintained Putnam-

affiliated investment options with "excessive" fees and/or alleged underperformance are

inadequate to state a claim because: (i) the fees associated with Putnam's affiliated products are

within a range already found reasonable by other courts as a matter of law, and (ii) allegations of

underperformance -- *i.e.*, that fund managers should have picked other and different stocks and

bonds that performed better -- are based solely on impermissible hindsight.

The Complaint also suffers from numerous other fatal infirmities, including:

(i) ERISA's six-year statute of repose and three-year statute of limitations bars certain of

Plaintiffs' prohibited transaction claims; (ii) Putnam, Mr. Reynolds, Ellen Neary, Putnam's

current Head of Human Resources for one of Putnam's business units, and defendant Putnam

Investment Management, LLC are not Plan fiduciaries and (iii) Plaintiffs lack constitutional

standing to pursue claims in connection with funds in which they never invested.

2

# BACKGROUND

## A.    The Parties

Putnam manages and sells mutual funds.  Putnam Investment Management, LLC ("Putnam Management") provides investment management services to Putnam mutual funds. (Compl. ¶23.)  Putnam Investor Services, Inc. ("Putnam Services," and together with Putnam and Putnam Management, the "Putnam Companies") provides investor services to Putnam fund investors.  (*Id.* ¶ 24.)  The Putnam Benefits Administration Committee ("PBAC") is the administrator of the Plan (*id.* ¶ 23), and the Putnam Benefits Investment Committee ("PBIC") is alleged to be "responsible for managing the investments of the Plan" (*id.* ¶ 27).  Defendant Robert Reynolds is Putnam's Chief Executive Officer.  (*Id.* ¶ 29.)  Defendant Ellen Neary is alleged to be the Chair of the PBIC (*id.* ¶30), although she has never been a member of the PBIC.

Plaintiff John Brotherston is a current Plan participant, and Plaintiff Joan Glancy was a participant in the Plan, but withdrew all of her money years ago in the first quarter of 2010.  (*Id.* ¶¶ 12-13.)  The Complaint alleges that "[f]rom November 2009 to the present," Brotherston invested in thirty-one different funds offered within the Plan, while Glancy invested in fourteen different funds during the same time period.  (*Id.*)  The Complaint does not specifically identify the investment options that either Plaintiff held during that time period.[1]

## B.    The Plan

The Plan is a "defined contribution" 401(k) plan.  (Compl. ¶¶ 15-16.)  Through the Plan, all eligible Putnam employees may contribute tax-deferred savings to individual

---

[1]    Appendix A attached hereto (cited as "App. A") sets forth the ninety-five different investment options available in the Plan from November 2009 through November 13, 2015, the date this action was filed.  As set forth in Appendix A-2 through A-4, Brotherston invested in thirty-four different Plan options beginning in November 2009, while Glancy invested in fourteen different options.  In the aggregate, Plaintiffs invested in thirty-nine of the ninety-five separate investment options available in the Plan.  (*See* App. A.)

3

participant accounts.  (Summary Plan Description at 2, 4 (Compl. Ex. B) (cited as "SPD").)  In addition, Putnam makes voluntary contributions to employee accounts in the form of both matching contributions and discretionary contributions.  (*Id.* at 3-4.)  Putnam matches 100% of employees' contributions up to 5% of eligible compensation.  (*Id.* at 4.)  Putnam's matching and discretionary contributions are extremely generous.  For example, Putnam ***voluntarily*** contributed ***nearly $93 million*** to the Plan from 2009 through 2014.[2]  As of December 31, 2014, the Plan had more than 3,300 participants and $600 million in assets.  (2014 Form 5500, at 2; *id.*, Schedule H at 19 (Hines Decl. Ex. 7).)

The Plan is entirely participant-directed -- that is, each participant allocates the employee and employer contributions into any investment option available under the Plan.  (Compl. ¶ 20; SPD at 9.)  As of December 31, 2014, those options included a broad array of investment choices comprised of sixty-eight Putnam-managed mutual funds, four collective investment trusts managed by Putnam, as well as a brokerage window managed by TD Ameritrade through which participants have access to thousands of investments unaffiliated with Putnam.  (*See* 2014 Form 5500, Schedule C; *id.*, Schedule H at 18-19 (Hines Decl. Ex. 7).)  The Putnam-affiliated investment options reflect a variety of asset categories, investment strategies, and risk/return profiles.  (*See* Compl. ¶¶ 63-64.)

