1               UNITED STATES DISTRICT COURT

2                 DISTRICT OF MASSACHUSETTS

3                           No. 1:15-cv-13825-WGY

4

5   JOHN BROTHERSTON, Individually and as Representative
    of a Class of Similarly-Situated Persons, and on
6   Behalf of the Putnam Retirement Plan,
              Plaintiffs

7

8   vs.

9

10  PUTNAM INVESTMENTS, LLC, et al
              Defendants

11

12                      * * * * * * * * *

13

14              For Hearing Before:
                Judge William G. Young
15         At Suffolk University Law School

16

                   Motion to Dismiss

17

18              United States District Court
                District of Massachusetts (Boston)
19              One Courthouse Way
                Boston, Massachusetts 02210
20              Wednesday, March 9, 2016

21
                        * * * * * * * *
22

23         REPORTER: RICHARD H. ROMANOW, RPR
                  Official Court Reporter
24             United States District Court
        One Courthouse Way, Room 5510, Boston, MA 02210
25                bulldog@richromanow.com

```
1              A P P E A R A N C E S

2

3   KAI H. RICHTER, ESQ.
        Nichols Kaster, PLLP
4       4600 IDS Center
        80 South Eight Street
5       Minneapolis, MN 55402
        (612) 256-3200
6       Email: Krichter@nka.com
   and
7   JACOB A. WALKER, ESQ.
        Block & Leviton, LLP
8       155 Federal Street, Suite 400
        Boston, MA 02110
9       (617) 398-5600
        Email: Jake@blockesq.com
10      For Plaintiffs

11
    JAMES R. CARROLL, ESQ.
12      Skadden, Arps, Slate, Meagher & Flom, LLP
        500 Boylston Street
13      Boston, MA 02116
        (617) 573-4800
14      Email: James.carroll@skadden.com
        For Defendants

15

16

17

18

19

20

21

22

23

24

25
```

1          P R O C E E D I N G S

2          (Begins, 2:20 p.m.)

3          THE CLERK:  Now hearing Civil Matter 15-13825,

4     Brotherston versus Putnam Investments.

5          MR. CARROLL:  James Carroll, your Honor, for the

6     Putnam defendants.

7          MR. RICHTER:  Kai Richter and Jacob Walker for the

8     plaintiffs.

9          THE COURT:  All right.  Now, Mr. Carroll, this is

10    your motion and I want to hear you, but let me ask this

11    question first, a factual question.

12          Who did sign this trust agreement?

13          MR. CARROLL:  Edward Wayland, a member of the

14    PBIC, that entity is already a defendant in the case.

15          THE COURT:  Yeah, very well.  All right.

16          Now, it seems to me from my limited -- I have read

17    to prepare for the hearing on this motion but we're in

18    an area where the cases are quite recent.  Litigation in

19    this area is going to turn on whether the people they've

20    sued are fiduciaries, at least as to the motion to

21    dismiss.  So Putnam is a fiduciary.  Well, let me be --

22    Putnam Investments here is a fiduciary.

23          MR. CARROLL:  The parties that should be out for

24    not being fiduciaries --

25          THE COURT:  All right, go at it that way, that's

1    what I --

2         MR. CARROLL:  Mr. Reynolds, who's not a member of

3    the Putnam Benefit Investment Committee, his role is of

4    appointing such members, and there is no claim in the

5    case with respect to appointment, the claims deal with

6    monitoring and choosing the investments, and that's done

7    by the PBIC, which is properly named as a defendant

8    fiduciary.  Ms. Neary has nothing to do with anything,

9    never should have been --

10        THE COURT:  That's why I asked you the question I

11   asked you.

12        MR. CARROLL:  And Putnam -- the Putnam Investments

13   may be in the case but the other Putnam entities do not

14   belong in the case, and Putnam Services is named in just

15   one count, Count 5, the miscellaneous count, which

16   falls, if as I urge, the other ones do as well.

17        THE COURT:  Yes.  All right.  Go ahead and develop

18   your argument.

19        MR. CARROLL:  So you're very much correct in

20   noting that the litigation in this area is new and

21   principally I think my remarks on this motion are driven

22   by the Supreme Court's statement in *Dudenhoeffer* and in

23   that case what *Dudenhoeffer* says, Justice Breyer remarks

24   that "The 12(b)(6) mechanism is important for weeding

25   out meritless claims," and that's important given the

1    way the law is developed in this area and how easy it's

2    been to grant certain kinds of claims here in court.

