UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

JOHN BROTHERSTON and JOAN GLANCY,　　:
individually and as representatives of a class of
similarly situated persons, and on behalf of the　:
Putnam Retirement Plan,

　　　　　　　　　　　　　　　　　　　:

　　　　　　　　Plaintiffs,　　　　　　Civil Action

　　　　　　　　　　　　　　　　:　No. 15-13825-WGY

　　　　v.

　　　　　　　　　　　　　　　　　　　:

PUTNAM INVESTMENTS, LLC, PUTNAM
INVESTMENT MANAGEMENT, LLC, PUTNAM　:
INVESTOR SERVICES, INC., the PUTNAM
BENEFITS INVESTMENT COMMITTEE, the　:
PUTNAM BENEFITS OVERSIGHT COMMITTEE,
and ROBERT REYNOLDS,　　　　　　　:

　　　　　　　　Defendants.　　　:

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

James R. Carroll
Eben P. Colby
Michael S. Hines
SKADDEN, ARPS, SLATE,
　MEAGHER & FLOM LLP
500 Boylston Street
Boston, Massachusetts 02116
(617) 573-4800

Counsel for Defendants Putnam Investments,
LLC, Putnam Investment Management LLC,
Putnam Investor Services, Inc., Putnam
Benefits Investment Committee, Putnam
Benefits Oversight Committee and Robert
Reynolds

Dated:  January 9, 2017

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................... ii

PRELIMINARY STATEMENT .........................................................................................1

FACTUAL BACKGROUND .............................................................................................3

      A.     The Parties ...........................................................................................3

      B.     The Plan Is Generous, And Provides
              Participants With A Broad Array Of Investment Options .......................................4

ARGUMENT ......................................................................................................................5

I.     DEFENDANTS ARE ENTITLED TO SUMMARY
      JUDGMENT ON COUNT I BECAUSE PLAINTIFFS' BREACH OF
      FIDUCIARY DUTY CLAIM IS BARRED AS A MATTER OF LAW ...........................6

      A.     ERISA Permits Mutual Fund Companies -- Like
              Putnam -- To Offer Their Own Mutual Funds In Their Retirement Plans .............7

      B.     Plaintiffs' "Excessive" Fee Claims Have Been Rejected By Appellate
              Courts As Inadequate To Support A Breach Of Fiduciary Duty Claim .................9

      C.     Plaintiffs' Performance Claims Are Impermissibly
              Based On Hindsight, And Their Assertions About Revenue
              Sharing Are Complaints About Plan Design, Not Fiduciary Conduct .................12

II.    DEFENDANTS ARE ENTITLED TO SUMMARY
      JUDGMENT ON PLAINTIFFS' PROHIBITED TRANSACTION
      CLAIMS (COUNTS II AND III) BECAUSE THE PLAN'S INVESTMENTS
      IN PUTNAM-AFFILIATED FUNDS ARE EXPRESSLY PERMITTED .......................14

      A.     The Challenged Transactions Do Not Involve
              Plan Assets, And Also Are Expressly Permitted By ERISA .................................14

      B.     Counts II And III Should Be Dismissed Insofar As
              They Purport To Challenge Transactions Barred By ERISA's
              Six-Year Statute Of Repose Or Three-Year Statute Of Limitations.....................17

III.   COUNTS IV AND V SHOULD BE DISMISSED BECAUSE
      THERE CAN BE NO LIABILITY FOR THOSE COUNTS ABSENT
      AN UNDERLYING ERISA VIOLATION, AND ALSO BECAUSE THE
      RECORD DEMONSTRATES ACTIVE MONITORING OF PLAN FIDUCIARIES ....18

CONCLUSION..................................................................................................................19

## TABLE OF AUTHORITIES

**CASES**                                                                     **PAGE(S)**

Amron v. Morgan Stanley Investment Advisors Inc.,
    464 F.3d 338 (2d Cir. 2006)....................................................................2, 11

Barbour v. Dynamics Research Corp.,
    63 F.3d 32 (1st Cir. 1995)...............................................................................6

Bunch v. W.R. Grace & Co.,
    532 F. Supp. 2d 283 (D. Mass. 2008) .........................................................6, 18

Bunch v. W.R. Grace & Co.,
    555 F.3d 1 (1st Cir. 2009).........................................................................2, 6, 12

CCM Rochester, Inc. v. Federated Investors, Inc.,
    No. 14-cv-03600-VEC, slip op. (S.D.N.Y. Aug. 31, 2016)............................10

Coll v. PB Diagnostic Systems, Inc.,
    50 F.3d 1115 (1st Cir. 1995)...........................................................................6

David v. Alphin,
    704 F.3d 327 (4th Cir. 2013) .........................................................................17

Dupree v. Prudential Insurance Co. of America,
    No. 99-8337, 2007 WL 2263892 (S.D. Fla. Aug. 10, 2007) ..............................8

Edes v. Verizon Communications, Inc.,
    417 F.3d 133 (1st Cir. 2005)..........................................................................17

Habib v. M&T Bank Corp.,
    No. 16-cv-375-FPG (W.D.N.Y. filed May 11, 2016).........................................4

Hecker v. Deere & Co.,
    556 F.3d 575 (7th Cir. 2009) ........................................................... *passim*

Howell v. Motorola, Inc.,
    633 F.3d 552 (7th Cir. 2011) .........................................................................19

In re Fidelity ERISA Float Litigation,
    829 F.3d 55 (1st Cir. July 13, 2016) .......................................................2, 3, 15

Kasilag v. Hartford Investment Financial Services, LLC,
    No. 11-1083, 2012 WL 6568409 (D.N.J. Dec. 17, 2012)...............................11

Loomis v. Excelon Corp.,
       658 F.3d 667 (7th Cir. 2011) ..................................................................10, 13

Main v. American Airlines, Inc.,
       No. 16-cv-00473-O (N.D. Tex. filed Apr. 15, 2016).......................................4

Mehling v. New York Life Insurance Co.,
       163 F. Supp. 2d 502 (E.D. Pa. 2001) ...........................................................16

