UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

JOHN BROTHERSTON and JOAN GLANCY,          :
individually and as representatives of a class of
similarly situated persons, and on behalf of the          :
Putnam Retirement Plan,

                                                    :

             Plaintiffs,          :          Civil Action
                                                    :          No. 15-13825-WGY

         v.          :

PUTNAM INVESTMENTS, LLC, PUTNAM
INVESTMENT MANAGEMENT, LLC, PUTNAM          :
INVESTOR SERVICES, INC., the PUTNAM
BENEFITS INVESTMENT COMMITTEE, the          :
PUTNAM BENEFITS OVERSIGHT COMMITTEE,
and ROBERT REYNOLDS,          :

             Defendants.          :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION FOR JUDGMENT ON PARTIAL FINDINGS AS TO
ALL OF PLAINTIFFS' REMAINING CLAIMS PURSUANT TO FED. R. CIV. P. 52(c)**

                       Raoul D. Kennedy
                       James R. Carroll
                       Eben P. Colby
                       Michael S. Hines
                       SKADDEN, ARPS, SLATE,
                        MEAGHER & FLOM LLP
                       500 Boylston Street
                       Boston, Massachusetts 02116
                       (617) 573-4800

                       Counsel for Defendants
                       Putnam Investments, LLC,
                       Putnam Investment Management LLC,
                       Putnam Investor Services, Inc.,
                       Putnam Benefits Investment Committee,
                       Putnam Benefits Oversight Committee and
Dated:  April 19, 2017              Robert Reynolds

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................... ii

PRELIMINARY STATEMENT ................................................................................... 1

ARGUMENT .............................................................................................................. 4

I.     PLAINTIFFS HAVE NOT SHOWN THAT DEFENDANTS DID
       NOT INTEND TO ACT IN THE BEST INTERESTS OF PLAN
       PARTICIPANTS, AND THUS HAVE NOT MET THEIR BURDEN OF
       PROVING THAT DEFENDANTS BREACHED THEIR DUTY OF LOYALTY .......... 4

II.    PLAINTIFFS FAILED TO MEET THEIR
       BURDEN OF PROVING THAT DEFENDANTS BREACHED
       THEIR DUTY OF PRUDENCE OWED TO PLAN PARTICIPANTS .......................... 6

       A.     Plaintiffs Failed to Demonstrate That
               Defendants Breached Their Duty To Monitor Plan Investments ............................ 6

       B.     Plaintiffs Failed To Demonstrate That The
               Plan's *Entire Lineup* Was Imprudently Constructed, Either In The
               Aggregate Or Due To The Inclusion Of Individual Investment Options ............... 9

III.   PLAINTIFFS FAILED TO MEET THEIR BURDEN
       OF PROVING THAT PUTNAM, MR. REYNOLDS AND THE
       PBOC FAILED TO MONITOR INVESTMENT FIDUCIARIES ................................ 12

IV.   PLAINTIFFS FAILED TO MEET THEIR BURDEN TO ESTABLISH A PRIMA
       FACIE CASE OF LOSS TO THE PLAN CAUSED BY ANY BREACH ...................... 12

       A.     Plaintiffs Cannot Recover Any Alleged
               Investment Losses Where They Have Failed To
               Prove That Any Particular Investment Was Imprudent ........................................ 13

       B.     Plaintiffs Have Not Established That
               The Hypothetical Investment Portfolios Used In Dr. Pomerantz's
               Loss Analyses Were Plausible Alternatives To The Putnam Funds .................... 16

V.    PLAINTIFFS FAILED TO MEET THEIR BURDEN TO
       ESTABLISH A PRIMA FACIE CASE OF ANY ILL-GOTTEN PROFITS
       GAINED BY DEFENDANTS THROUGH THE MISUSE OF PLAN ASSETS ........... 19

CONCLUSION ........................................................................................................... 20

## **TABLE OF AUTHORITIES**

**CASES**                                                                             **PAGE(S)**

*A.F. v. Providence Health Plan*,
    173 F. Supp. 3d 1061 (D. Or. 2016) ...................................................................4

*Bendaoud v. Hodgson*,
    578 F. Supp. 2d 257 (D. Mass. 2008) ..............................................................14

*Bunch v. W.R. Grace & Co.*,
    532 F. Supp. 2d 283 (D. Mass. 2008) ...........................................................4, 6, 7

*Bunch v. W.R. Grace & Co.*,
    555 F.3d 1 (1st Cir. 2009)...................................................................2, 4, 6, 10

*Carl Colteryahn Dairy, Inc. v. Western Pennsylvania Teamsters & Employers Pension Fund*,
    847 F.2d 113 (3d Cir. 1988) ...........................................................................18

*Degnan v. Publicker Industries, Inc.*,
    42 F. Supp. 2d 113 (D. Mass. 1999) ..................................................................4

*DiFelice v. U.S. Airways, Inc.*,
    497 F.3d 410 (4th Cir. 2007) .........................................................................4, 7

*Donovan v. Bierwirth*,
    754 F.2d 1049 (2d Cir. 1985) ...........................................................13, 14, 18, 19

*Dupree v. Prudential Insurance Co. of America*,
    No. 99-cv-8337, 2007 WL 2263892 (S.D. Fla. Aug. 10, 2007) ............................9

*Evans v. Akers*,
    534 F.3d 65 (1st Cir. 2008)...........................................................................12, 13, 15

*Fifth Third Bancorp v. Dudenhoeffer*,
    134 S. Ct. 2459 (2014)...................................................................................13

*Fink v. National Savings & Trust Co.*,
    772 F.2d 951 (D.C. Cir. 1985)........................................................................16

*Fishman Haygood Phelps Walmsley Willis & Swanson, L.L.P., v. State Street Corp.*,
    No. 09-10533, 2010 WL 1223777 (D. Mass. Mar. 25, 2010) ............................14

*Framingham Union Hospital, Inc. v. Travelers Insurance Co.*,
    721 F. Supp. 1478 (D. Mass. 1989) ..................................................................19

*Harris v. Harvard Pilgrim Health Care, Inc.*,
    208 F.3d 274 (1st Cir. 2000)............................................................................20

ii

*Hecker v. Deere & Co.*,
   556 F.3d 575 (7th Cir. 2009) .................................................................6, 10, 11

*Howell v. Motorola, Inc.*,
   633 F.3d 552 (7th Cir. 2011) .................................................................12

*In re Blinds to Go Share Purchase Litigation*,
   443 F.3d 1 (1st Cir. 2006)....................................................................20