---

[2]     Putnam contributed $92,935,320 to the Plan from 2009 through 2014.  *See* 2009 Putnam Retirement Plan Form 5500 ("2009 Form 5500"), at Schedule H, Part II, Line 2a(1)(A) ($20,571,679) (Hines Decl. Ex. 2); 2010 Putnam Retirement Plan Form 5500 ("2010 Form 5500"), at Schedule H, Part II, Line 2a(1)(A) ($18,728,830) (Hines Decl. Ex. 3); 2011 Putnam Retirement Plan Form 5500 ("2011 Form 5500"), at Schedule H, Part II, Line 2a(1)(A)$12,762,099) (Hines Decl. Ex. 4); 2012 Putnam Retirement Plan Form 5500 ("2012 Form 5500"), at Schedule H, Part II, Line 2a(1)(A) ($12,802,946) (Hines Decl. Ex. 5); 2013 Putnam Retirement Plan Form 5500 ("2013 Form 5500"), at Schedule H, Part II, Line 2a(1)(A) ($13,516,117) (Hines Decl. Ex. 6); 2014 Putnam Retirement Plan Form 5500 ("2014 Form 5500"), at Schedule H, Part II, Line 2a(1)(A) ($14,553,649) (Hines Decl. Ex. 7).

## ARGUMENT

As set forth in the Motion to Dismiss submitted herewith, to survive a motion to dismiss a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  For the multiple independent reasons discussed below, the Complaint does not state a facially plausible claim.

## I.     THE COMPLAINT FAILS TO STATE A CLAIM, AND SHOULD THEREFORE BE DISMISSED, BECAUSE PLAINTIFFS' ALLEGATIONS DO NOT SUPPORT A PLAUSIBLE ERISA VIOLATION

### A.     Count I Should Be Dismissed Because The Complaint Is Devoid Of Well-Pleaded Allegations Of A Fiduciary Breach

Count I purports to assert a claim that Defendants breached their fiduciary duties under ERISA § 404.  ERISA § 404 imposes a "[p]rudent man standard of care" for fiduciaries of employee benefit plans.  29 U.S.C. § 1104(a).  The prudent man standard charges fiduciaries with, among other things, acting:  (1) "for the exclusive purpose of . . . providing benefits to participants and their beneficiaries[] and . . . defraying reasonable expenses" (*i.e.*, a duty of loyalty); and (2) "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use . . . " (*i.e.*, a duty of prudence).  *Id.* § 1104(a)(1)(A)-(B)).

Plaintiffs allege that Defendants acted disloyally and imprudently in violation of ERISA § 404(a)(1)(A)-(B) by "fail[ing] to implement a process to monitor the investments within the Plan and remove those investments that had become imprudent."  (Compl. ¶ 118.) According to the Complaint, Defendants inappropriately selected and retained Putnam-affiliated investments even though those funds allegedly (1) had expense ratios "far in excess" of non-affiliated funds and (2) performed poorly or had no performance history at all.  (*Id.* ¶¶ 117-18.)

5

Plaintiffs, however, do not support their theory of failure to implement a process with supporting facts.  Indeed, the Complaint **concedes** that Plaintiffs have no "actual knowledge of the specifics of Defendants' decision-making processes with respect to the Plan, including Defendants' processes for selecting, monitoring, and removing Plan investments."  (*Id.* ¶ 104.)  That acknowledgement alone is a sufficient basis for dismissing Count I.  *See Pension Benefit Guaranty Corp. v. Morgan Stanley Investment Management Inc.*, 712 F.3d 705, 721-22 (2d Cir. 2013) (affirming dismissal of ERISA claim because the complaint contained no factual allegations about defendant's knowledge or process of selecting and retaining plan investments).

Unable to plead any facts regarding Defendants' investment selection and monitoring processes, Plaintiffs' allege that they have "drawn reasonable inferences regarding these processes" based upon (1) the inclusion of Putnam-affiliated investment options in the Plan and (2) fees and performance of the Plan's investments.  (*See* Compl. ¶ 104.)  As discussed below, none of those allegations "nudge[]" Plaintiffs' claims of an inadequate process "across the line from conceivable to plausible," and therefore Count I should be dismissed.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

### 1.      Allegations That Putnam "Loaded" The Plan With Putnam-Affiliated Investment Options Do Not State A Claim Because ERISA Permits Mutual Fund Companies To Offer Affiliated Funds

The Complaint's allegations that Defendants "loaded the Plan exclusively with Putnam's mutual funds" and only offered Putnam-affiliated funds as "core investment options" are wrong and also do not support an inference of disloyalty or imprudence.  (Compl. ¶¶ 3, 62.)