3    That's the first pillar of the argument.

4         The second is the rather candid admission found in

5    Paragraph 104 of the complaint and the plaintiffs, at

6    104, and I credit them for it, acknowledge that they

7    have no factual information with respect to the plan

8    including specifically the selection and monitoring of

9    investments.  Nothing.  They've got what's on the public

10   record, they've got what they have in their benefit

11   statements as the two former Putnam employee plan

12   participants.  That's it.

13        So the question then on this motion is whether the

14   facts as alleged draw an inference of inappropriate

15   fiduciary behavior or if they draw a much more

16   compelling inference of appropriate behavior?  So what

17   do we have?  It's a cluster of just a few points.

18        THE COURT:  But don't -- I'm not weighing

19   competing inferences, I have to take all the plausible

20   inferences against you at this stage, isn't that right?

21        MR. CARROLL:  It's certainly correct that you take

22   all the factual allegations stated as true, I'm not

23   going to -- my argument doesn't depend on disputing any

24   of those, but what I'm saying is you look at them all

25   and accept every one of them and they don't add up to a

```
 1   plausible inference of fiduciary breach, and here's why.
 2        The first cluster, colorful as it may be, is a
 3   series of allegations that say, "Well, Putnam, you've
 4   loaded up your 401K plan with your own funds, it's
 5   hardly surprising that a mutual fund company would use
 6   its own mutual funds to make available to its own
 7   employees who are themselves in part responsible for
 8   making those funds successful."  So what inference can
 9   be drawn from that?  Nothing.  The plan itself
10   authorizes the utilization of the Putnam funds.
11        The Department of Labor, in recognition that
12   financial services companies who compete with one
13   another in the marketplace will want to use their own
14   products made a specific statutory exemption, this PTE
15   77-3, permitting it, where in other circumstances this
16   could be an illegal prohibited transaction under ERISA,
17   here it is not.  There can be no unduly negative
18   influence from simply doing what the law allows.
19        Moreover the plan includes a brokerage window.
20   Any participant who wants to can use any fund that they
21   like.  They're not required at all to use Putnam funds.
22   And the complaint's lengthy recitation of other funds --
23        THE COURT:  It's alleged that you've made that
24   more difficult?
25        MR. CARROLL:  It's alleged, respectfully, your
```

1    Honor, in a generic fashion the plaintiff says that the

2    self-directed brokerage windows are more difficult.  You

3    won't find any allegations specific to this one.

4    There's no allegation in here specific to the Putnam

5    plan that it's more difficult in any way at all.  I mean

6    there's no allegation that either of the plaintiffs

7    tried to use it.  There's nothing there but

8    generalities.  Nothing.  They can pick whatever fund

9    they want and every single fund mentioned in the

10   complaint -- that dozens of additional funds that the

11   plaintiffs say should have been better are available to

12   these plan participants, if they want them, and that's

13   true through the entirety of this period.

14        The second cluster of allegations has to do with

15   the fees, the plaintiffs say, "Well, the fees are too

16   high," "The fees are too high," and they point out that

17   the fees for the funds, and they're very different kinds

18   of funds, range from 8 basis points, so .008 percent to

19   1.37 percent.  How does that state a claim?  Well, let's

20   take a look at what other cases have said.

21        The *Tibble* case, a leading ERISA case, has looked

22   at funds where that range went up to 200 basis points

23   and said "That's fine," pointing out, as is applicable

24   here, that these same funds are available for the same

25   costs or more on the public marketplace.  It's an

1    intensely-competitive business.  There's nothing

2    untoward about a range of funds that tops out at 137

3    basis points and most of them are much much more towards

4    the middle.

5         Plaintiffs also -- moving to the third cluster of

6    allegations, say, "Well, the performance wasn't good

7    enough, we'd have liked the funds to do better."  That

8    mistakes prudence for performance.  You can't measure

9    prudence with the benefit of hindsight and say "You

10   should have picked different stocks, you should have

11   sold different bonds."  This complaint, on its face,

12   picks two funds to complain about out of 70 options and

13   in those two funds, even on this complaint, it's around

14   Paragraph 80 and following, you can see what happens

15   with underperformance.

16        The portfolio managers are changed.  That's

17   alleged on the face of this complaint, quite helpfully.

18   It shows that the fiduciaries are not sitting there

19   doing nothing.  This line-up of funds is actively

20   managed and changes happen when necessary.

21        Your Honor, the last cluster of arguments that

22   they make have to do with this concept of seeding.  The

23   criticism is this.  When Putnam develops a new mutual

24   fund it's made available for its plan participants, if

25   they wish to invest in it, when it shouldn't be, it

1    should sit on the sideline for some indeterminate amount

2    of time before the participants can invest in it, if

3    they want to, and the plaintiffs argue that you're using

4    the plan to put seed money into the funds.  It simply

5    doesn't make sense to draw an untoward inference from

6    it.