Moreno v. Deutsche Bank Americas Holding Corp.,
       No. 15-cv-09936-LGS (S.D.N.Y. filed Dec. 21, 2015) ....................................4

Pension Benefit Guar. Corp. v. Morgan Stanley Investment Management Inc.,
       712 F.3d 705 (2d Cir. 2013)....................................................................12, 13

Renfro v. Unisys Corp.,
       671 F.3d 314 (3rd Cir. 2011) ...................................................................9, 10

Rinehart v. Akers,
       722 F.3d 137 (2d Cir. 2013)..........................................................................18

Rinehart v. Akers
       134 S. Ct. 2900 (2014)...................................................................................18

Sivolella v. AXA Equitable Life Insurance Co.,
       No. 11-cv-4194, 2016 WL 4487857 (D.N.J. Aug. 25, 2016) ..........................10

Smith  v. BB&T Corp.,
       No. 15-cv-732-CCE-JEP (M.D.N.C. filed Sept. 4, 2015) .................................4

Tibble v. Edison International,
       729 F.3d 1110 (9th Cir. 2013) ........................................................................9

Tibble v. Edison International,
       135 S. Ct. 1823 (2015)....................................................................................9

Tropigas de Puerto Rico Inc. v. Certain Underwriters at Lloyd's of London,
       637 F.3d 53 (1st Cir. 2011)............................................................................6

Urakhchin v. Allianz Asset Management of America, L.P.,
       No. 15-cv-01614-JVS-JCG (C.D. Cal. filed Oct. 7, 2015).................................4

Wildman v. Am. Century Services, LLC,
       No. 16-cv-737-DGK (W.D. Mo. filed June 30, 2016).......................................4

Young v. General Motors Investment Management Corp.,
    550 F. Supp. 2d 416 (S.D.N.Y. 2008)................................................................18

Young v. General Motors Investment Management Corp.,
    325 F. App'x 31 (2d Cir. 2009)........................................................................18

**Statutes**                                                                    **PAGE(S)**

29 U.S.C. § 1101................................................................................................14

29 U.S.C. § 1104...........................................................................................6, 12

29 U.S.C. § 1106................................................................................................14

29 U.S.C. § 1108................................................................................................15

29 U.S.C. § 1113................................................................................................17

29 U.S.C. § 1132................................................................................................18

**Rules**                                                                        **PAGE(S)**

29 C.F.R. § 2509.75-8........................................................................................19

Fed. R. Civ. P. 56................................................................................................6

**Other Authorities**

Class Exemption Involving Mutual Fund In-House Plans Requested by the Investment
    Company Institute,
    42 Fed. Reg. 18,734 (Mar. 31, 1977)......................................................8, 15, 16

Notice of Proposed Rulemaking, Participant Directed Individual Account Plans,
    56 Fed. Reg. 10,724, 10,730 (Mar. 13, 1991)............................................1, 7, 8

Restatement 3d of Trusts, § 90 cmts. e(1) and f .........................................12

U.S. Department of Labor, Employee Benefits Security Administration, *A Look at 401(k)
    Plan Fees* (Aug. 2013), http://www.dol.gov/ebsa/pdf/401kFeesEmployee.pdf..........11, 12

The Vanguard Group, Inc., *Why Ownership Matters* (2014),
    https://about.vanguard.com/what-sets-vanguard-apart/why-ownership-matters/..............11

# PRELIMINARY STATEMENT[1]

This lawyer-generated, lawyer-financed, and lawyer-driven class action challenges the inclusion of Putnam-affiliated mutual funds in Putnam's 401(k) plan (the "Plan"), and asserts that doing so violates the Employee Retirement Income Security Act of 1974 ("ERISA").  The entire case fails, however, because the Department of Labor ("DOL") expressly permits a mutual fund company such as Putnam to offer its *own* mutual funds to its *own* employees through its *own* in-house 401(k) plan.  Indeed, the DOL recognized that it would be "contrary to normal business practice for a company whose business is financial management to seek financial management services from a competitor."  Notice of Proposed Rulemaking, Participant Directed Individual Account Plans, 56 Fed. Reg. 10,724, 10,730 (Mar. 13, 1991). Furthermore, the Putnam Plan participants were *not* limited solely to Putnam-affiliated investment products.  Rather, the Plan's investment lineup also included a "self-directed brokerage window" managed by the wholly independent firm TD Ameritrade, through which participants could invest in thousands of mutual funds and exchange-traded funds from other companies, including from Putnam's direct competitors and even Vanguard funds (the lower-cost competitor that the Second Amended Complaint cites repeatedly as what ought to have been offered by Putnam).

There is no jury trial in this case.  Defendants' motion for summary judgment should be granted in its entirety and each count of the Complaint dismissed for the following reasons, all of which may be decided at this juncture as a matter of law.

---

[1]     Defendants in this case are Putnam Investments, LLC ("Putnam"), Putnam Investment Management, LLC ("Putnam Management"), Putnam Investor Services, Inc. ("Putnam Services," and together with Putnam and Putnam Management, the "Putnam Companies"), the Putnam Benefits Investment Committee ("PBIC"), the Putnam Benefits Oversight Committee ("PBOC"), and Robert Reynolds.

*First*, Plaintiffs' breach of fiduciary duty claim (Count I) -- which alleges that Defendants offered a mix of investment options to Plan participants that charged excessive fees or underperformed -- fails because identical allegations have been repeatedly rejected as a matter of law by federal courts based on the following principles:

- ERISA fiduciary duties are not determined by mere investment underperformance. *Bunch v. W.R. Grace & Co.*, 555 F.3d 1, 7 (1st Cir. 2009) (affirming summary judgment dismissing ERISA breach of fiduciary duty claims).

- Investment options need to be prudent.  They need not be the least expensive: "[N]othing in ERISA requires every fiduciary to scour the market to find and offer the cheapest possible fund."  *Hecker v. Deere & Co.*, 556 F.3d 575, 586 (7th Cir. 2009) (dismissing ERISA breach of fiduciary duty claims).