*In re Boston Scientific Corp. ERISA Litigation*,
   254 F.R.D. 24 (D. Mass. 2008).............................................................13

*In re Fidelity ERISA Float Litigation*,
   829 F.3d 55 (1st Cir. 2016)...................................................................19

*In re McKesson HBOC, Inc. ERISA Litigation*,
   391 F. Supp. 2d 812 (N.D. Cal. 2005) ..................................................4

*Kuper v. Iovenko*,
   66 F.3d 1447 (6th Cir. 1995) ................................................................13

*Meyer v. Berkshire Life Insurance Co.*,
   250 F. Supp. 2d 544 (D. Md. 2003)......................................................6

*Meyer v. Berkshire Life Insurance Co.*,
   372 F.3d 261 (4th Cir. 2004) ................................................................6

*Pegram v. Herdrich*,
   530 U.S. 211 (2000)..............................................................................4

*Plasterers' Local Union No. 96 Pension Plan v. Pepper*,
   663 F.3d 210 (4th Cir. 2011) ................................................................16

*Schaefer v. Arkansas Medical Society*,
   853 F.2d 1487 (8th Cir. 1988) ..............................................................5, 6

*Silverman v. Mutual Benefit Life Insurance Co.*,
   138 F.3d 98 (2d Cir. 1998) ...................................................................13, 14

*Tatum v. RJR Pension Investment Committee*,
   761 F.3d 346 (4th Cir. 2014) ................................................................14, 15, 16

*Tussey v. ABB, Inc.*,
   No. 06-cv-04305, 2012 WL 1113291 (W.D. Mo. Mar. 31, 2012) ........17

*Tussey v. ABB, Inc.*,
   746 F.3d 327 (8th Cir. 2014) ................................................................17

*Tussey v. ABB, Inc.*,
  850 F.3d 951 (8th Cir. 2017) ........................................................................................14

*Veranda Beach Club Limited Partnership v. Western Surety Co.*,
  936 F.2d 1364 (1st Cir. 1991)........................................................................................17

## **RULES**                                             **PAGE(S)**

56 Fed. Reg. 10,724 ........................................................................................................1, 6

29 C.F.R. § 2509.75–8 .......................................................................................................12

## **STATUTES**                                     **PAGE(S)**

29 U.S.C. § 1104 ............................................................................................................6, 16

29 U.S.C. § 1109 ....................................................................................................12, 13, 19

## PRELIMINARY STATEMENT

Plaintiffs have not met *their burden* to prove by a preponderance of the evidence that Defendants[1] breached their fiduciary duties of loyalty and prudence to the Putnam Retirement Plan ("Plan").  Plaintiffs' overarching criticism that Defendants "used the Plan . . . [to] maximize profits at the expense of the Plan and its participants" (Second Am. Compl. ¶ 3 (ECF No. 73)) has only been contradicted by the evidence, which shows that Putnam did *not* seek to profit from the Plan.  Moreover, despite Plaintiffs' assertion that Defendants improperly "included every Putnam mutual fund in the Plan's investment menu"[2] (Pls.' Trial Br. at 2 (ECF No. 164)), the Department of Labor expressly permits mutual fund companies to offer their own products to the very people responsible for making them successful:  their employees.[3]  There is simply nothing imprudent about Putnam offering to participants its own mutual funds -- ranked by Barron's as No. 5 on a list of the top fund families over the last five years, and as No. 1 or No. 2 for one-year performance three times during the class period[4] -- at fees that this Court has already held to be reasonable.  Plaintiffs have failed to prove otherwise.

---

[1]      Defendants are Putnam Investments, LLC ("Putnam"), Putnam Investment Management, LLC ("Putnam Management"), Putnam Investor Services, Inc. ("Putnam Services," collectively, the "Putnam Companies"), the Putnam Benefits Investment Committee ("PBIC"), the Putnam Benefits Oversight Committee ("PBOC"), and Robert Reynolds.

[2]      The evidence is unrebutted that Putnam does *not* in fact offer every Putnam fund in the Plan.  For example, certain tax-exempt and closed-end funds are not offered.  (Apr. 12 Trial Tr. 33:1-12.)  Nor does Putnam offer hedge fund products in the Plan.  (*Id.*)

[3]      Notice of Proposed Rulemaking, Participant Directed Individual Account Plans, 56 Fed. Reg. 10,724, 10,730 (Mar. 13, 1991).

[4]      (*See* JX 559 at 9 (Best Fund Families of 2016); JX 248 at 283 (2014 Black Book).)  Barron's is a highly regarded financial reporting institution that performs in-depth analysis and ranks only a small fraction of the hundreds of mutual fund companies as the top mutual fund families each year.  (Apr. 14 Trial Tr. 36:8-15, 59:10-60:1.)  In 2016, Barron's ranked Putnam No. 52 for one-year performance -- and No. 18 in the U.S. Equity category -- and No. 41 for ten-year performance.  (JX 559 at 8-9.)

Plaintiffs similarly have failed to prove that, in light of the totality of the circumstances, Defendants engaged in any disloyal conduct.  Indeed, the evidence shows that Defendants consistently acted to benefit Plan participants at their *own* expense, such as by making voluntary contributions designed to maximize participants' retirement savings, "totaling millions of dollars . . . over the years," (Apr. 12 Trial Tr. at 40:13-20), and dwarfing any management fees earned from the Plan.  These actions do not advance Putnam's financial self-interest.  Indeed, the Plan's assets comprise a tiny fraction -- less than one percent -- of Putnam's total assets under management, making revenues earned on the Plan immaterial to Putnam.

Further, while Plaintiffs focus on the claimed imprudence of offering Putnam mutual funds in the Plan lineup, they have failed to adduce sufficient evidence that any decision with respect to any *particular* fund was imprudent under the circumstances then prevailing at any point during the class period.  At most, the record reflects, unsurprisingly, that some Putnam mutual funds performed less well than others for some periods of time.  But that fact does not render any of the Plan's investment options imprudent under ERISA.  Indeed, "the test of prudence . . . [is] not a test of the result of performance of the investment."  *Bunch v. W.R. Grace & Co.*, 555 F.3d 1, 7 (1st Cir. 2009).