*First*, there is nothing untoward about a mutual fund company offering its own mutual funds to its own employees in an in-house 401(k) plan.  Indeed, both Congress and the DOL recognize that financial-services organizations offer their investment products to in-house retirement plans.  *See, e.g.*, 56 Fed. Reg. at 10,730 (observing it would be "contrary to normal

business practice for a company whose business is financial management to seek financial management services from a competitor").  For this reason, ERISA's implementing regulations expressly allow mutual fund advisors and their affiliates to invest in affiliated mutual funds. (Class Exemption Involving Mutual Fund In-House Plans Requested by the Investment Company Institute, 42 Fed. Reg. 18,734 (Mar. 31, 1977) ("PTE 77-3").)  Consequently, courts have recognized that plan fiduciaries do not violate ERISA by offering affiliated investment products.  As one court held, "[s]imply because Prudential followed such a practice . . . does not give rise to an inference of disloyalty, especially where these practices are universal among plans of the financial services industry."  *Dupree v. Prudential Ins. Co. of Am.*, No. 99-8337, 2007 WL 2263892, at *45 (S.D. Fla. Aug. 10, 2007).

> *Second*, the allegation that Defendants "loaded" the Plan with affiliated products is wrong, as the Plan makes available to participants unaffiliated mutual funds and other investment products through a TD Ameritrade Self-Directed Brokerage Mutual Fund and Exchange Traded Fund window.  (*See* Compl. ¶¶ 21, 47; SPD at 8.)  Thousands of unaffiliated investment options are available to Plan participants through the brokerage window, including product offerings from Fidelity, Vanguard, State Street, and TIAA-CREF, among many others. (*See* 2014 Form 5500, Schedule C (Hines Decl. Ex. 7).)  The availability of those unaffiliated investment options is directly contrary to Defendants breaching their fiduciary duties.  *See Hecker v. Deere & Co.*, 556 F.3d 575, 586 (7th Cir. 2009) (affirming dismissal and noting that brokerage window offered access to a large universe of unaffiliated investment options).

### 2. Allegations Concerning "Excessive" Fees And Investment Performance Have Been Repeatedly Rejected As Insufficient To State A Claim

> As the Complaint acknowledges, "[t]he Plan's investment options are governed by the Plan Document."  (Compl. ¶ 21.)  Here, that written instrument requires fiduciaries to

"include . . . any publicly offered, open ended mutual fund (other than tax-exempt funds) that are generally made available to employer-sponsored retirement plans and underwritten or managed by Putnam Investments or one of its affiliates" among the Plan's investment options. (Plan Document ¶ 8.1, Compl. Ex. A, cited as "Plan Document".) ERISA requires fiduciaries to discharge their duties in accordance with the documents governing the plan insofar as those documents do not violate ERISA. 29 U.S.C. § 1104 (a)(1)(D). Indeed, "there can be no breach of fiduciary duty where an ERISA plan is implemented according to its written, nondiscretionary terms." *Alves v. Harvard Pilgrim Health Care, Inc.*, 204 F. Supp. 2d 198, 210 (D. Mass. 2002), *aff'd*, 316 F.3d 290 (1st Cir. 2003).

Accordingly, Defendants did not breach any fiduciary duty by including Putnam-affiliated investments among the Plan's options. Thus, Plaintiffs can only state a claim if they sufficiently allege that following the Plan Document itself was a violation of ERISA. Here, Plaintiffs allege that following the Plan Document violated ERISA because it resulted in the (1) selection and retention of investment options with "excessive" fees and (2) failure to remove underperforming funds and inclusion of investment options with no performance history. (Compl. ¶¶ 117-18.) Neither of those theories states a claim for breach of fiduciary duty.

> **(a)   Plaintiffs' Assertion That The Plan's Fees Are Too High Is Not Supported By Factual Allegations, And Courts Have Found Fee Ranges Identical To The Plan's Fee Range Reasonable As A Matter Of Law**

Plaintiffs allege that the aggregate Plan fees -- which they claim to be 0.73% of Plan assets -- are higher than fees charged by other plans of similar size. (Compl. ¶ 67.) Plaintiffs also allege that the fees charged by the funds in the Plan are "many times higher" than the fees charged by allegedly "comparable" funds from Putnam's competitors. (*Id.* ¶ 72.) Those allegations are inadequate as a matter of law for at least three independent reasons.

*First*, the funds from Putnam's competitors are available to Plan participants through the Plan's self-directed brokerage option.  (*See* 2014 Form 5500, Schedule C (Hines Decl. Ex. 7.).)  Moreover, many of Plaintiffs' comparison funds are Vanguard offerings, but comparing the Plan's fees to those of Vanguard are meaningless.  (*See* Compl. ¶ 72.)  Indeed, in the context of analogous claims under the Investment Company Act, courts have recognized that Vanguard is not an appropriate comparison, as it is an entity that operates "at-cost" and specifically markets itself as a low-cost mutual fund provider.[3]  *See, e.g.*, *Amron v. Morgan Stanley Inv. Advisors Inc.*, 464 F.3d 338, 345-46 (2d Cir. 2006) ("That a mutual fund has an expense ratio higher than Vanguard, a firm known for its emphasis on keeping costs low, raises little suspicion").