7          First, no participant is required to put any money

8    in it at all, putting something in a line-up doesn't

9    seed it with anything.  Second, it's natural in a mutual

10   fund company for the professionals who work on that fund

11   to, as they say in the business, "eat their own

12   cooking."  So if you're a portfolio manager you want to

13   have some money in your funds and that's the way to do

14   it with their retirement money if they choose to.  No

15   requirement from Putnam, no influence on Putnam, nothing

16   in this complaint is alleged to be improper about that

17   other than simply making the option available.  These

18   plaintiffs don't allege to have ever availed themselves

19   of it.

20         THE COURT:  Thank you.

21         MR. CARROLL:  Thank you, your Honor.

22         THE COURT:  Shouldn't we let Ms. Neary out in view

23   of that representation?

24         MR. RICHTER:  You know, I think the Court can do

25   what it wants on that.  I mean from our perspective

1   we've alleged facts, I think we have a good faith basis

2   for alleging those facts that --

3        THE COURT:  Well, counsel just made a

4   representation in open court, she didn't sign the trust

5   agreement, there's nothing else in here as to Neary, I

6   mean I will tell you it's not "I can do what I want,"

7   I'm disposed to let her out, that some of this maybe

8   I'll have to take under advisement, but I start with her

9   and we can let her out.

10        There's no real argument against her, is there?

11        MR. RICHTER:  I'm fine.  We have a disputed fact

12   issue on that, but what I would say is we're fine with

13   the Court letting her out.

14        THE COURT:  Fine then.

15        MR. RICHTER:  I would suggest it be without

16   prejudice so if we later find evidence that is contrary

17   to what we've heard here today, that we have the ability

18   to put her back in.

19        THE COURT:  All right.  Go ahead.

20        MR. RICHTER:  So, um, there are really four main

21   points that I want to make, your Honor.

22        The first one is that this case is really almost

23   identical to the *Ameriprise* case and some other cases

24   that we've cited in our briefs whereas similar motions

25   to dismiss have been denied.  Second, the facts of this

1    complaint are set forth in a very detailed fashion, it's

2    a 64-page complaint, and I think defendants are very

3    hard pressed to argue here that, um, we have not pled

4    our claim in adequate detail.  Third, there are several

5    defenses that defendants put forward here and each of

6    them are demonstrably wrong for the reasons that we've

7    stated in our brief.  And fourth, although defendants

8    are loathe to discuss it, they have practically admitted

9    their own liability by changing the plan, after we filed

10   suit, for the very first time to put nonPutnam-

11   affiliated investments in the core investment option.

12        THE COURT:  So can I take that into account, isn't

13   that subsequent repairs?

14        MR. RICHTER:  I think you can certainly take it

15   into account that it was possible to structure the plan

16   in a different way and a different way would have been

17   prudent.

18        I'm not usually prone to reading from opinions in

19   open court but the *Ameriprise* opinion is right on.  I'll

20   encourage the Court, if it reads one case, to read that

21   opinion, and here's what it says.  This is at Page 10 of

22   *Krueger vs. Ameriprise*.

23        "Plaintiffs in this case plausibly allege that

24   defendants selected Ameriprise-affiliated funds, such as

25   River Source Mutual Funds or nonmutual funds managed by

1  ATC, to benefit themselves at the expense of

2  participants.  Plaintiffs claim that despite many

3  investment options available in the market, the plan

4  invested in mutual funds managed by Ameriprise

5  affiliates because they were managed by, paid fees to,

6  and generated profit for Ameriprise.  Defendants chose

7  to invest in River Source Mutual Funds despite the fact

8  that the fees charged for these funds were significantly

9  higher than the median fees for comparable mutual funds

10  in 401K plans such as funds offered by the Vanguard

11  firm.  Moreover, defendants here chose to invest

12  plaintiffs' assets in the R4 share class of the River

13  Source Mutual Fund even though defendants could have

14  invested their money in the R5 share class, which

15  charged lower fees than the R4 share class for identical

16  investment management, and plaintiffs contend that

17  Ameriprise used the retirement assets of its employees

18  to seek new and untested affiliated mutual funds which

19  made these funds more marketable to outside investors.