- Comparing the costs of mutual funds to those offered by Vanguard is meaningless. *See Amron v. Morgan Stanley Inc. Advisors Inc.*, 464 F.3d 338, 345-46 (2d Cir. 2006) ("That a mutual fund has an expense ratio higher than Vanguard, a firm known for its emphasis on keeping costs low, raises little suspicion").

- "We see nothing in the statute that requires plan fiduciaries to include any particular mix of investment vehicles in their plan."  *Hecker*, 556 F.3d at 586.

Indeed, the fees associated with Putnam's affiliated products are offered to Plan participants through the lowest-cost share class offered to the general public, and are within a range already found reasonable by other courts as a matter of law.  In any event, the funds from Putnam's competitors are available to Plan participants through the Plan's self-directed brokerage option, including the very Vanguard index funds that Plaintiffs claim should have been offered in the Plan.  Moreover, Plaintiffs' assertions of underperformance -- *i.e.*, that portfolio managers should have picked other and different stocks and bonds that performed better -- are based solely on hindsight not permitted under ERISA.

*Second*, Plaintiffs' prohibited transaction claims (Counts II and III) fail because they require transactions involving *Plan assets*.  The First Circuit has recently held that the assets of a mutual fund are not assets of a plan.  *In re Fidelity ERISA Float Litig.*, 829 F.3d 55, 61 (1st

Cir. July 13, 2016).  Moreover, the challenged transactions are explicitly permitted by applicable statutory and administrative exemptions to ERISA's prohibited transaction rules.

*Third*, Plaintiffs' failure to monitor fiduciaries (Count IV) and other equitable relief (Count V) claims cannot proceed in the absence of an underlying ERISA violation.  The failure to monitor fiduciaries claim fails for the additional reason that the undisputed record evidence demonstrates that the Plan's fiduciaries were appropriately monitored.

## FACTUAL BACKGROUND

This factual background section provides contextual information for the Court's convenience.[2]

### A.     The Parties

Putnam, established in 1937, creates, manages and sells mutual funds.  (SMF ¶ 1.) Putnam Management provides investment management services to Putnam mutual funds, and Putnam Services provides investor services to Putnam fund investors.  (*Id.* ¶¶ 2, 3.)  The PBIC (Putnam Benefits Investment Committee) is a named fiduciary under the Plan and is responsible for selecting, monitoring and removing investments from the Plan lineup.  (*Id.* ¶ 4.)  The PBIC is comprised of senior investment professionals and senior employees from Human Resources and Putnam's defined contribution business.  (*Id.* ¶ 5.)  The PBOC (Putnam Benefits Oversight Committee) is responsible for overseeing the PBIC, and is comprised of senior Putnam employees, including Putnam's Chief Financial Officer and Head of Human Resources.  (*Id.* ¶¶ 6, 56.)  Mr. Reynolds is Putnam's Chief Executive Officer.  (*Id.* ¶ 7.)

---

[2]     Defendants' Local Rule 56.1 Statement of Material Facts As To Which There Is No Genuine Issue To Be Tried, filed herewith, is cited as "SMF ¶ __."

Plaintiff John Brotherston is a former Putnam employee and current Plan participant, and Plaintiff Joan Glancy was a participant in the Plan, but withdrew all of her money years ago in the first quarter of 2010 following her separation from Putnam.  (*Id.* ¶¶ 8, 11, 16.)  Mr. Brotherston has invested in thirty-five different funds offered within the Plan, while Ms. Glancy has invested in fourteen different funds.  (*Id.* ¶¶ 9, 17.)  In connection with their separation from Putnam, both Mr. Brotherston and Ms. Glancy received enhanced separation benefits and executed general release agreements.  (*Id.* ¶¶ 21-24.)  Both became Plaintiffs in this case after receiving an unsolicited letter from their Minnesota counsel.[3]  (*Id.* ¶¶ 15, 20.)

**B.     The Plan Is Generous, And Provides<br>Participants With A Broad Array Of Investment Options**

The Plan is a "defined contribution" 401(k) plan.  (*Id.* ¶ 25.)  Through the Plan, all eligible Putnam employees may contribute tax-deferred savings to individual participant accounts.  (*Id.*)  The Plan is entirely participant-directed -- that is, each participant allocates the employee and employer contributions into any investment option available under the Plan. (*Id.* ¶¶ 26, 28.)  As of October 28, 2016, those options included a broad array of investment choices comprised of sixty-eight Putnam-managed mutual funds (all of Putnam's publicly offered, open-end mutual funds (other than tax-exempt funds), six collective investment trusts managed by BNY Mellon, four collective investment trusts managed by Putnam, as well as a brokerage window managed by TD Ameritrade through which participants have access to

---

[3]     The same plaintiffs' firm has brought at least six similar cases against other financial services companies.  *See Wildman v. Am. Century Servs., LLC*, 16-cv-737-DGK (W.D. Mo. June 30, 2016); *Habib v. M&T Bank Corp.*, 16-cv-375-FPG (W.D.N.Y. filed May 11, 2016); *Main v. Am. Airlines, Inc.*, 16-cv-00473-O (N.D. Tex. filed Apr. 15, 2016); *Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*, 15-cv-01614-JVS-JCG (C.D. Cal. filed Oct. 7, 2015); *Moreno v. Deutsche Bank Ams. Holding Corp.*, 15-cv-09936-LGS (S.D.N.Y filed Dec. 21, 2015); *Smith v. BB&T Corp.*, 15-cv-732-CCE-JEP (M.D.N.C. filed Sept. 4, 2015).

thousands of investments unaffiliated with Putnam.  (*Id.* ¶¶ 29-32.)  The Putnam-affiliated investment options reflect a variety of asset categories (*i.e.*, target date, asset allocation, growth, blend, value, income, capital preservation, absolute return, and global sector), investment strategies, and risk/return profiles.  (*Id.* ¶ 28.)