Plaintiffs' claim that Defendants failed to monitor Plan investments fares no better.  Plaintiffs' theory implies that PBIC members should put on "blinders" when they enter committee meetings -- forgetting everything that they and others do at Putnam, including the close monitoring of the funds' performance and efforts at improvement.  Mr. Lenhardt's testimony on this point was understandably unrebutted:  Putnam is a mutual fund company and closely monitors the performance, risk, and fees of its funds, and continually takes steps to improve them.  ERISA is not "one size fits all" and permits fiduciaries to use methods

2

appropriate to their particular resources and circumstances to fulfill their duties.  Plaintiffs have presented no evidence that the PBIC's reliance, in part, on the comprehensive processes within the Putnam organization -- in which PBIC members themselves directly participate[5] -- was unlawful under the circumstances.  Indeed, it would have been inappropriate for the PBIC *not* to rely on the comprehensive resources available to it.

Nor have Plaintiffs met *their burden* to prove by a preponderance of the evidence a prima facie case of loss to the Plan caused by any breach or ill-gotten profits.  Plaintiffs cannot recover any alleged investment losses where, as here, they have failed to prove that *any particular investment* was imprudent.  Plaintiffs also have not proven that the alternative investment portfolios of entirely passive products used by their proffered expert were *plausible* alternatives to the lineup of Putnam funds for Plan participants who work for an active management company.  Moreover, Plaintiffs have failed to show any misuse of Plan assets justifying disgorgement of all of Defendants' management fees since 2009, and this Court's prior determination that "Putnam mutual funds pay reasonable management fees to Putnam" forecloses Plaintiffs' efforts to recoup those under any equitable theory.  (Findings of Fact, Rulings of Law & Order for J. at 19 (ECF No. 158) ("Order").)

Accordingly, Defendants are entitled under Federal Rule of Civil Procedure 52(c) to judgment in their favor on all of Plaintiff's remaining claims (Counts I, IV, and V).

---

[5]      (*See, e.g.*, Apr. 14 Trial Tr. 23:25-24:9 ("[PBIC members Paul Scanlon and Bob Kea] participate in [quarterly fund review in] two ways.  First, they're there to listen as other members present their . . . funds.  Additionally Paul and Bob are charged with presenting their set of funds, so they will put together materials and lead discussions around their particular responsibilities, and again collect feedback from the rest of the team.").)

## ARGUMENT

### I.     PLAINTIFFS HAVE NOT SHOWN THAT DEFENDANTS DID NOT INTEND TO ACT IN THE BEST INTERESTS OF PLAN PARTICIPANTS, AND THUS HAVE NOT MET THEIR BURDEN OF PROVING THAT DEFENDANTS BREACHED THEIR DUTY OF LOYALTY

It is Plaintiffs' burden to prove by a preponderance of the evidence that Defendants failed to discharge their duty of loyalty with respect to the Plan.  In order to prevail on this claim, Plaintiffs must prove that Defendants *intended to* -- and did -- act out of self-interest and personal motivation without concern for plan participants.  *Degnan v. Publicker Indus., Inc.*, 42 F. Supp. 2d 113, 120 (D. Mass. 1999) (observing that "defendants' state of mind . . . is clearly material" in determining whether breach of duty of loyalty occurred); *accord, e.g.*, *A.F. v. Providence Health Plan*, 173 F. Supp. 3d 1061, 1073 (D. Or. 2016) (observing that ERISA § 404(a)(1)(A) "looks to the fiduciary's subjective motivation in determining whether the fiduciary is in compliance with the rule").  A conflict of interest alone is insufficient to establish a breach of the duty of loyalty; indeed, "it is well-established that a fiduciary does not breach its duty of loyalty solely by conducting other activities that relate to or impact the Plan," *Bunch v. W.R. Grace & Co.*, 532 F. Supp. 2d 283, 291 (D. Mass. 2008), *aff'd*, 555 F.3d 1 (1st Cir. 2009), nor is it "fatal that a plan fiduciary has 'financial interests adverse to beneficiaries,'" *DiFelice v. U.S. Airways, Inc.*, 497 F.3d 410, 421 (4th Cir. 2007) (quoting *Pegram v. Herdrich*, 530 U.S. 211, 225 (2000)).  Instead, a plaintiff must show "actual disloyal conduct."  *In re McKesson HBOC, Inc. ERISA Litig.*, 391 F. Supp. 2d 812, 834-35 (N.D. Cal. 2005).

At most, Plaintiffs have attempted to advance vague theories of conflict of interest, such as the supposition that Defendants' actions with respect to the Plan were driven by a concern for maximizing profits and Putnam's bottom line.  But that is not sufficient to meet Plaintiffs' burden.  Indeed, the evidence shows that "[P]lan assets represent[] considerably less

4

than 1 percent of the assets under management in Putnam mutual funds," (Apr. 12 Trial Tr. 49:10-15), and, accordingly, the PBIC's decisions with regard to the Putnam funds in the Plan have a "negligible" economic impact on Putnam. (*Id.* at 49:16-20.) Moreover, the evidence shows that Defendants did *not* exploit the Plan to serve Putnam's interests, but rather, voluntarily took actions that *cost* Putnam considerable sums of money and significantly dwarf any revenue received from the Plan. For example, in an effort to maximize participants' savings for retirement, Defendants have:

- Implemented a matching contribution *on top of* its discretionary contribution, totaling more than ***$40 million*** during the class period (JX 169-175 (2009-2015 Putnam Retirement Plan Forms 5500 at Schedule H, Part II, Line 2(a)(1)(A)));

- Paid Plan administrative expenses out of pocket (Apr. 12 Trial Tr. at 34:20-35:8);

- Covered the cost of a service providing individualized investment advice to participants (*id.* at 35:1-3; 41:16-42:10); and

- Developed the award-winning Lifetime Income Analysis Tool, which participants can use at no cost to plan for retirement (*id.* at 21:16-22:7; 42:14-45:2.)

Plaintiffs cannot point to a *single* document or any testimony supporting the claim that Defendants acted out of self-interest or personal motivation.

Such lack of evidence of disloyal conduct differentiates this case from the cases Plaintiffs cited in their Trial Brief. (*See* Pls.' Trial Br. at 6-8.) For example, in *Schaefer v. Arkansas Medical Society*, the defendant recommended that the plan be amended to categorize employees' fringe benefits as compensation for purposes of calculating retirement benefits. 853 F.2d 1487, 1489 (8th Cir. 1988). The defendant did not investigate the amendment's financial impact on the Plan, and it ultimately threatened the Plan's solvency. *Id.* at 1489-90. The court affirmed the finding that the defendant breached his duty of loyalty, based on evidence that he stood to benefit personally from the amendment, which augmented his compensation "by the value of a fully paid company car in addition to dues and expenses at three private clubs." *Id.* at

1492.[6]  Defendants here have undertaken no such actual disloyal conduct at the expense of Plan

participants.  Therefore, Plaintiffs have failed to prove their duty of loyalty claim.