*Second*, Plaintiffs' comparison of the Plan's aggregate fees to a study purporting to set forth the average aggregate fees of all similarly-sized plans does not support an inference of a fiduciary breach.  (*Id.* ¶ 67.)  As an initial matter, "[t]he fact that it is possible that some other funds might have had even lower ratios is beside the point; nothing in ERISA requires every fiduciary to scour the market to find and offer the cheapest possible fund . . . ."  *Hecker*, 556 F.3d at 586.  Moreover, the Complaint does not identify the types of plans, the plan sponsors, or the available investment options among the various plans that comprise the comparison.  For example, the Complaint does not purport to compare the Plan to similarly-sized plans of financial service providers, whose plans are comprised of mutual funds and similar investment products (as opposed to plans that offer low-cost employer stock as investment options).  Absent such a comparison to ***similar*** plans, Plaintiffs' aggregate-fee allegations are meaningless.  The

---

[3]        Vanguard states that "the Vanguard funds own the management company known as Vanguard" and "[u]nder its agreement with the funds, Vanguard must operate 'at-cost' -- it can charge the funds only enough to cover its cost of operations."  *See* Vanguard.com, https://about.vanguard.com/what-sets-vanguard-apart/why-ownership-matters/ (last visited Feb. 4, 2016).

comparison of aggregate fees is inappropriate for the additional reason that the Plan is a 100%

participant-directed plan (in other words, the aggregate fees are a reflection of participants'

investment choices).  Accordingly, aggregate fees say nothing of the fiduciary process of

investment selection and monitoring.

        *Third*, the fees here -- which Plaintiffs allege to be between 8 basis points and 137

basis points (*i.e.*, 0.08% to 1.37% of fund assets; Compl. ¶ 72) -- are within a range found

reasonable by other courts as a matter of law.  For example, in *Hecker*, the Seventh Circuit

affirmed dismissal of claims that defendants breached ERISA fiduciary duties by selecting

investment options with excessive fees.  556 F.3d at 586.  The court observed that there was a

wide range of expense ratios from 7 basis points to just over 100 basis points (.07% to 1.00%)

and that "all of these funds were also offered to investors in the general public, and so the

expense ratios necessarily were set against the backdrop of market competition."  *Id.*; *see also*

*Tibble v. Edison Int'l*, 729 F.3d 1110, 1135 (9th Cir. 2013), *vacated on other grounds*, 135 S. Ct.

1923 (2015) (rejecting excessive fee arguments where expense ratios varied from 3 basis points

to 200 basis points); *Loomis v. Exelon Corp.*, 658 F.3d 667, 669-70 (7th Cir. 2011) (rejecting

excessive fee arguments where expense ratios ranged from 3 basis points to 96 basis points).

        In sum, the Putnam-affiliated funds are offered to investors in the general public,

participants are offered access to a wide variety of unaffiliated funds through a brokerage

window, and the Plan offers "participants a menu that includes high-expense, high-risk, and

potentially high-return funds, together with low-expense index funds that track the market, and

low-expense, low-risk, modest-return bond funds."  *Loomis*, 658 F.3d at 673.  Under such

circumstances, "no rational trier of fact could find, on the facts alleged in this Complaint, that

[Defendants] failed to satisfy" the fiduciary duties imposed by ERISA.  *Hecker*, 556 F.3d at 586.

**(b)    Allegations That Certain Funds
Underperformed Or Had No Performance
History Are Impermissibly Based On Hindsight**

Similarly inadequate to support a claim for breach of fiduciary duty are Plaintiffs'

allegations that two funds underperformed (Compl. ¶¶ 81-89) or that certain funds were

allegedly added to the Plan to "provid[e] seed money" to those funds (*id.* ¶¶ 90-98).

*First*, hindsight allegations of past underperformance of *two* of the current

*seventy-two* Putnam-affiliated investment options do not state a plausible claim of imprudence as

a matter of law.  It is well established under ERISA that the test for imprudence "is one of

*conduct*, and not a test of the result of performance of the investment." *Bunch v. W.R. Grace &*

*Co.*, 555 F.3d 1, 7 (1st Cir. 2009) (quotation omitted).  Merely alleging that an investment had

poor performance is therefore not sufficient to state a claim for breach of fiduciary duty -- a

plaintiff "cannot rely, after the fact, on the magnitude of the decrease in the relevant investment's

price." *Morgan Stanley*, 712 F.3d at 718 (quotation and alteration omitted).  Instead, Plaintiffs

must "allege[] facts that, if proved, would show that an adequate investigation would have

revealed to a reasonable fiduciary that the investment at issue was improvident." *Id.* (quotation

omitted).