20      Taking the facts and all reasonable inferences in

21  the light most favorable to plaintiffs, the Court

22  determines the plaintiffs have stated a claim for breach

23  of fiduciary duty.  The plaintiffs have plausibly pled

24  that defendants did not discharge their duties solely in

25  the interest of participants and beneficiaries of the

1    plans.  Plaintiffs allege that defendants chose

2    investment options with poor or nonexistent performance

3    histories.  Plaintiffs have pointed to prudent

4    alternatives that Ameriprise-affiliated funds that

5    defendants could have chosen as investment options for

6    the plan.  So based on plaintiffs' allegations, it is

7    also plausible that the process defendants used to

8    choose plan investments was flawed."

9         It's on all fours, your Honor.  These are exactly

10   the same type of allegations that we make here, an

11   investment firm putting its own products in the plan

12   even though they have higher fees, they have a history

13   of performance that was known at the time that these

14   defendants included them in the plan and retained them

15   in the plan, and I'm not going to read from the rest of

16   the opinion but the Court --

17        THE COURT:  No, you can depend upon me to read it.

18   Now help me out with this.  Let's go through the people

19   or entities you've sued.

20        And so the Putnam Investments itself, you say, is

21   a fiduciary and subject to this.

22        Putnam Investment Management, LLC, how do they fit

23   in here?

24        MR. RICHTER:  Because they're the party that was

25   -- that handled the management of the funds, and if you

1   look at the defendants' reply --

2       THE COURT:  Well, is it them that's liable and not

3   Putnam Investments itself?

4       MR. RICHTER:  Putnam Investments, there's a

5   different liability for Putnam Investments, which I'll

6   call the "parent company," if you will, and the

7   liability for them is based on a couple of things.

8       I think, first of all, it's in the -- I think it's

9   in the trust document that, um, it has this disjunctive

10  language in there and they're one of the parties that

11  has the ability to select plan investments.  Now

12  defendants say that they didn't, um, but they certainly

13  had the ability to, um, select plan investments.  And

14  they're also liable through the acts of their employees

15  and they're also -- there's no question -- um, so

16  they're liable under the respondeat superior doctrine,

17  but they're also liable because they had the ability to

18  appoint members of the relevant committees, which does

19  have a duty to monitor that comes along with that

20  appointment duty, and we've cited the claim case, I

21  think, your Honor, that's on point.

22      And along with the duty to monitor, that's Count

23  4, so the defendants would then say, "Well, what about

24  Counts 1 through 3?"  And the answer to that is once

25  you're a fiduciary you have full fiduciary liability if

1    you are aware, um, and have knowledge of the fiduciary

2    breaches of the co-fiduciaries and you don't take steps

3    to address them, and that's what we allege here.

4         THE COURT:  What's the role of Putnam Investment

5    Services?

6         MR. RICHTER:  Let me just pull it from the

7    complaint, your Honor.

8         (Pause.)

9         MR. RICHTER:  So the relevant allegation is at

10   Paragraph 24 which indicates "Putnam Services is a

11   subsidiary of Putnam" -- "is a participating employer in

12   the plan and at all relevant times has provided investor

13   servicing agent functions to the Putnam funds held

14   within the plan."

15        THE COURT:  And the administration committee?  One

16   can see, if you're right, in the investment committee

17   being liable, but what about the administration claim?

18        MR. RICHTER:  Um, again I think that goes with the

19   co-fiduciary status, your Honor, and that the

20   administration committee also had fiduciary --

21        THE COURT:  Excuse me.  I'm under constraints of

22   time here.

23        And that's what you'd say about Reynolds, too?

24        MR. RICHTER:  And going back to Putnam, the

25   parent, Reynolds had the appointment and monitoring

1    powers and did nothing to stop the breaches at issue.

2         THE COURT:  Here's what we're going to do.  The

3    Ellen Neary motion to dismiss is allowed, the rest of it

4    is taken under advisement.  Don't take any comfort from

5    this because I'm not at all sure that this whole thing

6    is going forward, but the, um, greater likelihood is

7    that something's going forward.

8         So since something's going forward, when do you

9    want to go to trial?

10        MR. RICHTER:  April of next year, your Honor.

11        THE COURT:  April of next year it is.  Two weeks

12   to file a joint proposed case management schedule.  I'll

13   take the matter under advisement.  Thank you.

14        (Ends, 2:40 p.m.)

15

16

17

18

19

20

21

22

23

24

25

1                C E R T I F I C A T E

2

3

4          I, RICHARD H. ROMANOW, OFFICIAL COURT REPORTER,

5    do hereby certify that the foregoing record is a true

6    and accurate transcription of my stenographic notes

7    before Judge William G. Young, on Wednesday, March 9,

8    2016, to the best of my skill and ability.

9

10

11

     /s/ Richard H. Romanow 03-14-16
12   _____
     RICHARD H. ROMANOW    Date
13

14

15

16

17

18

19

20

21

22

23

24

25