Putnam makes wholly voluntary contributions to employee accounts in the form of discretionary contributions, even when Putnam's business fares poorly.  (*Id.* ¶ 46.)  In addition to those voluntary contributions, Putnam also matches 100% of employees' contributions up to 5% of eligible compensation.  (*Id.* ¶ 47.)  Putnam's matching and discretionary contributions have been extremely generous.  For example, Putnam made ***nearly $70 million*** in ***voluntary*** contributions to the Plan from 2009 through 2015.  (*Id.* ¶ 46.)  Putnam made voluntary contributions to participant accounts even during years when Putnam was not profitable.  (*Id.*) Indeed, while Mr. Brotherston has contributed $75,854.58 to his Plan account, Putnam has contributed $116,391.82 to his account in voluntary contributions.  (*Id.* ¶ 10.)  Similarly, while Ms. Glancy contributed approximately $64,448.00 to her Plan account, Putnam contributed $207,501.19 to her account in voluntary contributions.  (*Id.* ¶ 18.)

In addition, Putnam pays *all* of the Plan's recordkeeping fees and similar expenses, including fees and costs associated with investment advice available to participants, custodial services, Plan maintenance, participant account maintenance, and the Plan's website. (*Id.* ¶ 48.)  In 2013, the Plan's fiduciaries determined that Putnam -- and not participants -- would pay the $120 annual fee charged to utilize the TD Ameritrade brokerage window.  (*Id.* ¶ 50.)

## **ARGUMENT**

"Rule 56[] mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case,

and on which that party will bear the burden of proof at trial." *Coll v. PB Diagnostic Sys., Inc.*, 50 F.3d 1115, 1121 (1st Cir. 1995) (internal quotation marks omitted).  *See also* Fed. R. Civ. P. 56.  Where -- as here -- the "nonmovant bears the burden of proof on the [underlying] dispositive issue, [the nonmovant] must point to 'competent evidence' and 'specific facts' to stave off summary judgment." *Tropigas de Puerto Rico Inc. v. Certain Underwriters at Lloyd's of London*, 637 F.3d 53, 56 (1st Cir. 2011).  As such, this Court should enter summary judgment if there is "an absence of evidence to support the non-moving party's case." *Barbour v. Dynamics Research Corp.*, 63 F.3d 32, 37 (1st Cir. 1995).  As demonstrated below, summary judgment is warranted here.

I.  **DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON COUNT I BECAUSE PLAINTIFFS' BREACH OF FIDUCIARY DUTY CLAIM IS BARRED AS A MATTER OF LAW**

Count I of the Complaint alleges that Defendants breached ERISA fiduciary duties of loyalty and prudence by having Putnam's own mutual funds in its own 401(k) plan. (Compl. ¶¶ 117-123.)  Indeed, Mr. Brotherston testified that it was Putnam's obligation to provide "the highest return possible" and the "cheapest possible mutual funds."  (SMF ¶ 13.)  But ERISA could not -- and does not -- so require.  Rather, ERISA's duty of loyalty requires that "a fiduciary shall discharge his duties . . . solely in the interest of the participants and beneficiaries. . . ." *Bunch v. W.R. Grace & Co.*, 532 F. Supp. 2d 283, 288 (D. Mass. 2008) (ellipses in original) (quoting 29 U.S.C. § 1104(a)(1)), *aff'd*, 555 F.3d 1 (1st Cir. 2009). Similarly, ERISA's duty of prudence requires that a fiduciary act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims."  29 U.S.C. § 1104(a)(1)(B).

In this case, Plaintiffs allege that Defendants breached their duties of loyalty and prudence by (a) "load[ing] the Plan exclusively with Putnam's mutual funds"; (b) including and/or retaining Putnam-affiliated funds that charged excessive fees; and (c) retaining underperforming funds or funds that lacked performance history, and failing to capture all available revenue sharing payments.[4]  (Compl. ¶¶ 3, 120-21.)  As discussed below, there are no genuine issues of material fact supporting Plaintiffs' breach of fiduciary duty claims, and therefore Defendants are entitled to summary judgment on Count I.

A.  **ERISA Permits Mutual Fund Companies -- Like
     Putnam -- To Offer Their Own Mutual Funds In Their Retirement Plans**

Plaintiffs' assertions that Defendants "loaded the Plan exclusively with Putnam's mutual funds" and only offered Putnam-affiliated funds as "core investment options" are wrong and also do not support an inference of disloyalty or imprudence.  (*Id.* ¶¶ 3, 60.)

*First*, there is nothing untoward about a mutual fund company offering its own mutual funds to its own employees in an in-house 401(k) plan.  Indeed, both Congress and the DOL recognize that financial-services organizations offer their investment products to in-house retirement plans.[5]  *See, e.g.*, 56 Fed. Reg. at 10,730 (observing it would be "contrary to normal business practice for a company whose business is financial management to seek financial

---

[4]     Plaintiffs also claim that Defendants breached their fiduciary duties by allegedly failing to implement a process to monitor the Plan's investments.  (Compl. ¶¶ 120-21.)  While Defendants dispute that allegation, the Court need not address it on this motion as Plaintiffs' breach of fiduciary duty claims fail as a matter of law even if Defendants failed to monitor the Plan's investments -- and they did not -- because, as discussed herein, ERISA permits mutual fund companies to offer their own funds in their retirement plans (*see infra*, Argument, Part I.A), Plaintiffs' excessive fee claims have been rejected by courts as insufficient to support a breach of fiduciary duty claim (*see infra*, Argument, Part I.B), and allegations of fund underperformance are based on impermissible hindsight (*see infra*, Argument, Part I.C).

[5]     Indeed, Mr. Brotherston testified that it was good that portfolio managers invested in their own products and that it was important to him that portfolio managers did so.  (SMF ¶ 14.)

management services from a competitor").  For this reason, ERISA's implementing regulations *expressly allow* mutual fund advisors and their affiliates to invest in affiliated mutual funds.  (Class Exemption Involving Mutual Fund In-House Plans Requested by the Investment Company Institute, 42 Fed. Reg. 18,734 (Mar. 31, 1977) ("PTE 77-3").)  Consequently, courts have recognized that plan fiduciaries do not violate ERISA by offering affiliated investment products.  As Judge Jordan of the Southern District of Florida held, "[s]imply because Prudential followed such a practice . . . does not give rise to an inference of disloyalty, especially where these practices are universal among plans of the financial services industry."  *Dupree v. Prudential Ins. Co. of Am.*, No. 99-8337, 2007 WL 2263892, at *45 (S.D. Fla. Aug. 10, 2007).