## II.     PLAINTIFFS FAILED TO MEET THEIR
        BURDEN OF PROVING THAT DEFENDANTS BREACHED
        THEIR DUTY OF PRUDENCE OWED TO PLAN PARTICIPANTS

Plaintiffs have failed to carry their burden of proving by a preponderance of the

evidence that Defendants breached the fiduciary duty of prudence.  The statutory prudence

standard is an objective one that considers whether fiduciaries acted "with the care, skill,

prudence, and diligence under the circumstances then prevailing that a prudent man acting in a

like capacity and familiar with such matters would use in the conduct of an enterprise of a like

character and with like aims."  29 U.S.C. § 1104(a)(1)(B).  This standard looks to how "a prudent

investor [would behave] under similar circumstances."  *Hecker v. Deere & Co.*, 556 F.3d 575,

586 (7th Cir. 2009).  "[T]he test of prudence . . . is one of *conduct*, and not a test of the result of

performance of the investment."  *Bunch*, 555 F.3d at 7 (first alteration in original).  Courts assess

prudence in light of "the *totality of the circumstances* involved in the particular transaction."

*Bunch*, 532 F. Supp. 2d at 288 (emphasis added).  The "relevant query" is whether Defendants

"took into account all relevant information in performing [their] fiduciary duty under ERISA."

*Id*.  Plaintiffs have not proven that Defendants failed to perform their fiduciary duty of prudence.

### A.     Plaintiffs Failed to Demonstrate That
        Defendants Breached Their Duty To Monitor Plan Investments

Plaintiffs' theory that Defendants "lacked any objective investment review process

---

[6]     *See also* Pls.' Trial Br. at 8 n.7 (citing *Meyer v. Berkshire Life Insurance Co.*, 250 F.
Supp. 2d 544, 567 (D. Md. 2003), *aff'd*, 372 F.3d 261 (4th Cir. 2004) (finding breach of duty of
loyalty where defendants "profited by purchasing excessive amounts of Berkshire life insurance
policies for the pension plans, generating significant premiums, commissions, and fees from
these policies, and receiving commissions from the purchases of other investment products,"
which "adversely affected the plans and their beneficiaries")).

whatsoever" (Pls.' Trial Br. at 14) is demonstrably false.  Plaintiffs attempt to prove their claim

exclusively through the purported omissions of the PBIC minutes, while ignoring the multitude

of processes that extend throughout the Putnam organization, which directly involve PBIC

members and are explicitly designed to "systematically consider all the investments . . . at

regular intervals to ensure that they are appropriate."  (*Id.* (internal quotation marks omitted).)

Putnam is a defendant in this case -- *not just* the *PBIC*.  For example, Putnam funds are

systematically reviewed:

- By the risk team, portfolio managers (including PBIC members), and analysts on a daily basis (Apr. 14 Trial Tr. 20:15-21:5.);

- At weekly risk meetings (attended by PBIC members), which monitor the funds to ensure that they are "taking prudent risk to deliver appropriate returns over the long term" (*id.* at 21:25-14);

- At quarterly fund reviews (attended by PBIC members), which assess the funds' investment process, risk, attribution, and performance -- including reasons for both out- and underperformance (*id.* at 23:9-24:1); and

- At meetings of the mutual funds' independent trustees (attended by PBIC members), which assess the funds' performance relative to peer funds and market benchmarks, both on an absolute and risk-adjusted basis.  (*Id.* at 39:17-46:13.)

The equitable nature of ERISA permits fiduciaries to "use appropriate methods"

to discharge their duties, *DiFelice*, 497 F.3d at 420 (internal quotation marks omitted), and

compliance with those duties is assessed in light of "the totality of the circumstances," *Bunch*,

532 F. Supp. 2d at 288.  ERISA does not prescribe any one way to satisfy the duty of prudence;

indeed, "[t]he evaluation is not a general one, but rather must depend[] on the . . . decision at

issue and the circumstances prevailing at the time." *DiFelice*, 497 F.3d at 420 (alteration in

original) (internal quotation marks omitted).  Plaintiffs have presented no evidence that it was

inappropriate under the circumstances for the PBIC to rely on the multi-layered processes

already embedded in the Putnam organization -- which exist for the express purpose of regularly

reviewing Putnam funds' performance, fees, and risk, among other things -- in order to discharge

its duty to monitor the Plan's investment options, especially where PBIC members are part of those multi-layered processes.

Plaintiffs have similarly presented insufficient evidence that any purported lack of process resulted in the retention of imprudent funds.  As evidence of imprudence, Plaintiffs rely primarily on the PBIC's failure to remove funds from the Plan in response to AAG reports showing funds with a "fail" designation.  However, those reports alone are insufficient to carry Plaintiffs' burden, particularly where (i) the same funds "pass" in other versions of the report,[7] and (ii) the reliability of the reports *for the purpose that Plaintiffs attempt to put them* has been so thoroughly discredited.  In particular, the reports provide only one backward-looking measure of fund performance and do not provide any detail about investment process, sources of return, relative risk, or tracking error.  (Apr. 14 Trial Tr. 70:22-71:15.)[8]  Further, the reports are based on Morningstar "star" ratings,[9] which, although widely used by retail investors, do not provide the sophistication that Lipper data do, on which investment professionals rely to provide a more carefully calibrated set of peer groups for comparative purposes.  (*Id.* at 64:11-65:2; 71:16-21.)  Plaintiffs have offered *no* evidence that a prudent fiduciary of any plan at any time would have -- or ever did -- remove funds from a plan in reliance on AAG reports.

---

[7]     (*See* Apr. 13. Trial Tr. 55:16-56:2 (testimony of Mr. Goodfellow that certain funds that received "fail" rating at one point during class period received "pass" ratings later).

[8]     (*See also* Apr. 11 Trial Tr. 37:4-11 (testimony of Mr. Mullen that "[a]s we looked into the AAG documents and we shared it with members of our investment professionals, we really determined that it was a flawed methodology"); Apr. 13 Trial Tr. 5:5-15 (testimony of Mr. Goodfellow that "[t]he AAG reports on the performance of the funds . . . [--] investment professionals on the committee . . . didn't think the analytics were very useful and that the organization had better analytics"; Apr. 14 Trial Tr. 70:5-71:2 (testimony of Mr. Lenhardt that AAG reports are "superficial and incomplete").