Here, Plaintiffs offer no substantive allegations other than the Putnam Voyager

Fund and the Putnam Fund For Growth & Income should have been removed from the Plan

because of alleged poor performance.  (Compl. ¶¶ 81-89.)  But that sort of hindsight evaluation

of past performance is a legally impermissible attempt to use hindsight to evaluate prudence, and

falls far short of providing a plausible inference that the Plan's offering of the full range of

Putnam's products was a breach of fiduciary duty.  Indeed, in any menu of diversified investment

products there will be outperformers and underperformers.  Plaintiffs' single focus on alleged

underperformance of two investment options (out of seventy-two investment options, or less than

11

3%) is retrospective hindsight not permitted under ERISA.  *Morgan Stanley*, 712 F.3d at 722-23

(holding that hindsight analysis "without further factual allegations" is insufficient to state a

claim).

        *Second*, equally unavailing is Plaintiffs' allegation that "Defendants have

improperly used the Plan as a vehicle for providing seed money for Putnam's newest funds."

(Compl. ¶ 94.)  It is implausible that Defendants used the Plan to "seed" new funds, because

Defendants had no ability to direct any money into those funds, as the Plan is self-directed and

participants had complete discretion to make investment elections.  (*See* Compl. ¶ 20.)  Rather,

there is a "common sense," "obvious alternative explanation" for the addition of new investments

to the Plan's menu.  *Iqbal*, 556 U.S. at 679, 682 (internal quotations omitted).  As discussed

above, the Plan Document requires fiduciaries to "include . . . any publicly offered, open ended

mutual fund (other than tax-exempt funds) that are generally made available to employer-

sponsored retirement plans and underwritten or managed by Putnam Investments or one of its

affiliates" among the Plan's investment options.  (Plan Document ¶ 8.1.)  By following the Plan

Document, Defendants provided participants with the greatest choice of investment options.

    **B.**    **Counts II And III Should Be Dismissed Because**
              **The Plan's Investments In Putnam-Affiliated Funds Are**
              **Permitted Under ERISA's Prohibited Transaction Exemptions**

        Count II (asserted against all Defendants except Putnam Management and Putnam

Services) and Count III (asserted against all Defendants except Putnam Services) allege that

Defendants engaged in prohibited transactions in violation of ERISA § 406, 29 U.S.C. § 1106 by

(i) causing the Plan to exclusively utilize Putnam-affiliated funds that generate revenue for the

Putnam Companies (Count II, Compl. ¶ 122) and (ii) paying investment management fees and

expenses to Putnam and Putnam Management out of Plan assets (Count III, Compl. ¶ 127).

These claims should be dismissed for at least two reasons.

*First*, ERISA specifically permits these transactions.  ERISA § 408 and DOL implementing regulations provide a wide range of exemptions from prohibited transactions, including exemptions permitting an investment management company to offer affiliated funds in its 401(k) plan.  29 U.S.C. § 1108; PTE 77-3.  PTE 77-3 expressly permits retirement plans to invest in affiliated funds registered under the Investment Company Act of 1940 provided there are no commissions or other extraneous fees, and the investments are offered to the plan on the best available terms.[4]  Moreover, ERISA §§ 408(b)(2) and (c)(2) provide that the prohibited transaction rules do not apply to arrangements with a party in interest or a fiduciary for payment of reasonable expenses for services rendered.  29 U.S.C. § 1108.

Here, the Putnam-affiliated mutual funds in which the Plan invests satisfy all of the requirements for PTE 77-3 and ERISA § 408 exemption.  The investment mutual funds include "any publicly offered, open-end mutual fund (other than tax-exempt funds) that are generally made available to employer-sponsored retirement plans and underwritten or managed by Putnam Investments or one of its affiliates."  (Plan Document ¶ 8.1.)  The Plan is only offered to employees of Putnam or its affiliates (Compl. ¶ 18), and is not alleged to pay a sales commission, redemption fees, or any other fee beyond the standard advisory fees paid by the investment funds (and not by the Plan).  Moreover, the Complaint specifically alleges that the Plan was invested in the lowest-cost Putnam share classes at least through 2012, satisfying the requirement that the Plan have no less favorable terms of participation than are offered to other

---

[4]       PTE 77-3 permits a plan to purchase "shares of an open-end investment company registered under the Investment Company Act of 1940 by an employee benefit plan covering only employees of such investment company, employees of the investment adviser or principal underwriter for such investment company, or employees of any affiliated person . . . of such investment adviser or principal underwriter . . . ."  42 Fed. Reg. at 18,734-35.  The plan also must not:  (a) "pay any investment management, investment advisory or similar fee" except for the payment by the fund of investment advisory fees; (b) pay a redemption fee other than to the fund; (c) pay a sales commission; and (d) have dealings with the investment fund "on a basis no less favorable to the plan than such dealings are with other shareholders of" the fund.  *Id.* at 18,735.