> *Second*, the allegation that Defendants "loaded" the Plan exclusively with affiliated products is wrong, as the Plan makes available to participants collective investment trusts managed by BNY Mellon (effective February 2016), and unaffiliated mutual funds and other investment products through the self-directed brokerage window.  (SMF ¶¶ 29, 31-32, 40-43.)  Thousands of unaffiliated investment options are available to Plan participants through the brokerage window, including product offerings from Fidelity, Vanguard, State Street, and TIAA-CREF, among many others.  (*Id.* ¶ 40.)  The undisputed availability of unaffiliated investment options demolishes Plaintiffs' claim.  *See Hecker v. Deere & Co.*, 556 F.3d 575, 586 (7th Cir. 2009) (affirming dismissal and noting that brokerage window offered access to a large universe of unaffiliated investment options).[6]

---

[6]     There is also no evidence of actual disloyal conduct supporting Plaintiffs' assertions that Defendants "used the Plan as an opportunity to promote Putnam's mutual fund business and maximize profits at the expense of the Plan and its participants."  (Compl. ¶ 3.)  Rather, the record demonstrates that Putnam voluntarily contributed nearly $70 million in ***discretionary*** contributions to the accounts of Plan participants from 2009 through 2015 (not including the 5% Company match).  (SMF ¶ 46.)

**B.**     **Plaintiffs' "Excessive" Fee Claims Have Been Rejected By Appellate
Courts As Inadequate To Support A Breach Of Fiduciary Duty Claim**

There is no evidence supporting Plaintiffs' assertions that the Plan's investment

options had excessive fees.  Nor could there be -- the fees associated with Putnam's affiliated

products are within a range previously found reasonable by other courts as a matter of law.

For example, in *Hecker*, plaintiff, as here, alleged that the plan fiduciaries violated

fiduciary duties under ERISA by providing investment options that required the payment of

excessive fees and costs.  556 F.3d at 578.  The retirement plan at issue in *Hecker* was comprised

of retail mutual funds from one investment provider with expense ratios ranging from 0.07% to

just over 1%.  *Id.* at 586.  The plan -- like the Putnam Plan here -- also offered participants access

to thousands of additional mutual funds through a brokerage window.  *Id.*  In rejecting plaintiff's

breach of fiduciary duty claim, the court held that "[t]he fact that it is possible that some other

funds might have had even lower ratios is beside the point; ***nothing in ERISA requires every***

***fiduciary to scour the market to find and offer the cheapest possible fund***."  *Id.* (emphasis

added).  The court observed that the fact that funds are sold in a competitive market was also

important:

> the undisputed facts leave no room for doubt that the [plan] offered a
> sufficient mix of investments for their participants. . . .  [T]here was a wide
> range of expense ratios among the twenty Fidelity mutual funds and the
> 2,500 other funds available through [the brokerage window].  At the low
> end, the expense ratio was .07%; at the high end, it was just over 1%.
> Importantly, all of these funds were also offered to investors in the general
> public, and so the expense ratios necessarily were set against the backdrop
> of market competition.

*Id.; see also Tibble v. Edison Int'l*, 729 F.3d 1110, 1135 (9th Cir. 2013), *vacated on other*

*grounds*, 135 S. Ct. 1923 (2015) (rejecting excessive fee arguments where expense ratios varied

from 0.03% to more than 2.00%); *Renfro v. Unisys Corp.*, 671 F.3d 314, 327-28 (3rd Cir. 2011)

(rejecting excessive fee claims where expense ratios for the plan's 73 investment options ranged

9

from 0.1% to 1.21%); *Loomis v. Excelon Corp.*, 658 F.3d 667, 669-70 (7th Cir. 2011) (rejecting excessive fee claims where expense ratios ranged from 0.03% to .96%).

Similarly here, the Plan's lineup includes a broad array of investment vehicles comprised of Putnam-managed mutual funds (including fund categories such as target date, asset allocation, growth, blend and value), Putnam and non-Putnam collective investment trusts, as well as a brokerage window through which participants have access to thousands of investments unaffiliated with Putnam.  (SMF ¶¶ 29-32.)  During the period from 2009 through 2016, the expense ratios of the options in the Plan lineup ranged from 0.00% to 1.52% with an array of expense ratios in between.  (*Id.* ¶ 33.)  Given the diversity of investment options and expense ratios made available to Plan participants, in addition to the thousands of funds available through the brokerage window, Plaintiffs' allegations of excessive fees fail as a matter of law.  *See Hecker*, 556 F.3d at 586.

Plaintiffs only "evidence" of excessive fees comes from a proffered expert witness -- Dr. Steve Pomerantz -- who has been recently and sharply criticized by two federal judges, including rulings that he "provided conflicting testimony" and "made mathematical errors in his calculations,"[7] and did not "employ the rigor one would expect from an expert in his field" and his opinion "suffers from a logical flaw that renders it inadmissibly speculative and conjectural."[8]  Here, Dr. Pomerantz opines that the Plan's fees are excessive when compared to a

---

[7]     *Sivolella v. AXA Equitable Life Ins. Co.*, No. 11-cv-4194, 2016 WL 4487857, at *14-15 (D.N.J. Aug. 25, 2016) (ruling Dr. Pomerantz's testimony not credible due to "inconsistencies, oversimplifications, and his sarcastic demeanor," and finding Dr. Pomerantz to be "unprofessional and sarcastic during testimony before the Court and in his deposition" and "demonstrate[ing] a negative bias, rather than an objective professional opinion").

[8]     *CCM Rochester, Inc. v. Federated Investors, Inc.*, No. 14-cv-03600-VEC, slip op. at 8, 10 (Aug. 31, 2016) (excluding Dr. Pomerantz's proffered opinion).

lineup comprised of Vanguard passively-managed index funds (or a lineup heavily weighted towards passively-managed products).  (Hines Decl. Ex. 69 (Expert Report of Steve Pomerantz, Phd at 40).)  This comparison cannot withstand scrutiny for several reasons.