[9]     In participant account statements, Putnam includes historical performance data available through Morningstar, not Morningstar-based fund ratings of the sort included in the AAG reports.  (*See, e.g.*, JX 223 at 8 (John P. Brotherston Account Statement).)

**B.      Plaintiffs Failed To Demonstrate That The Plan's *Entire Lineup* Was Imprudently Constructed, Either In The Aggregate Or Due To The Inclusion Of Individual Investment Options**

Plaintiffs' overarching criticism is that "the PBIC acted with an eye single to Putnam by stuffing the Plan's investment lineup with **all** of Putnam's publicly-offered mutual funds" and that "the Plan's investment menu" was therefore "[i]mprudent[ly] [c]onstruct[ed]." (Pls.' Trial Br. at 7, 12.)  But Plaintiffs have failed to prove either that there was anything imprudent about (i) the Putnam fund lineup in the aggregate or (ii) any individual investment option in the Plan.

*First*, Plaintiffs have done nothing to undermine the settled principle that it is entirely appropriate and lawful for a company that manufactures and sells mutual funds to offer those funds to its own employees in its 401(k) plan -- nor could they.  Indeed, the Department of Labor expressly permits mutual fund companies to do so, observing that it would be "contrary to normal business practice for a company whose business is financial management to seek financial management services from a competitor."  Notice of Proposed Rulemaking, Participant Directed Individual Account Plans, 56 Fed. Reg. 10,724, 10,730 (Mar. 13, 1991).  Courts also have rejected the proposition that offering affiliated mutual funds violates ERISA.  *See Dupree v. Prudential Ins. Co. of Am.*, No. 99-cv-8337, 2007 WL 2263892, at *10 (S.D. Fla. Aug. 10, 2007) (finding that offering affiliated funds was prudent, where fiduciaries "were familiar with the investment managers personally, and were confident in their abilities and responsiveness").  This, of course, makes sense, and the evidence  is overwhelming that Putnam's employees favor being able to invest in Putnam funds that they are familiar with.  (*See, e.g.*, JX 555 (Asset Summary By Investment Option) (showing approximately 96.5% of Plan assets invested in Putnam funds, even though there are other options available through brokerage window); Apr. 12 Trial Tr. 61:8-11 (testimony from Mr. Mullen that Putnam employees want to invest in

Putnam funds); Apr. 7 Trial Tr. 54:14-55:3 (testimony from Mr. Goodfellow that only a small fraction of Plan participants choose invest in non-Putnam funds through brokerage window).)[10]

Nor does any "statute or regulation prohibit[] a fiduciary from selecting funds from one management company." *Hecker*, 556 F.3d at 586. Indeed, "many prudent investors limit themselves to funds offered by one company and diversify within the available investment options." *Id.* The record evidence demonstrates that the Plan allows participants to construct a diversified portfolio from investment options in various categories -- including target date, asset allocation, growth, blend, value, income, capital preservation, absolute return, and global sector -- that offer a broad array of risk and return characteristics and investment objectives. (*See, e.g.*, JX 467 at 14-25 (2011 Plan Enrollment Kit).) Accordingly, the fact that the Plan offers Putnam's mutual funds (along with mutual funds available through the brokerage window and, more recently, the BNY Mellon funds) does not constitute evidence that the Plan's lineup was imprudently constructed.

*Second*, Plaintiffs also have failed to prove as a factual matter that any individualized investment decision was imprudent *at the time it was made*. Any suggestion that investment options that were added to the Plan subsequently underperformed constitutes impermissible hindsight. *See Bunch*, 555 F.3d at 7 (holding that the test for imprudence under ERISA "is one of *conduct*, and not a test of the result of the performance of the investment" (citation omitted)). Further, with respect to the fees of the Plan's investment options, Plaintiffs have provided no factual basis for revisiting this Court's ruling that "Putnam mutual funds pay reasonable management fees to Putnam." (Order at 19.) It is still the case that the fees of the

---

[10]   Mr. Goodfellow's testimony concerning the ease of using the self-directed brokerage option and setting up recurring contributions to that account went unrebutted. (*See* Apr. 12 Trial Tr. 65:21-25; 68:6-7.)

Plan's investment options are reasonable as a matter of law, and that Defendants are under no fiduciary obligation "to scour the market to find and offer the cheapest possible fund (which might, of course, be plagued by other problems)." (*Id.* at 18 (quoting *Hecker*, 556 F.3d at 586).) Moreover, the record is clear that Defendants "consider[ed] the cost of the Putnam funds in the Plan versus other alternatives," (Pls.' Trial Br. at 17), as the funds' trustees compare their fees to those of peer funds as part of their annual review.  (*See* JX 248 at 15-384 (2014 Black Book).)

Instead of presenting evidence that particular funds were imprudent investment options when they were added, Plaintiffs instead rely on purported omissions *in the PBIC minutes* in an attempt to infer that no evaluation of new Putnam funds' prudence ever occurred. That approach erroneously suggests that PBIC members put on "blinders" when they enter committee meetings or behave as though they were employees of a hypothetical widget company -- forgetting everything that they and others do at Putnam, including the daily analysis of the funds' performance and areas for improvement.  (*See* Apr. 14 Trial Tr. 20:15-21:5.)  The evidence in fact demonstrates that funds added to the Plan were subject to rigorous analysis and review before being made available to mutual fund shareholders and Plan participants.  For example, before a new mutual fund is launched, its underlying investment strategy typically has been tested as sub-strategy of a broader fund, or as an investment strategy within an institutional account or an incubated fund.  (*Id.* at 16:13-17:16; Apr. 7 Trial Tr. 70:10-21.)  The Investment Division decides to launch a standalone mutual fund devoted to that investment strategy only after reviewing its proven track record of prior success, and determining that there is a market need that aligns with Putnam's skill set, as well as a portfolio manager with a proven track record in similar strategies who is well-suited to manage the fund.  (Apr. 14 Trial Tr. 13:11-17:16.)  The independent trustees also must analyze and approve the launch of a new mutual fund before it is

11

offered to the public.  (*Id.* at 17:22-18:4.)