investors.  (Compl. ¶ 76(a).)  Although the Complaint does allege that Putnam created a lower-cost R6 share class for certain funds in 2012, and that the Plan transitioned to the R6 share class for all such funds only ten months later, the Complaint does not allege anything about the process undertaken to make that transition or that the R6 share class attracted any other retirement plan investors during those ten months.  (*Id.*)

Where -- as here -- plaintiffs fail to plead the non-applicability of the foregoing exemptions, courts have dismissed prohibited transaction challenges premised upon the offering of affiliated funds.  For example, in *Mehling v. New York Life Insurance Co.*, plaintiffs alleged that the investment of 401(k) plan assets in affiliated mutual funds violated ERISA's prohibited transactions provisions.  163 F. Supp. 2d 502, 510 (E.D. Pa. 2001).  In dismissing plaintiffs' prohibited transaction claims, the court held that "[p]laintiffs do not allege that the fees paid by the [p]lans are not in compliance with the requirements of PTE 77-3, or that the [p]lans have had dealings with the [affiliated funds] on terms that are less favorable than are offered to other shareholders."  *Id.*  The same result is warranted here.

*Second*, Count III should be dismissed for the independent reason that the fees paid for managing Putnam-affiliated mutual funds are paid by the mutual funds themselves, not by the Plan.  ERISA expressly provides that the assets of mutual funds, which are used to pay the funds' management fees, are not considered assets of a plan (only the mutual fund shares owned by the plan are plan assets):  "In the case of a plan which invests in any security issued by [a mutual fund], the assets of such plan shall be deemed to include such security but shall not, solely by reason of such investment, be deemed to include any assets of such [mutual fund]."  29 U.S.C. § 1101(b)(1).  Accordingly, payment of the affiliated funds' management fees are not assessed against "assets of the [P]lan."  *See Hecker*, 556 F.3d at 584 ("Once the fees are collected

from the mutual fund's assets and transferred to one of the [fund company's entities], they become [the fund company's] assets -- again, not assets of the [p]lans").

### C. Counts IV And V Should Be Dismissed Because There Can Be No Liability For Those Counts In The Absence Of An Underlying ERISA Violation

Count IV asserts that Putnam and Mr. Reynolds failed to monitor the fiduciaries they had responsibility for appointing, including by failing to remove appointees who maintained purportedly imprudent investments (Compl. ¶¶ 132-39), and Count V purports to seek "other equitable relief" under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), against the Putnam Companies (*id.* ¶¶ 140-44.)  Those Counts should be dismissed in their entirety "as derivative of Plaintiffs' failed duty of prudence claim.  Plaintiffs cannot maintain a claim for breach of the duty to monitor by" Putnam and Mr. Reynolds, or seek equitable relief, "absent an underlying breach of the duties imposed under ERISA," which, for the reasons discussed above, fail to state a claim.  *See Rinehart v. Akers*, 722 F.3d 137, 154 (2d Cir. 2013), *vacated on other grounds*, 134 S. Ct. 2900 (2014); *accord, e.g.*, *Bunch v. W.R. Grace & Co.*, 532 F. Supp. 2d 283, 292 (D. Mass. 2008), *aff'd*, 555 F.3d 1 (1st Cir. 2009) (dismissing claim of failure to monitor fiduciaries where there was no underlying breach of fiduciary duty).

## II. PUTNAM, PUTNAM MANAGEMENT, MR. REYNOLDS, AND MS. NEARY SHOULD BE DISMISSED BECAUSE PLAINTIFFS DO NOT ALLEGE ADEQUATELY THAT THEY WERE FIDUCIARIES

Counts I, II, and III -- which are asserted against Defendants in their capacities as alleged fiduciaries (*see* Compl. ¶¶ 119, 125, 131 (citing 29 U.S.C. § 1109)) -- should be dismissed against each of Putnam, Putnam Management, Mr. Reynolds and Ms. Neary because the Complaint fails to allege that any of those Defendants were fiduciaries with respect to the selection of investment options.

The Plan does not name any of those Defendants as a fiduciary.  (*See* Plan ¶ 12.1 (identifying PBAC and PBIC as Plan fiduciaries).)  Accordingly, "the threshold question is . . . whether [the defendant] was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint."  *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000).  Where -- as here -- ERISA claims concern the management of plan assets, a hallmark of so-called "functional" fiduciary responsibility is control over investment decisions.  *See Beddall v. State Street Bank & Trust Co.*, 137 F.3d 12, 18 (1st Cir. 1998) ("The key determinant of whether a person qualifies as a functional fiduciary is whether that person exercises discretionary authority in respect to, or meaningful control over . . . [plan] assets (such as by rendering investment advice).").