*First*, comparing the fees of Putnam's funds to those of Vanguard is inapt.  In the context of analogous claims under the Investment Company Act, courts have recognized that Vanguard is not an appropriate comparison, as it is an entity that operates "at-cost" and specifically markets itself as a low-cost mutual fund provider.[9]  *See, e.g.*, *Amron*, 464 F.3d at 345 ("That a mutual fund has an expense ratio higher than Vanguard, a firm known for its emphasis on keeping costs low, raises little suspicion"); *Kasilag v. Hartford Inv. Fin. Servs., LLC*, No. 11-1083, 2012 WL 6568409, at *5 (D.N.J. Dec. 17, 2012) ("To be sure, the Vanguard comparison is extremely limited").  In any event, those same Vanguard funds are available to Plan participants through the Plan's self-directed brokerage option.  (SMF ¶¶ 40, 42.)

*Second*, the Plan included **both** actively and passively managed investment vehicles, including passively-managed products available through the Plan's brokerage window. (*Id.* ¶ 30, 42.)  Thus, this is not a retirement plan in which participants had no passively-managed funds available to them.[10]

---

[9]    Vanguard states that "the Vanguard funds own the management company known as Vanguard" and "[u]nder its agreement with the funds, Vanguard must operate 'at-cost' -- it can charge the funds only enough to cover its cost of operations."  *See* Vanguard.com, https://about.vanguard.com/what-sets-vanguard-apart/why-ownership-matters/ (last visited Dec. 13, 2016).

[10]   The Plan's investments are largely "actively managed," meaning that the funds are operated by "an investment adviser who continually researches, monitors, and actively trades the holdings of the fund to seek a higher return than the market [and these funds] generally have higher fees."  U.S. Dep't of Labor, Emp. Benefits Sec. Admin., *A Look at 401(k) Plan Fees*, at 7 (Aug. 2013), http://www.dol.gov/ebsa/pdf/401kFeesEmployee.pdf (last visited Dec. 30, 2016). Vanguard and other "passively managed" products, by contrast, "seek to obtain the investment results of an established market index . . . by duplicating the holdings included in the index" and

*(cont'd)*

*Third*, active investment management is permitted under ERISA. *See Hecker*, 556 F.3d at 586 ("We see nothing in [ERISA] that requires plan fiduciaries to include any particular mix of investment vehicles in their plan."). Indeed, active management is a fully accepted investment approach under the common law of trusts. *See* Restatement 3d of Trusts, § 90 cmts. e(1) and f at 304, 307 (observing that "active management strategies" are permissible and "[t]here are no universally accepted and enduring theories of financial markets or prescriptions for investment that can provide clear and specific guidance to trustees and courts[,] [v]aried approaches to the prudent investment of trust funds are therefore permitted by the law").

### C.     Plaintiffs' Performance Claims Are Impermissibly Based On Hindsight, And Their Assertions About Revenue Sharing Are Complaints About Plan Design, Not Fiduciary Conduct

Plaintiffs' underperformance allegations and assertions about revenue sharing fare no better. (Compl. ¶¶ 120-21.)

*First*, hindsight-based allegations of past investment underperformance cannot support a breach of fiduciary duty claim as a matter of law. Compliance with ERISA fiduciary duties is addressed at the time, not with the benefit of hindsight. 29 U.S.C. § 1104(a)(1)(B) (requiring "the care, skill, prudence, and diligence *under the circumstances then prevailing*" (emphasis added)); *Bunch*, 555 F.3d at 7 (holding that the test for imprudence under ERISA "is one of *conduct*, and not a test of the result of the performance of the investment" (emphasis in original) (citation omitted)). Here, there is no evidence that the Putnam funds underperformed any benchmark warranting removal from the Plan. In any event, the Complaint's allegations that two investment options underperformed (Compl. ¶¶ 83-91) is hindsight not permitted under

---

*(cont'd from previous page)*
generally have lower management fees because they "require little research or trading activity." *Id.*

ERISA to support a claim of breach of fiduciary duty.  *Pension Benefit Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 718 (2d Cir. 2013) (affirming dismissal of ERISA claim and holding that a plaintiff "cannot rely, after the fact, on the magnitude of the decrease in the relevant investment's price") (quotation and alteration omitted).

      *Second*, Plaintiffs' allegations that the Plan's fiduciaries breached their fiduciary duties by not demanding so-called revenue sharing payments from Putnam in connection with certain of the Plan's investments are non-starters.  (Compl. ¶¶ 74-77.)  When available, revenue sharing payments are made by an investment management company to recordkeepers.  (*Id.* ¶ 75.) Amounts received from revenue sharing payments are used to pay a 401(k) plan's recordkeeping fees or other administrative expenses.  (SMF ¶ 52.)  In this case, *Putnam already paid* the Plan's recordkeeping fees and other administrative expenses.  (*Id.* ¶ 48.)  Putnam also made voluntary contributions to the Plan of nearly $70 million from 2009 through 2015.  (*Id.* ¶ 46.) Nevertheless, Plaintiffs claim that the Plan should have been even more generous than it already was by paying more money to Plan participants.  (*See* Compl. ¶ 77.)  In *Loomis*, the Seventh Circuit rejected a similar argument that plan fiduciaries breached fiduciary duties by not paying certain of the plan's expenses.  658 F.3d at 671.  The Seventh Circuit held:

> But whether to cover these expenses is a question of plan design, not of administration.  The participants want [the company] to contribute more to the [p]lan than it does.  ERISA does not create any fiduciary duty requiring employers to make pension plans more valuable to participants. . . .  So the participants' argument that [the company] should have ponied up additional money, to cover the operating expenses of their retirement vehicles, is a non-starter.

*Id.*  Similarly here, Plaintiffs are seeking Putnam to make the Plan even more valuable to participants.  But ERISA requires no such thing and, as in *Loomis*, that is a non-starter.