## III.   PLAINTIFFS FAILED TO MEET THEIR BURDEN OF PROVING THAT PUTNAM, MR. REYNOLDS AND THE PBOC FAILED TO MONITOR INVESTMENT FIDUCIARIES

The duty to monitor plan fiduciaries entails a duty to review "[a]t reasonable intervals[,] the performance of trustees and other fiduciaries . . . in such manner as may be reasonably expected to ensure that their performance has been in compliance with the terms of the plan and statutory standards, and satisfies the needs of the plan."  *Howell v. Motorola, Inc.*, 633 F.3d 552, 573 (7th Cir. 2011) (quoting 29 C.F.R. § 2509.75–8 at FR–17).  Plaintiffs have failed to prove by a preponderance of the evidence that Putnam, Mr. Reynolds, and the PBOC failed to meet that standard.  In fact, the evidence adduced shows the opposite:  the PBOC met at regular intervals; reviewed the activities of the PBIC; engaged in substantive discussions concerning decisions facing the PBIC; appointed qualified members to the PBIC; and regularly reported to Mr. Reynolds.[11]  These were adequate measures carried out at reasonable intervals to ensure that the PBIC members acted in compliance with, and for the benefit of, the Plan, and are consistent with appropriate monitoring efforts recognized in the case law.  *See Howell*, 633 F.3d at 573 (dismissing monitoring claim where "[p]lan procedures required annual renewal of appointments to the Committee [and] periodic reports by the Committee to the Board").

## IV.   PLAINTIFFS FAILED TO MEET THEIR BURDEN TO ESTABLISH A PRIMA FACIE CASE OF LOSS TO THE PLAN CAUSED BY ANY BREACH

ERISA "requires fiduciaries who breach their duties 'to make good to such plan the *losses to the plan resulting from such breach*.'"  *Evans v. Akers*, 534 F.3d 65, 74 (1st Cir.

---

[11]   (*See, e.g.*, JX 16 (Apr. 29, 2009 PBOC Minutes); JX 34 (June 8, 2010 PBOC Mid-Year Update); JX 35 (June 8, 2010 PBOC Minutes); JX 53 (June 14, 2011 PBOC Minutes); JX 131 (Sept. 19, 2014 PBOC Minutes); JX 302 (PBOC 2014 Fiduciary Responsibilities Review); Apr. 11 Trial Tr. 68:23-69:11.)

2008) (quoting 29 U.S.C. § 1109(a) (emphasis added)).  "Causation of damages is . . . an element of [an ERISA] claim, and the plaintiff bears the burden of proving it."  *Silverman v. Mut. Ben. Life Ins. Co.*, 138 F.3d 98, 105 (2d Cir. 1998); *see also Kuper v. Iovenko*, 66 F.3d 1447, 1459 (6th Cir. 1995), *abrogated on other grounds*, *Fifth Third Bancorp v. Dudenhoeffer*, 134 S. Ct. 2459 (2014) ("[A] plaintiff must show a causal link between the failure to investigate and the harm suffered by the plan.").  ERISA plan participants "can only recover if they can show that the value of the investments would have been greater had the fiduciary fulfilled its duty."  *In re Boston Sci. Corp. ERISA Litig.*, 254 F.R.D. 24, 31 (D. Mass. 2008).  To recover damages, Plaintiffs also must show that any comparator to a plan's investment options constitutes an "equally plausible" investment strategy.  *Donovan v. Bierwirth*, 754 F.2d 1049, 1056 (2d Cir. 1985).  Because Plaintiffs have failed to establish either (i) a prima facie case of loss to the Plan, or (ii) that their proposed comparators are not equally plausible, they are not entitled to damages under any theory of recovery.

> ### A.  Plaintiffs Cannot Recover Any Alleged Investment Losses Where They Have Failed To Prove That Any Particular Investment Was Imprudent

Even assuming *arguendo* that Plaintiffs had met their burden of proving a breach of the duty to monitor Plan investments (which they have not), Plaintiffs cannot establish a prima facie case of loss to the Plan caused by such a breach.  Here, the only evidence offered by Plaintiffs on this issue was the analysis of their purported expert, Dr. Pomerantz, who declares as imprudent *the entirety of the Putnam funds lineup*, for the entirety of the class period.  The frequently criticized[12] Dr. Pomerantz compared the actual investment performance and fees of

---

[12]     *See, e.g.*, Defs.' Mem. Of Law In Supp. Of Their Mot. To Exclude In Part The Expert Report & Testimony of Dr. Steve Pomerantz (ECF No. 138) (collecting cases).

the Plan as invested in *actively-managed* Putnam mutual funds, to the hypothetical investment performance and fees of the Plan had its assets been invested in (i) six *passively-managed* BNY Mellon CITs,[13] or (ii) *passively-managed* Vanguard index funds.  But Dr. Pomerantz's simplistic comparison provides no objective basis for discerning the prudence of individual investment options:  while he shows that some Putnam funds may be more expensive or may have underperformed certain comparators at certain moments in time, he does not opine on *how much* more expensive a fund would need to be, or *how much* it would have had to underperform, in order to be considered imprudent.  Thus, even if Defendants had monitored the funds as advocated by Plaintiffs, Plaintiffs have not established that any particular investment was imprudent, and thus have not proven a causal connection between the purported failure to monitor and any loss to the Plan.  *See, e.g.*, *Silverman*, 138 F.3d at 105 (affirming grant of summary judgment to defendant where there was "no record evidence to demonstrate a causative link between [defendant's] inaction" and any plan losses).

        Indeed, a review of the cases cited in Plaintiffs' Trial Brief makes plain that they cannot recover *any* purported investment losses where they have failed to show that any particular Putnam mutual fund was imprudent.  (*See* Pls.' Trial Br. at 21-22.)[14]  In particular,

---

[13]     The institutional share classes of the BNY Mellon CITs that Dr. Pomerantz uses as comparators did not even exist for the majority of the class period.  (*See, e.g.*, JX 155 at 1 (BNY Mellon Aggregate Bond Index Fund As Of September 30, 2015) (stating that "[t]he Institutional Class is newly created").

[14]     *Tussey v. ABB, Inc.*, 850 F.3d 951, 956 (8th Cir. 2017) (concluding there was "strong evidence" that decision to remove fund and map its assets to new funds was imprudent); *Tatum v. RJR Pension Inv. Comm.*, 761 F.3d 346, 355 (4th Cir. 2014) (addressing allegedly imprudent divestiture from Nabisco stock); *Bierwirth*, 754 F.2d at 1052 (finding imprudent investment in employer stock); *Fishman Haygood Phelps Walmsley Willis & Swanson, L.L.P., v. State St. Corp.*, No. 09-10533, 2010 WL 1223777, at *6 (D. Mass. Mar. 25, 2010) (addressing allegedly imprudent investments in mortgage-backed securities); *Bendaoud v. Hodgson*, 578 F. Supp. 2d 257, 260 (D. Mass. 2008) (addressing allegedly imprudent investments in employer stock).)