Plaintiffs do not plausibly allege that Putnam, Putnam Management, or Mr. Reynolds in fact exercised control over the Plan's investments.  Courts have dismissed claims against parties that lack such control.[5]  *See, e.g., Hull v. Policy Mgmt. Sys. Corp.*, No. Civ. A. 3:00-778-17, 2001 WL 1836286, at *3, 6 (D.S.C. Feb. 9, 2001) (dismissing claims and holding that although the plan allocated certain duties to the sponsor, "[n]othing in the Plan documents . . . suggest[ed] that [the sponsor's] fiduciary responsibility extend[ed] to investment decisions").

Instead, Plaintiffs conclusorily allege, without further detail, that Putnam Management is a fiduciary "because it exercises authority or control" over Plan assets and "renders investment advice for a fee."  (Compl. ¶ 23.)  But, as discussed above, mutual fund assets are not "plan assets" under ERISA.  (*See supra*, Argument Section I.B, at 12-15.)

---

[5]     Plaintiffs' allegation that the Trust Agreement grants Putnam the authority over investment decisions is mistaken.  The Trust Agreement identifies the PBIC -- not Putnam -- as "the fiduciary responsible for the investments under The Putnam Retirement Plan."  (Trust Agreement for the Putnam Retirement Plan Trust ["Trust Agreement"] (Hines Decl. Ex. 23).)

Plaintiffs further allege that Putnam and Mr. Reynolds are fiduciaries by virtue of their authority to amend Plan provisions.  (*Id.* ¶¶ 22, 29.)  But the Supreme Court has held that amending a plan is the function of a settlor -- not a fiduciary.  *Lockheed Corp. v. Spink*, 517 U.S. 882, 890 (1996) ("When employers undertake [to adopt, modify, or terminate welfare plans], they do not act as fiduciaries, but are analogous to the settlors of a trust.").

Similarly inadequate are allegations that Putnam and Mr. Reynolds have the power to appoint or remove members of the PBAC and PBIC.  (Compl. ¶¶ 22, 29.)  This authority by itself does not render either Defendant a fiduciary with respect to those committees' actions, particularly where Plaintiffs do not allege that the Defendants breached any duty in making committee appointments.  *See In re Lehman Bros. Sec. & ERISA Litig.*, 683 F. Supp. 2d 294, 299 (S.D.N.Y. 2010), *aff'd sub nom. Rinehart v. Akers*, 722 F.3d 137 (2d Cir. 2013), *vacated on other grounds*, 134 S. Ct. 2900 (2014) (dismissing ERISA claims against directors predicated on authority to appoint and remove members of compensation committee where there was no allegation that directors breached duty by appointing committee members).

Plaintiffs' allegations that Ms. Neary exercised control over investment decisions as Chair of the PBIC and signed the Trust Agreement in that capacity are wrong.  (Compl. ¶ 30.) Ms. Neary was never even a member of the PBIC and did not sign the Trust Agreement.  (*See* Trust Agreement (Hines Decl. Ex. 23).)  Thus, the Complaint does not plausibly allege that Ms. Neary exercised control over the Plan's investments and she should be dismissed.

III.   **IF THE COMPLAINT IS NOT DISMISSED -- AND IT SHOULD BE -- PLAINTIFFS' CLAIMS SHOULD BE SUBSTANTIALLY NARROWED**

A.   **Plaintiffs Lack Standing To Pursue Claims Concerning The Fifty-Six Plan Options In Which They Did Not Invest**

Plaintiffs lack constitutional standing to pursue claims concerning investment options in which they did not invest.  *See Plumbers' Union Local No. 12 Pension Fund v.*

*Nomura Asset Acceptance Corp.*, 632 F.3d 762 (1st Cir. 2011).  In *Nomura*, three pension funds brought a putative class action against Nomura, eight trusts, and several other defendants alleging violations of the federal securities laws in connection with the trusts' investments in mortgage-backed securities.  *Id.* at 765-66.  Although the three named plaintiffs had invested in only two of the eight trusts, they purported to represent a class comprised of investors in all eight trusts.  *Id.* at 766-67.  In affirming dismissal of the complaint, the First Circuit held that to have constitutional standing to bring claims on behalf of a class, there must be an "identity of issues" such that "claims of the named plaintiffs necessarily give them -- not just their lawyers -- essentially the same incentive to litigate the counterpart claims of class members."  *Id.* at 770.  The "named plaintiffs have no stake in establishing liability as to misconduct involving the sale of . . . certificates" issued by trusts in which they did not invest; accordingly, "the necessary identity of issues and alignment of incentives" was lacking.  *Id.* at 771.