## II.   DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' PROHIBITED TRANSACTION CLAIMS (COUNTS II AND III) BECAUSE THE PLAN'S INVESTMENTS IN PUTNAM-AFFILIATED FUNDS ARE EXPRESSLY PERMITTED

Counts II and III allege that Defendants engaged in prohibited transactions in violation of ERISA § 406, 29 U.S.C. § 1106 by (i) causing the Plan to exclusively utilize Putnam-affiliated funds that generate revenue for the Putnam Companies paid by the transfer of plan assets (Count II, Compl. ¶ 125) and (ii) paying investment management fees and expenses to Putnam and Putnam Management out of plan assets (Count III, Compl. ¶ 130).  Defendants are entitled to summary judgment on these claims because the challenged transactions do not involve "plan assets," and are expressly permitted by ERISA in any event.  Alternatively, Counts II and III should be narrowed insofar as they purport to challenge transactions barred by ERISA's six-year statute of repose or three-year statute of limitations.

### A.   The Challenged Transactions Do Not Involve Plan Assets, And Also Are Expressly Permitted By ERISA

Plaintiffs' prohibited transaction claims should be dismissed for at least two independent reasons.

*First*, ERISA §§ 406(a)(1)(D) and 406(b)(1) concern transactions involving "assets of the plan."  But payments made for managing and servicing Putnam-affiliated funds are paid by the mutual funds themselves, not by the Plan.  ERISA expressly provides that the assets of mutual funds, which are used to pay the funds' management and servicing fees, are not considered assets of a plan (only the mutual fund shares owned by the plan are plan assets):  "In the case of a plan which invests in any security issued by [a mutual fund], the assets of such plan . . . shall not . . . be deemed to include any assets of such [mutual fund]."  ERISA § 401(b)(1), 29 U.S.C. § 1101(b)(1).  Put differently, the "assets of the plan" include the shares of the mutual fund that employee contributions are used to purchase, but not the assets of the

mutual fund.  The First Circuit recently affirmed the dismissal of ERISA claims concerning the handling of payments from mutual funds to plan participants, explaining that the cash owned by a mutual fund "is an asset of the mutual fund (not the plan)."  *In re Fidelity*, 2016 WL 3748685, at *5.  Accordingly, payment of the affiliated funds' management and servicing fees are not assessed against "assets of the [P]lan," and therefore Counts II and III of the Complaint fail as a matter of law.  *See also Hecker*, 556 F.3d at 584 ("fees [] collected from the mutual fund's assets . . . [are] not assets of the [p]lans").

        *Second*, Counts II and III fail for the independent reason that ERISA specifically permits these transactions.  ERISA § 408 and DOL implementing regulations provide a wide range of exemptions from prohibited transactions, including exemptions permitting an investment management company to offer affiliated funds in its 401(k) plan.  29 U.S.C. § 1108; PTE 77-3.  PTE 77-3 expressly permits retirement plans to invest in affiliated funds registered under the Investment Company Act of 1940 provided there are no commissions or other extraneous fees, and the investments are offered to the plan on the best available terms.[11]  Separately, ERISA §§ 408(b)(2) and (c)(2) provide that the prohibited transaction rules do not apply to arrangements with a party in interest or a fiduciary for payment of reasonable expenses for services rendered.  29 U.S.C. § 1108.

---

[11]     PTE 77-3 permits a plan to purchase "shares of an open-end investment company registered under the Investment Company Act of 1940 by an employee benefit plan covering only employees of such investment company, employees of the investment adviser or principal underwriter for such investment company, or employees of any affiliated person . . . of such investment adviser or principal underwriter . . . ."  42 Fed. Reg. at 18,734-35.  The plan also must not:  (a) "pay any investment management, investment advisory or similar fee" except for the payment by the fund of investment advisory fees; (b) pay a redemption fee other than to the fund; (c) pay a sales commission; and (d) have dealings with the investment fund "on a basis no less favorable to the plan than such dealings are with other shareholders of" the fund.  *Id.* at 18,735.

Here, the Putnam-affiliated mutual funds in which the Plan invests satisfy all of the requirements for PTE 77-3 and ERISA § 408 exemption.  With respect to PTE 77-3, the investment mutual funds include "any publicly offered, open-end mutual fund (other than tax-exempt funds) that are generally made available to employer-sponsored retirement plans and underwritten or managed by Putnam Investments or one of its affiliates."  (SMF ¶ 30.)  The Plan is only offered to employees of Putnam or its affiliates (Compl. ¶ 18; SMF ¶ 25), and does not pay a sales commission, redemption fees, or any other fee beyond the standard advisory fees paid by the investment funds (and not by the Plan).  (SMF ¶ 34.)  The Plan was also invested in the lowest-cost Putnam share classes, satisfying the requirement that the Plan have no less favorable terms of participation than are offered to other investors.  (Compl. ¶ 78(a).)  Moreover, as lower-cost R6 share classes were introduced, the Plan's fiduciaries converted eligible funds to that share class.  (SMF ¶¶ 36-39.)  Similarly, ERISA exemption § 408 is satisfied because the fees associated with the Putnam-affiliated funds are within a range that courts have found reasonable as a matter of law.  (*See supra*, Argument, Part I.B.)

Where -- as here -- there is no evidence rebutting the foregoing exemptions, courts have dismissed prohibited transaction challenges premised upon the offering of affiliated funds.  For example, in *Mehling v. New York Life Insurance Co.*, plaintiffs alleged that the investment of 401(k) plan assets in affiliated mutual funds violated ERISA's prohibited transactions provisions.  163 F. Supp. 2d 502, 510 (E.D. Pa. 2001).  In dismissing plaintiffs' prohibited transaction claims, the court held that "[p]laintiffs do not allege that the fees paid by the [p]lans are not in compliance with the requirements of PTE 77-3, or that the [p]lans have had dealings with the [affiliated funds] on terms that are less favorable than are offered to other shareholders."  *Id.*  The same result is warranted here.