Case 1:15-cv-13825-WGY   Document 168   Filed 04/19/17   Page 20 of 25


Plaintiffs attempt to rely on cases that measure losses "by comparing the performance of the *imprudent investments* with the performance of a prudently invested portfolio." *Evans*, 534 F.3d at 74 (emphasis added). But that measure of loss is inapplicable here because Plaintiffs have not established the imprudence of any particular investment. Accordingly, even if Plaintiffs were able to prove a breach of the duty to monitor (which they cannot), Plaintiffs have failed to establish a prima facie case for the purported investment "losses" they seek.

Plaintiffs' reliance on *Tatum v. RJR Pension Investment Committee*, 761 F.3d 346 (4th Cir. 2014), is unpersuasive. (*See* Pls.' Trial Br. at 20-23.) In *Tatum*, the plaintiff challenged the fiduciary's divestment from Nabisco stock despite the likelihood that it would rebound *Id.* at 355. Plaintiff demonstrated the imprudence of the fiduciary's decision-making process with respect to that divestment, and offered evidence that Nabisco stock began to rise shortly after the divestment, and a takeover attempt resulted in RJR's purchase of Nabisco shares at a much higher share price. *Id.* at 354-55. Plaintiffs cite *Tatum* for the proposition that "a plaintiff who has proved the defendant-fiduciary's procedural imprudence and a prima facie loss prevails *unless* the defendant-fiduciary can show, by a preponderance of the evidence, that a prudent fiduciary *would have* made the same decision." *Id.* at 364; *see also* Pls.' Trial Br. at 22. Here, however, even assuming *arguendo* that Plaintiffs "proved the defendant-fiduciary's procedural imprudence" with respect to monitoring the Plan investment generally, Plaintiffs have not met their burden of "prov[ing] . . . a prima facie loss" related to such a breach. *Id.* In contrast to *Tatum* -- where the plaintiff adduced evidence sufficient to infer that had the divestiture not occurred, the plan would have remained invested in Nabisco stock and benefited from the rebounding stock price -- Plaintiffs here point to *no evidence* sufficient to draw an inference that had Defendants fulfilled their duty to monitor, the Plan would have invested exclusively in

passively-managed BNY Mellon CITs or passively-managed Vanguard index funds, and would have benefited from the hypothetical outperformance of those investments.

Further, the First Circuit has never adopted *Tatum*'s loss causation analysis, and there is good reason to believe that it would not do so. As Judge Wilkinson stated in vigorous dissent in *Tatum*, "monetary liability under § 1109 lies for a fiduciary's breach of the duty of procedural prudence only where a plaintiff *also establishes loss causation*." *Id.* at 373 (emphasis added). "[L]oss causation remains part of the plaintiff's burden." *Id.* at 374 (citing *Plasterers' Local Union No. 96 Pension Plan v. Pepper*, 663 F.3d 210, 217 (4th Cir. 2011) ("[S]imply finding a failure to investigate or diversify does not automatically equate to causation of loss and therefore liability.")). Judge Wilkinson further observed that "the weight of circuit precedent supports keeping the burden of proof on the party bringing suit." *Id.* at 374-75 (collecting cases and quoting *Fink v. National Savings & Trust Co.*, 772 F.2d 951, 962 (D.C. Cir. 1985) (Scalia, J., concurring in part and dissenting in part) ("It is the imprudent investment rather than the failure to investigate and evaluate that is the basis of suit; breach of the latter duty is merely evidence bearing upon breach of the former.")) Plaintiffs have failed to prove any causal link.

> **B.    Plaintiffs Have Not Established That The Hypothetical Investment Portfolios Used In Dr. Pomerantz's Loss Analyses Were Plausible Alternatives To The Putnam Funds**

Plaintiffs have offered no evidence to suggest that, but for Defendants' purported failure to monitor the funds, "a prudent man acting in a like capacity and familiar with such matters" would have offered Plan participants a lineup consisting exclusively of the BNY Mellon CITs or Vanguard index funds. *See* 29 U.S.C. § 1104(a)(1)(B). Even assuming that Plaintiffs were able to prove that Defendants somehow breached their duties to Plan participants by offering certain Putnam funds in the Plan lineup, Plaintiffs have not demonstrated, as they must, that the hypothetical all-passive investment lineups used by Dr. Pomerantz in his proffered loss

analysis are plausible alternative investment scenarios *for Putnam's Plan participant*s.

Courts require Plaintiffs seeking damages under ERISA to prove the plausibility of an alternative investment scenario that they seek to use as a comparator to the allegedly imprudent investment decision.  For example, in *Tussey v. ABB, Inc.*, the district court found that the defendants breached their fiduciary duty by removing an investment option from the plan's offerings and replacing it with another set of funds.  No. 06-cv-04305, 2012 WL 1113291, at *37 (W.D. Mo. Mar. 31, 2012), *aff'd in part, vacated in part, rev'd in part*, 746 F.3d 327 (8th Cir. 2014).  The court awarded damages based on the inference that participants who invested in the new funds would have invested in the old fund had it not been removed.  *Id.*  But the Eighth Circuit vacated the district court's damages award, reasoning that the plaintiffs "fail[ed] to cite any evidentiary support for inferring the participants' voluntary" investment in the old funds. *Tussey v. ABB, Inc.*, 746 F.3d 327, 339 (8th Cir. 2014).  Counseling that "[a] reasonable inference is one which may be drawn from the evidence without resort to speculation," the Eighth Circuit held that the district court's damages award was "speculative and exceed[ed] the losses to the plan resulting from any fiduciary breach."  *Id.* (internal quotation marks omitted).[15]

Plaintiffs have offered no evidence to support any inference that a prudent person standing in Defendants' shoes -- and crafting a 401(k) plan to best suit the employees of an active mutual fund manager -- would have replaced actively-managed Putnam mutual funds with either six passively-managed BNY Mellon CITs, or passively-managed Vanguard index funds.  Nor have Plaintiffs offered any evidentiary support for inferring that Plan participants would have sought or invested in a portfolio of exclusively BNY Mellon CITs or Vanguard index funds.