Here, the Plan offered ninety-five different investment options during the putative class period.  (*See* App. A.)  In the aggregate, Plaintiffs invested in only thirty-nine of those ninety-five investment options (*see* Appendix A-2 through Appendix A-4).  As in *Nomura*, Plaintiffs lack standing pursue any of their claims on behalf of the fifty-six investment options in which they did not invest.  (*See* App. A-1.)

**B.    Counts II And III -- Plaintiffs' Prohibited Transaction Claims -- Should Be Dismissed Insofar As They Purport To Challenge Transactions Barred By ERISA's Six-Year Statute Of Repose Or Three-Year Statute Of Limitations**

ERISA § 413 establishes both (1) a six-year statute of repose and (2) a three-year statute of limitations.  29 U.S.C. § 1113.  ERISA's six-year statute of repose bars any action brought six years "after . . . the date of the last action which constituted a part of the breach or violation."  *Id.* § 1113(1)(A).  Multiple courts have held that for limitations purposes, a prohibited transaction occurs when a plan makes the initial decision to select an affiliated fund as

an investment option.  For example, in *David v. Alphin*, the Fourth Circuit affirmed summary dismissal of prohibited transaction claims premised upon the offering of affiliated mutual funds in a 401(k) investment menu, because those funds were added to the plan more than six years prior to commencement of the action.  704 F.3d 327, 339-41 (4th Cir. 2013).  The court rejected appellants' argument that the failure to remove the affiliated funds tolled the statute of repose. *Id.* at 341.  In that regard, the court held "[t]he only action that can support an alleged prohibited transaction is the initial selection of the affiliated funds, which undisputedly occurred [more than six years prior to the filing of the action]."  *Id.*

Similarly, ERISA's statute of limitations provides that no action may be brought "three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation."  29 U.S.C. § 1113(2).  In assessing the actual knowledge element of ERISA's limitation period, the First Circuit has made clear that a plaintiff may not ignore the obvious: "we do not think Congress intended the actual knowledge requirement to excuse willful blindness by a plaintiff."  *Edes v. Verizon Commc'ns, Inc.*, 417 F.3d 133, 142 (1st Cir. 2005). Accordingly, "actual knowledge" means knowledge of the material or essential facts constituting the alleged violation.  *Id.* at 142 (actual knowledge occurs when "a plaintiff knows the essential facts of the transaction or conduct constituting the violation") (quotation omitted).  Moreover, courts have repeatedly held that documents provided to plan participants establish actual knowledge for ERISA limitations purposes.  *See Young v. Gen. Motors Inv. Mgmt. Corp.*, 550 F. Supp. 2d 416, 420 (S.D.N.Y. 2008), *aff'd*, F. App'x 31 (2d Cir. 2009).

In this case, under ERISA's statute of repose any affiliated investments that were added to the Plan more than six years prior to the commencement of this action (*i.e.*, November 13, 2009) cannot form the basis of a prohibited transaction claim.  As set forth in Appendix A-2

19

through A-4, of the thirty-nine Plan options in which Plaintiffs invested, twenty-nine were added

to the Plan prior to November 13, 2009.  (*See* App. A-2, entries 1-8; App. A-3, entries 1-5; and

App. A-4, entries 1-16.)  Similarly, as set forth in Appendix A-4, one investment option in which

Brotherston invested was added to the Plan after November 2009, but more than three years prior

to the filing of the Complaint (*i.e.*, prior to November 13, 2012), and therefore cannot form the

basis of a prohibited transaction claim under ERISA's three-year limitations period.

Accordingly, of the thirty-nine investment options in which Plaintiffs invested, prohibited

transaction claims based on thirty of those options are barred by ERISA's repose and limitations

periods, leaving claims based on only nine investment options.[6]

## CONCLUSION

For all of the foregoing reasons, Defendants' motion to dismiss should be granted.

Dated:  February 5, 2016
　　　Boston, Massachusetts

Respectfully submitted,

 /s/ James R. Carroll
James R. Carroll (BBO #554426)
Eben P. Colby (BBO #651456)
Michael S. Hines (BBO #653943)
SKADDEN, ARPS, SLATE
　MEAGHER & FLOM LLP
500 Boylston Street
Boston, Massachusetts 02116
(617) 573-4800
james.carroll@skadden.com
eben.colby@skadden.com
michael.hines@skadden.com

Counsel for Defendants

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants on February 5, 2016.

Dated:  February 5, 2016　　/s/ Michael S. Hines
　　　　　　　　　　　　　Michael S. Hines

---

[6]　　Even if the Court were to consider investment options in which Plaintiffs did not invest -- and it should not for the reasons discussed *supra*, Argument Section III.A, at 17-18 -- prohibited transaction claims based on sixty-one of the ninety-five total options are time barred.  (*See* App. A-1, entries 1-31; App. A-2 entries 1-8; App. A-3, entries 1-5; and App. A-4 entries 1-17.)