**B.      Counts II And III Should Be Dismissed Insofar As
They Purport To Challenge Transactions Barred By ERISA's
Six-Year Statute Of Repose Or Three-Year Statute Of Limitations**

ERISA § 413 establishes both (1) a six-year statute of repose and (2) a three-year statute of limitations.  29 U.S.C. § 1113.  ERISA's six-year statute of repose bars any action brought six years "after . . . the date of the last action which constituted a part of the breach or violation."  *Id.* § 1113(1)(A).  Courts have held that for limitations purposes, a prohibited transaction occurs when a plan makes the initial decision to select an affiliated fund as an investment option.  For example, in *David v. Alphin*, the Fourth Circuit affirmed summary dismissal of prohibited transaction claims premised upon the offering of affiliated mutual funds in a 401(k) investment menu, because those funds were added to the plan more than six years prior to commencement of the action.  704 F.3d 327, 339-41 (4th Cir. 2013).  The court rejected appellants' argument that the failure to remove the affiliated funds tolled the statute of repose.  *Id.* at 341.  In that regard, the court held "[t]he only action that can support an alleged prohibited transaction is the initial selection of the affiliated funds, which undisputedly occurred [more than six years prior to the filing of the action]."  *Id.*

Similarly, ERISA's statute of limitations provides that no action may be brought "three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation."  29 U.S.C. § 1113(2).  In assessing the actual knowledge element of ERISA's limitation period, the First Circuit has made clear that a plaintiff may not ignore the obvious: "we do not think Congress intended the actual knowledge requirement to excuse willful blindness by a plaintiff."  *Edes v. Verizon Commc'ns, Inc.*, 417 F.3d 133, 142 (1st Cir. 2005).  Accordingly, "actual knowledge" means knowledge of the material or essential facts constituting the alleged violation.  *Id.* at 142 (actual knowledge occurs when "a plaintiff knows the essential facts of the transaction or conduct constituting the violation") (quotation omitted).  Moreover,

17

courts have repeatedly held that documents provided to plan participants establish actual knowledge for ERISA limitations purposes. *See Young v. Gen. Motors Inv. Mgmt. Corp.*, 550 F. Supp. 2d 416, 420 (S.D.N.Y. 2008), *aff'd*, 325 F. App'x 31 (2d Cir. 2009). Here, it is undisputed that Plan participants received regular communications regarding the Plan's investment lineup. (SMF ¶ 27.)

In this case, sixty-seven investment options were added to the Plan's investment lineup more than six years prior to the commencement, and five options were added after November 2009, but more than three years prior to the filing of the Complaint. (*Id.* ¶ 35.) Accordingly, Plaintiffs' prohibited transaction claims based on seventy-two investment options are time barred.

**III.  COUNTS IV AND V SHOULD BE DISMISSED BECAUSE THERE CAN BE NO LIABILITY FOR THOSE COUNTS ABSENT AN UNDERLYING ERISA VIOLATION, AND ALSO BECAUSE THE <u>RECORD DEMONSTRATES ACTIVE MONITORING OF PLAN FIDUCIARIES</u>**

Count IV asserts that Putnam, Mr. Reynolds and the PBOC failed to monitor the fiduciaries they had responsibility for appointing, including by failing to remove appointees who maintained purportedly imprudent investments (Compl. ¶¶ 135-42), and Count V purports to seek "other equitable relief" under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), against the Putnam Companies (*id.* ¶¶ 143-47.) Those Counts should be dismissed in their entirety "as derivative of Plaintiffs' failed duty of prudence claim. Plaintiffs cannot maintain a claim for breach of the duty to monitor by" Putnam and Mr. Reynolds, or seek equitable relief, "absent an underlying breach of the duties imposed under ERISA," which, for the reasons discussed above, should be dismissed. *See Rinehart v. Akers*, 722 F.3d 137, 154 (2d Cir. 2013), *vacated on other grounds*, 134 S. Ct. 2900 (2014); *accord, e.g.*, *Bunch*, 532 F. Supp. 2d at 292 (dismissing claim of failure to monitor fiduciaries where there was no underlying breach of fiduciary duty).

18

Plaintiffs' failure to monitor claim (Count IV) should be dismissed for the independent reason that the record evidence demonstrates that the Plan's fiduciaries were appropriately monitored.  (SMF ¶¶ 55-59.)  One with the power to appoint fiduciaries is not obligated to examine every action taken by the fiduciary.  *See Howell v. Motorola, Inc.*, 633 F.3d 552, 573 (7th Cir. 2011) (affirming summary judgment in favor of defendants and rejecting "a duty to monitor that would require every appointing Board member to review all business decisions of Plan administrators").  Rather, the duty to monitor requires only that:

> At reasonable intervals the performance of trustees and other fiduciaries should be reviewed by the appointing fiduciary in such manner as may be reasonably expected to ensure that their performance has been in compliance with the terms of the plan and statutory standards, and satisfies the needs of the plan.

29 C.F.R. § 2509.75-8 (FR-17).  "The duty exists so that a plan administrator or sponsor cannot escape liability by passing the buck to another person and then turning a blind eye."  *Howell*, 633 F.3d at 573.

As in *Howell*, the record evidence demonstrates that the Plan's fiduciaries were monitored.  The PBOC appointed experienced investment professionals to the PBIC, received regular updates from the Chair of the PBIC concerning PBIC meetings, received copies of PBIC meeting minutes, engaged in substantive discussions about topics being considered by the PBIC, and regularly reported to Mr. Reynolds.  (SMF ¶ 59.)  These were adequate measures carried out at reasonable intervals to ensure that the PBIC members acted in compliance with, and for the benefit of, the Plan.

## CONCLUSION

For all of the foregoing reasons, the Court should grant summary judgment in favor of Defendants on all of Plaintiffs' claims, and dismiss the Second Amended Complaint (Docket No. 73) with prejudice.

Dated:  January 9, 2017
        Boston, Massachusetts

Respectfully submitted,

/s/ James R. Carroll
James R. Carroll (BBO #554426)
Eben P. Colby (BBO #651456)
Michael S. Hines (BBO #653943)
SKADDEN, ARPS, SLATE
  MEAGHER & FLOM LLP
500 Boylston Street
Boston, Massachusetts 02116
(617) 573-4800
james.carroll@skadden.com
eben.colby@skadden.com
michael.hines@skadden.com

Counsel for Defendants

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants on January 9, 2017.

Dated:  January 9, 2017      /s/ Michael S. Hines
                             Michael S. Hines