---

[15]     *Accord Veranda Beach Club Ltd. P'ship v. W. Sur. Co.*, 936 F.2d 1364, 1380 (1st Cir. 1991) (stating general principle that "damages must be based on hard evidence, not on cotton candy composed of conjecture, speculation, and surmise").

Indeed, the trial record is to the contrary.  For example:

- As of December 31, 2016, only approximately 1% of Plan assets are invested in the BNY Mellon CITs.  (*See* JX 555 (Asset Summary By Investment Option).)

- As of December 31, 2016, at least 92% of Plan assets are invested in actively-managed Putnam funds.  (*See id.*)

- As of December 31 2016, almost 90% of Mr. Brotherston's Plan account was still invested in actively-managed Putnam funds (*see* JX 560 (John P. Brotherston Account Statement)), even though he left Putnam in 2009, while Ms. Glancy's account was exclusively invested in actively-managed Putnam funds when she withdrew her balance in 2010, (*see* JX 241 (Joan F. Glancy Account Statement).)

- Both representative Plaintiffs *continue* to invest in actively-managed funds outside the Plan.  (Apr. 18 Trial Tr. at 34:6-14; 69:18-69:1.)

Thus, Plaintiffs' theory of "loss" reflects pure speculation, untethered to the evidence.

Plaintiffs attempt to overcome this fatal defect by suggesting that they can cherry-pick the most profitable alternative investment portfolio they like, so long as they believe it would have been prudent.  (*See* Pls.' Trial Br. 21-22.)  That is not the law.  *See, e.g.*, *Carl Colteryahn Dairy, Inc. v. W. Penn. Teamsters & Emp'rs Pension Fund*, 847 F.2d 113, 122 (3d Cir. 1988) (holding that, due to its "equitable character," ERISA prohibits unjust enrichment).  In particular, Plaintiffs' reliance on *Bierwith*, 754 F.2d at 1056, is misplaced.  In *Bierwirth*, the plaintiff challenged the prudence of the fiduciaries' use of plan assets to purchase company stock to defeat a tender offer.  *Id.* at 1051.  Although the stock's price declined after the tender offer failed, the plan -- with the permission of the district court -- sold the stock several months later for a profit.  *Id.*  The court then dismissed the complaint after a bench trial, ruling that the "[p]lan had not suffered a 'loss' within the meaning of ERISA" because the stock was sold at a gain.  *Id.*  On appeal, the Second Circuit held that the correct measure of loss under the circumstances "requires a comparison of what the [p]lan actually earned on the [company stock] with what the [p]lan would have earned had the funds been available for other [p]lan purposes."  *Id.* at 1056.

18

"[I]f the former is greater [than the latter], no loss was sustained."  *Id.*  In the event that "several

alternative investment strategies were *equally plausible*," the Second Circuit suggested that a

court could break any such tie by "presum[ing] that the funds would have been used in the most

profitable" investment strategy.  *Id.* (emphasis added).  But because Plaintiffs have not

established that a lineup comprised exclusively of BNY Mellon CITs or Vanguard index funds

would be an "equally plausible" alternative to the Plan's current lineup, *Bierwirth*'s approach to

tie-breaking has no import here.

## V.   PLAINTIFFS FAILED TO MEET THEIR BURDEN TO ESTABLISH A PRIMA FACIE CASE OF ANY ILL-GOTTEN PROFITS GAINED BY DEFENDANTS THROUGH THE MISUSE OF PLAN ASSETS

Plaintiffs have not made a prima facie showing of entitlement to a "restor[ation

of] . . . any profits of such fiduciary which have been made through use of assets of the plan by

the fiduciary."  29 U.S.C. § 1109(a).  This disgorgement remedy is proper only to restore profits

acquired "through improper use of plan assets."  *Framingham Union Hosp., Inc. v. Travelers Ins.

Co.*, 721 F. Supp. 1478, 1487 (D. Mass. 1989).  Plaintiffs have adduced *no evidence* that

Defendants profited from an improper use of Plan assets.[16]

Nor have Plaintiffs proved by a preponderance of the evidence that Defendants

have profited off the Plan.  Indeed, the evidence adduced at trial shows the exact opposite:  the

*cost* to Putnam of administering the Plan, including the payment of recordkeeping expenses and

the generous matching and discretionary contributions, which have "total[ed] millions of

dollars . . . over the years."  (Apr. 12 Trial Tr. 40:13-20.)  The congressional purpose in enacting

---

[16]   This Court correctly held that because management fees are paid out of the cash held by each mutual fund, they do not constitute "plan assets" under prevailing First Circuit law.  (Order at 13-15 (citing *In re Fidelity ERISA Float Litig.*, 829 F.3d 55, 62 (1st Cir. 2016).)  Thus, there has been no improper use of "assets of the plan" within the meaning of 29 U.S.C. § 1109(a).

ERISA was to ensure that "no one party, not even plan beneficiaries, should unjustly profit." (Order at 27 (quoting *Harris v. Harvard Pilgrim Health Care, Inc.*, 208 F.3d 274, 279 (1st Cir. 2000)).)  Plaintiffs have not presented any evidence that *Defendants* have profited, and indeed, Plaintiffs' argument would yield an unjust windfall, in light of record evidence of the significant sums they have already received.  (*See* JX 492 (showing that Mr. Brotherston received $116,000 in contributions from Putnam while contributing $76,000); JX 493 (showing that Ms. Glancy received $208,000 while contributing $64,000).)  It is black-letter law that "in choosing among equitable remedies, a . . . court has the ability -- indeed, the duty -- to weigh all the relevant facts and circumstances and to craft appropriate relief on a case-by-case basis," *In re Blinds to Go Share Purchase Litig.*, 443 F.3d 1, 8 (1st Cir. 2006), and the relevant facts and circumstances here show that it is Plaintiffs, and not Defendants, that have profited from the Plan.

## CONCLUSION

For all of the foregoing reasons, the Court should grant Defendants' Motion.

Dated:  April 19, 2017
       Boston, Massachusetts

Respectfully submitted,

/s/ James R. Carroll
Raoul D. Kennedy (*pro hac vice*)
James R. Carroll (BBO #554426)
Eben P. Colby (BBO #651456)
Michael S. Hines (BBO #653943)
SKADDEN, ARPS, SLATE
  MEAGHER & FLOM LLP
500 Boylston Street
Boston, Massachusetts 02116
(617) 573-4800
james.carroll@skadden.com

Counsel for Defendants

---

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants on April 19, 2017.

Dated:  April 19, 2017   /s/ Michael S. Hines
                Michael S. Hines

---