**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| John Brotherston and Joan Glancy, individually and as representatives of a class of similarly situated persons, and on behalf of the Putnam Retirement Plan,<br><br>     Plaintiffs,<br>v.<br><br>Putnam Investments, LLC, Putnam Investment Management, LLC, Putnam Investor Services, Inc., the Putnam Benefits Investment Committee, the Putnam Benefits Oversight Committee, and Robert Reynolds,<br><br>     Defendants. | Case No. 1:15-cv-13825-WGY<br><br><br><br>**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

BACKGROUND ..................................................................................................................2

I.   PROCEDURAL HISTORY .............................................................................................2

    A.  Pleadings and Court Proceedings.........................................................................2

    B.  Discovery, Mediation and Settlement ..................................................................4

II.  OVERVIEW OF SETTLEMENT TERMS..........................................................................5

    A.  The Settlement Class.............................................................................................5

    B.  Monetary Relief ....................................................................................................5

    C.  Prospective Relief .................................................................................................6

    D.  Release of Claims .................................................................................................6

    E.  Class Notice and Settlement Administration ........................................................7

    F.  Attorneys' Fees and Administrative Expenses .....................................................8

ARGUMENT ......................................................................................................................8

I.   STANDARD OF REVIEW .............................................................................................8

II.  THE SETTLEMENT SATISFIES THE STANDARD FOR PRELIMINARY APPROVAL ..........................10

    A.  The Settlement Is the Product of Arm's-Length Negotiations Between Experienced Counsel After Extensive Litigation and Adequate Class Representation.......................................10

    B.  The Settlement Provides Significant Relief to Class Members Through an Effective Distribution Method, and Treats Class Members Equitably.............................................11

    C.  Plaintiffs Would Have Faced Potential Litigation Risks and Substantial Delay in the Absence of the Settlement ................................................................15

III. THE CLASS NOTICE PLAN IS REASONABLE AND SHOULD BE APPROVED..................................17

IV.  THE PROPOSED CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES ...........................18

CONCLUSION....................................................................................................................20

# TABLE OF AUTHORITIES

## Cases

*Bezdek v. Vibram USA Inc.*,
   79 F. Supp. 3d 324 (D. Mass. 2015) .......................................................................10, 14

*Bowers v. BB&T Corp.*,
   2017 WL 3730552 (M.D.N.C. Aug. 28, 2017)..................................................................20

*Brotherston v. Putnam Invs., LLC*,
   907 F.3d 17 (1st Cir. 2018).......................................................................................4, 15, 16

*Bussie v. Allmerica Fin. Corp.*,
   50 F. Supp. 2d 59 (D. Mass. 1999) ..................................................................................11

*City P'ship Co. v. Atl. Acquisition Ltd. P'ship*,
   100 F.3d 1041 (1st Cir. 1996)...........................................................................................10

*Cryer v. Franklin Templeton Res., Inc.*,
   2017 WL 4023149 (N.D. Cal. July 26, 2017)..................................................................20

*Del Sesto v. Prospect Chartercare, LLC*,
   2019 WL 2162083 (D.R.I. May 17, 2019) .......................................................................10

*Greenspun v. Bogan*,
   492 F.2d 375 (1st Cir.1974)..............................................................................................18

*Hill v. State Street Corp.*,
   2015 WL 127728 (D. Mass. Jan. 8, 2015)......................................................11, 15, 16, 18

*Hochstadt v. Boston Scientific Corp.*,
   708 F. Supp. 2d 95 (D. Mass. 2010) ....................................................................8-9, 12, 20

*In re Lupron Mktg. & Sales Practices Litig.*,
   228 F.R.D. 75 (D. Mass. 2005)......................................................................................8, 15

*In re M3 Power Razor Sys. Mktg. & Sales Practice Litig.*,
   270 F.R.D. 45 (D. Mass. 2010)........................................................................................9, 11

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
   330 F.R.D. 11 (E.D.N.Y. 2019)...........................................................................................9

*In re Pharm.*,
   588 F.3d 24 (1st Cir. Nov. 19, 2009)...................................................................................8

*In re Relafen Antitrust Litigation*,
    231 F.R.D. 52 (D. Mass. 2005)........................................................................13

*In re Rite Aid Corp. Sec. Litig.*,
    146 F. Supp. 2d 706 (E.D. Pa. 2001) .............................................................12

*Johnson v. Fujitsu Tech. & Business of America, Inc.*,
    2018 WL 2183253 (N.D. Cal. May 11, 2018) ................................................12

*Kemp-DeLisser v. Saint Francis Hospital and Medical Center*,
    2016 WL 6542707 (D. Conn. Nov. 3, 2016) ..................................................16

*Krueger v. Ameriprise*,
    2015 WL 4246879 (D. Minn. July 13, 2015) .................................................16

*Kruger v. Novant Health, Inc.*,
    2016 WL 6769066 (M.D.N.C. Sept. 29, 2016)..............................................17

*Leber, et al. v. Citigroup 401(k) Plan Inv. Comm.*,
    323 F.R.D. 145 (S.D.N.Y. 2017) ...................................................................20

*Marcoux v. Szwed*,
    2017 WL 679150 (D. Me. Feb. 21, 2017) ......................................................14

*Medoff v. CVS Caremark Corp.*,
    2016 WL 632238 (D.R.I. Feb. 17, 2016)........................................................12

*Moitoso v. FMR LLC*,
    No. 1:18-cv-12122-WGY, ECF No. 224 (Mar. 27, 2020)...............................19

*Moreno et al. v. Deutsche Bank Am. Holding Corp.*,
    2017 WL 3868803 (S.D.N.Y. Sept. 5, 2017)..................................................20

*Nilsen v. York Cty.*,
    400 F. Supp. 2d 266 (D. Me. 2005) ...............................................................14

*Ortiz v. Fibreboard Corp.*,
    527 U.S. 815 (1999).......................................................................................19

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985).......................................................................................17

*Price v. Eaton Vance Corp.*,
    No. 18-12098, ECF No. 32 (D. Mass. May 6, 2019)............................. 10-11, 13

*Price v. Eaton Vance Corp.*,
   No. 18-12098, ECF No. 41-6 (D. Mass. May 17, 2019) ......................................12, 14, 15

*Price v. Eaton Vance Corp.*,
   No. 18-12098, ECF No. 45 (D. Mass. May 22, 2019)..................................................1, 18

*Puerto Rico Dairy Farmers Ass'n v. Pagan*,
   748 F.3d 13 (1st Cir. 2014)...........................................................................................8

*Putnam Invs., LLC v. Brotherston*,
   140 S. Ct. 911 (2020)...................................................................................................4

*Reynolds v. Beneficial Nat. Bank*,
   288 F.2d 277 (7th Cir. 2002) ......................................................................................13

*Sacerdote v. New York Univ.*,
   328 F. Supp. 3d 273 (S.D.N.Y. 2018)..........................................................................16

*Simerlein v. Toyota Motor Corp.*,
   2019 WL 1435055 (D. Conn. Jan. 14, 2019)............................................................ 9-10

*Sims v. BB&T Corp.*,
   No. 1:15-cv-732, ECF No. 437 (M.D.N.C. Nov. 30, 2018) ...........................................15

*Swinton v. SquareTrade, Inc.*,
   2019 WL 617791 (S.D. Iowa Feb. 14, 2019).................................................................9

*Tibble v. Edison Int'l*,
   2017 WL 3523737 (C.D. Cal. Aug. 16, 2017)...............................................................17

*Tussey v. ABB, Inc.*,
   850 F.3d 951 (8th Cir. 2017) ......................................................................................17

*Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*,
   2017 WL 2655678 (C.D. Cal. June 15, 2017) ...............................................................20

*Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*,
   No. 8:15-cv-01614, ECF No. 174-1 (C.D. Cal. Dec. 26, 2017) ......................................15

*Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*,
   No. 8:15-cv-01614, ECF No. 185 (C.D. Cal. July 30, 2018) ..........................................12

*Velazquez v. Mass. Fin. Servs. Co.*,
   No. 1:17-CV-11249, ECF No. 91-1 (D. Mass. June 14, 2019) ........................................15

*Wildman v. Am. Century Servs., LLC,*
    2017 WL 6045487 (W.D. Mo. Dec. 6, 2017) ................................................................20

*Wildman v. Am. Century Servs., LLC,*
    362 F. Supp. 3d 685 (W.D. Mo. 2019) ....................................................... 15-16

**Rules, Regulations, and Statutes**

Federal Rule of Civil Procedure 23 ..................................................................... *passim*

Federal Rule of Civil Procedure 52 .............................................................................3

29 U.S.C. § 1104(a)(1)(B) ........................................................................................19

29 U.S.C. § 1106(a)(1)(C) ..........................................................................................4

29 U.S.C. § 1106(b) ..................................................................................................19

29 U.S.C. § 1106(b)(3) ...............................................................................................4

29 U.S.C. § 1106(c) ..................................................................................................19

29 U.S.C. § 1132(a)(3) ................................................................................................3

**Other Authorities**

Restatement (Third) of Trusts, § 100 (2012) ............................................................16

Manual for Complex Litigation (Fourth) § 13.14 (2004) ...........................................9

## INTRODUCTION

Plaintiffs John Brotherston and Joan Glancy ("Plaintiffs") submit this Memorandum in support of their Motion for Preliminary Approval of Class Action Settlement. A copy of the Class Action Settlement Agreement ("Settlement" or "Settlement Agreement") is attached as **Exhibit A** to the accompanying Declaration of Kai Richter ("*Richter Decl.*").[1] This Settlement resolves Plaintiffs' class action claims against Defendants Putnam Investments, LLC ("Putnam"), Putnam Investment Management, LLC, Putnam Investor Services, Inc., the Putnam Benefits Investment Committee ("PBIC"), the Putnam Benefits Oversight Committee ("PBOC"), and Robert Reynolds under the Employee Retirement Income Security Act ("ERISA"), concerning Defendants' administration and management of the Putnam Retirement Plan ("Plan").

Under the terms of the proposed Settlement, Putnam will pay a gross settlement amount of $12,500,000 into a common fund for the benefit of Settlement Class. This is a significant monetary recovery for the Class and falls well within the range of court-approved settlements in similar ERISA cases. Moreover, the Settlement also provides for prospective relief.  Among other things: (1) Defendants will maintain an investment policy statement for the Plan, and (2) the PBIC will now independently review the at-issue Putnam funds in the Plan. These changes are intended to address the allegedly defective procedures that Plaintiffs identified regarding Defendants' process for managing the Plan's investment lineup, and remedy specific conduct cited by the Court in connection with the partial trial of this matter.

The general structure of the Settlement is similar to that approved by this Court in another ERISA case involving proprietary funds, where Defendants' current counsel was also counsel for the defense. *See Price v. Eaton Vance Corp.*, No. 18-12098, ECF No. 45 (May 22, 2019). For the

---

[1] Capitalized terms have the meaning assigned to them in Article 1 of the Settlement Agreement, unless otherwise specified herein.

reasons set forth below, the current Settlement is also fair, reasonable, and adequate, and merits preliminary approval so that the proposed Notice can be sent to the Settlement Class. Among other things supporting preliminary approval:

- The Settlement was negotiated at arm's length by experienced and capable counsel, after extensive litigation and a partial trial on the merits;

- The proposed Settlement Class is consistent with the requirements of Rule 23;

- The Settlement Class has been adequately represented by the Class Representatives and the terms of the Settlement treat Class Members fairly and equitably;

- The Settlement provides for significant monetary and prospective relief that is in line with settlements in other cases;

- The Settlement conveniently provides for automatic distribution of the settlement funds to Current Participants in the Plan, while Former Participants have the option of submitting a Rollover Form, or will otherwise receive their distribution via check;

- The Released Claims are tailored to the claims that were asserted in the action;

- The proposed Notices provide fulsome information to Class Members about the Settlement, and will be distributed via first-class mail; and

- The Settlement Agreement provides Class Members the opportunity to raise any objections they may have to the Settlement in writing or at the final approval hearing.

Accordingly, Plaintiffs respectfully request that the Court enter an order: (1) preliminarily approving the Settlement; (2) approving the proposed Notice and authorizing distribution of the Notice; (3) certifying the proposed Settlement Class; (4) scheduling a final approval hearing; and (5) granting such other relief as set forth in the proposed Preliminary Approval Order submitted herewith. This motion is not opposed by Defendants.

## **BACKGROUND**

### I.   PROCEDURAL HISTORY

####   A.   **Pleadings and Court Proceedings**

Plaintiffs filed their Class Action Complaint on November 13, 2015, alleging that Putnam and related entities breached their fiduciary duties of prudence and loyalty under ERISA by

selecting, monitoring, and retaining Putnam-managed investments for the Plan that were costlier and performed worse than nonproprietary alternatives, and engaged in transactions prohibited by ERISA. *See ECF No. 1.*[2] Plaintiffs later filed a First Amended Complaint ("FAC") that added a claim for failure to monitor fiduciaries. *ECF No. 22*. Defendants moved to dismiss, *ECF No. 32*, and the Court denied Defendants' motion on April 7, 2016. *ECF No. 47*.  On November 22, 2016, Plaintiffs filed a Second Amended Complaint that dropped certain defendants, while adding the PBOC as a Defendant. *ECF No. 73*. This remains the operative complaint, and Defendants filed an Answer on December 6, 2016. *ECF No. 83*.

On November 7, 2016, Plaintiffs filed a motion for class certification, *ECF Nos. 65*, which the Court granted on December 13, 2016. *ECF No. 88*.  The Parties then filed cross-motions for summary judgment on January 9, 2017. *See ECF Nos. 89, 94*. On March 3, 2017, the Court concluded that there were genuine issues of material fact as to counts I (breach of fiduciary duty), IV (failure to monitor fiduciaries), and V (equitable relief), as well as Defendants' fifth affirmative defense, and denied summary judgment as to those claims and that affirmative defense. *ECF No. 120*. On February 28, 2017, by agreement of the Parties, the Court held a case stated hearing with respect to Plaintiffs' other claims (for prohibited transactions), and the Court entered judgement in Defendants' favor on those claims on March 30, 2017. *See ECF No. 158*

The Parties then tried the remaining claims to the Court for seven days in April 2017. On April 19, 2017, Defendants moved for judgement on partial findings as to all of Plaintiffs' remaining claims pursuant to Federal Rule of Civil Procedure 52(c). *ECF No. 167*. On June 19, 2017, the Court granted Defendants' motion and entered judgement in their favor. *ECF No. 202*.

---

[2] Plaintiffs also asserted an equitable claim under ERISA § 502(a)(3) [29 U.S.C. § 1132(a)(3)].

After final judgment was entered, Plaintiffs filed a notice of appeal. *ECF No. 204*. On October 15, 2018, the First Circuit issued a decision that affirmed the Court's dismissal of Plaintiffs' prohibited transaction claim under 29 U.S.C. § 1106(a)(1)(C), vacated the Court's dismissal of Plaintiffs' prohibited transaction claim under 29 U.S.C. § 1106(b)(3), affirmed the dismissal of Plaintiffs' breach of loyalty claim and the dismissal of their equitable claim, vacated the finding that Plaintiffs failed as a matter of law to show loss, and remanded for further consideration of Plaintiffs' prudence claim in light of the First Circuit's holding on burden-shifting. *Brotherston v. Putnam Invs., LLC*, 907 F.3d 17 (1st Cir. 2018).

On January 11, 2019, Defendants filed a petition for writ of certiorari with the Supreme Court seeking review of the First Circuit's decision. On January 13, 2020, the Supreme Court denied Defendants' petition. *See Putnam Invs., LLC v. Brotherston*, 140 S. Ct. 911 (2020).

### B.      Discovery, Mediation, and Settlement

Prior to trial, the Parties engaged in extensive discovery. Defendants produced over 308,000 pages of documents, and the Class Representatives produced over 7,000 pages. *Richter Decl. ¶ 14*. In addition, Class Counsel took the depositions of ten fact witnesses and two of Defendants' expert witnesses, and Defendants took depositions of both Class Representatives and Plaintiffs' two experts. *Id. ¶¶ 15-16.* This resulted in a fully developed record at trial.

The Parties also participated in two separate mediation sessions. Following the Court's ruling on the motion to dismiss, the Parties attended a mediation with the Honorable Edward Infante, a retired United States magistrate judge, on August 15, 2016. *Id. ¶ 21*. However, the Parties were unable to reach a settlement at that time. *Id.* Following the trial, the Parties also engaged in a second mediation on September 13, 2017 before the Honorable Patrick J. King, a retired associate justice of the Massachusetts Superior Court, through the First Circuit's Civil Appeals Management

Program. *Id.* However, the Parties again were unable to reach a resolution at that time.  Finally, following the Supreme Court's ruling on Defendants' petition for certiorari, the Parties engaged in direct negotiations and reached a settlement-in-principle in March. *See ECF No. 212.* The terms of the Settlement are memorialized in the Settlement Agreement.

## II.   OVERVIEW OF SETTLEMENT TERMS

### A.   The Settlement Class

The Settlement Agreement applies to the following Settlement Class:

> [A]ll participants and beneficiaries of the Putnam Retirement Plan at any time during the period from November 13, 2009 to the date of the Court's Final Approval Order.  Excluded from the class are Defendants, members of the PBIC, members of the PBOC, and members of the Putnam Investments, LLC Board of Directors.

*See Settlement Agreement ¶ 1.8.*[3] Based on information provided by the Plan's recordkeeper, there are approximately 6,000 class members. *Richter Decl. ¶ 3.*

### B.   Monetary Relief

Under the Settlement, Putnam will contribute a Gross Settlement Amount of $12.5 million to a common settlement fund (the "Settlement Fund"). *Settlement Agreement ¶¶ 1.46, 4.1, 4.2.* After accounting for any Attorneys' Fees and Costs, Administrative Expenses, and Class Representative service awards approved by the Court, the Net Settlement Amount will be distributed to eligible Class Members. *Id. ¶¶ 1.33, 5.2-5.3.*

The Net Settlement Amount will be allocated among eligible Class Members in proportion to their Settlement Allocation Score. *Id. ¶ 5.1.* For purposes of determining a Class Member's Settlement Allocation Score, account balances invested in Proprietary Funds (affiliated with Putnam) will be weighted four times more heavily than balances in Non-Proprietary Funds. *Id.*

---

[3] This Settlement Class is consistent with the class that Plaintiffs sought to certify for litigation purposes, *see ECF No. 64*, and now includes an end date for the class period.

Current Participants' accounts will be automatically credited with their share of the Settlement Fund. *Id. ¶ 5.2.* Former Participants will have the opportunity to submit a Rollover Form allowing them to have their distribution rolled over into an individual retirement account or other eligible employer plan. *Id. ¶ 5.3(a)(i).* Former Participants who do not timely submit a Rollover Form will be sent a check. *Id. ¶ 5.3(a)(2).* Under no circumstances will any monies revert to Putnam. Any checks that are uncashed will revert to the Qualified Settlement Fund and will be paid to the Plan for the purpose of defraying administrative fees and expenses. *Id. ¶ 5.6.*

### C. Prospective Relief

The Settlement also provides that the following procedures shall apply to the management of the Plan on a prospective basis for a period of no less than two (2) years:

(a) Defendants will maintain a charter for the PBIC that outlines the duties and fiduciary responsibilities of the PBIC and establishes its general quarterly meeting schedule;

(b) Defendants will maintain an investment policy statement for the Plan;

(c) Defendants will maintain a suite of low-cost third-party passive collective investment trust ("CIT") options in the Plan;

(d) PBIC will meet no less than quarterly, and such meetings shall include two meetings a year to review Putnam options in the Plan, with Putnam senior investment representation attending to review the funds; one meeting a year to review the third party passive CIT options in the Plan with representatives of the third party CIT provider(s); one meeting a year to review the Plan's Qualified Default Investment Alternatives; and one meeting a year to review PanAgora options in the Plan with PanAgora representatives; and,

(e) Defendants will arrange annual training on ERISA fiduciary duties for Plan fiduciaries.

*Settlement Agreement ¶ 6.1.*

### D. Release of Claims

In exchange for this relief, the Settlement Class will release Defendants and affiliated persons and entities (the "Released Parties" as defined in the Settlement) from all claims:

**1.39(a)**   That were asserted in the Action or could have been asserted in the Action that arise out of, are based on, or have any connection with any of the allegations, acts, [or] omissions . . . asserted in the Action, whether or not pleaded in the Complaints . . . .;[4]

**1.39(b)**   that would be barred by res judicata based on the Court's entry of the Final Approval Order;

**1.39(c)**   that arise from the direction to calculate, the calculation of, and/or the method or manner of the allocation of the Net Settlement Fund pursuant to the Plan Of Allocation; or

**1.39(d)**   that arise from the approval by the Independent Fiduciary of the Settlement Agreement.

The release carves out claims "to enforce the Settlement Agreement" and for "Claims for denial of benefits from the Plan." *Id. ¶ 1.39.*

## E.   Class Notice and Settlement Administration

Class Members will be sent a direct notice of the settlement ("Notice") via U.S. Mail. *Id. ¶¶ 3.2 & Ex. B.* The Notice sent to Former Participants will also include a Former Participant Rollover Form enabling them to make the election described above. *Id. ¶ 3.2 & Ex. A.* These Notices provide information to the Settlement Class regarding, among other things: (1) the nature of the claims; (2) the scope of the Settlement Class; (3) the terms of the settlement; (4) the process for submitting Rollover Forms (Former Participants only); (5) Settlement Class Members' right to object to the Settlement and the deadline for doing so; (6) the class release; (7) the identity of Class Counsel and the amount of Attorneys' Fees they will seek in connection with the Settlement; (8) the amount of any requested Class Representatives' compensation; (9) the date, time, and location of the final approval hearing; (10) Settlement Class Members' right to appear at the final approval hearing. *Id. ¶ 1.34 & Exs. A-B.*

---

[4] The release language has been truncated due to space limitations. The full release language, incorporated by reference, is in the Settlement Agreement, ¶ 1.39.

To the extent that Class Members would like more information about the Settlement, the Settlement Administrator will establish a Settlement Website on which it will post the Notice, Former Participant Rollover Form, and relevant case documents, including but not limited to a copy of all documents filed with the Court in connection with the Settlement. *Id. ¶ 3.3.*

### F.     Attorneys' Fees and Administrative Expenses

The Settlement Agreement requires that Class Counsel file their Motion for Attorneys' Fees and Costs at least 14 days before the deadline for objections to the proposed Settlement. *Id. ¶ 7.1.* Under the Settlement, these fees must be reasonable and are subject to Court approval. *Id.*[5] *¶¶ 1.5, 7.1.* The Settlement also provides for service awards up to $25,000 per Class Representative, subject to Court approval. *Id. ¶¶ 1.50, 7.2.*

## ARGUMENT

### I.     STANDARD OF REVIEW

Federal Rule of Civil Procedure 23(e) requires judicial approval of any settlement agreement that will bind absent class members. "Approval is to be given if a settlement is untainted by collusion and is fair, adequate, and reasonable." *In re Lupron Mktg. & Sales Practices Litig.*, 228 F.R.D. 75, 93 (D. Mass. 2005). The First Circuit has expressed a "strong public policy in favor of settlements, particularly in very complex and technical regulatory contexts" such as this. *See Puerto Rico Dairy Farmers Ass'n v. Pagan*, 748 F.3d 13, 20 (1st Cir. 2014); *In re Pharm.*, 588 F.3d at 36 (discussing policy favoring settlements in "hard-fought, complex class action[s]").

Settlement approval involves two stages: "First, the judge reviews the proposal preliminarily to determine whether it is sufficient to warrant public notice and a hearing. If so, the final decision on approval is made after the hearing." *Hochstadt v. Boston Scientific Corp.*, 708 F.

---

[5] The Settlement also allows Class Counsel to recover their litigation expenses. *Settlement Agreement ¶ 1.5.*

Supp. 2d 95, 106-07 (D. Mass. 2010) (citing MANUAL FOR COMPLEX LITIGATION (Fourth) § 13.14

(2004)). At the preliminary approval stage, courts "examine the proposed settlement for obvious

deficiencies before determining whether it is in the range of fair, reasonable, and adequate." *In re*

*M3 Power Razor Sys. Mktg. & Sales Practice Litig.*, 270 F.R.D. 45, 62 (D. Mass. 2010). The

ultimate fairness determination is left for final approval, after class members receive notice of the

settlement and have an opportunity to be heard.

In 2018, Rule 23(e) was amended to specify uniform standards for settlement approval. *See*

Fed. R. Civ. P. 23(e) advisory committee note (2018). The amended rule states that, at the

preliminary approval stage, the court must determine whether it "will likely be able to: (i) approve

the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the

proposal." Fed. R. Civ. P. 23(e)(1)(B). Rule 23(e)(2), in turn, specifies the following factors the

court must ultimately consider at the final approval stage in determining whether a settlement is

"fair, reasonable, and adequate":

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
> > (i) the costs, risks, and delay of trial and appeal;
> > (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> > (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
> > (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).[6] "The goal of this amendment is not to displace any [existing] factor, but

---

[6] Courts considering motions for preliminary approval after 2018 have taken different views as to whether these amendments altered or merely codified existing case law. *Compare Swinton v. SquareTrade, Inc.*, 2019 WL 617791, at *4-5 & n.9 (S.D. Iowa Feb. 14, 2019) (concluding that the amendments "are mostly form over substance" and "largely codify existing case law") *with In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 28 (E.D.N.Y. 2019) (stating that the "will likely be able to" standard "appears to be more exacting than the prior requirement"). Courts within the First Circuit have generally continued to apply the same "within the range of" standard to preliminary approval even after the 2018 amendments. *See Simerlein v.*

rather to focus the court … on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Fed. R. Civ. P. 23(e) advisory committee note (2018).

## II.   THE SETTLEMENT SATISFIES THE STANDARD FOR PRELIMINARY APPROVAL

As discussed below: (1) the settlement was negotiated at arm's length by experienced counsel after extensive litigation (including a partial trial and appellate review), (2) the Class was adequately represented by the Class Representatives, and (3) the relief provided is adequate and equitable to all Class Members. Accordingly, this Court should grant preliminary approval of the Settlement and authorize notice to the Class.

### A.   The Settlement Is the Product of Arm's-Length Negotiations Between Experienced Counsel After Extensive Litigation and Adequate Class Representation

A proposed class action settlement enjoys a "presumption in favor of the settlement" if "sufficient discovery has been provided and the parties have bargained at arms-length." *City P'ship Co. v. Atl. Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043 (1st Cir. 1996). That is precisely the situation presented here. Indeed, the parties not only bargained at arms-length and conducted sufficient discovery, but also tried Plaintiffs' case-in-chief, litigated an appeal before the First Circuit, and also litigated a petition for certiorari before the Supreme Court. In light of the full record that was developed, and the trial court and appellate guidance that the Parties received, the Parties were clearly able "to make an intelligent judgment about settlement." *Bezdek v. Vibram USA Inc.*, 79 F. Supp. 3d 324, 348 (D. Mass. 2015), *aff'd*, 809 F.3d 78 (1st Cir. 2015).[7] Courts in this district have approved settlements where the proceedings were much less advanced. *See Eaton*

---

*Toyota Motor Corp.*, 2019 WL 1435055, at *10 (D. Conn. Jan. 14, 2019); *Del Sesto v. Prospect Chartercare, LLC*, 2019 WL 2162083, at *1 (D.R.I. May 17, 2019).

[7] Even setting aside the partial trial and appeals, the Settlement occurred only after Class Counsel conducted a thorough investigation; prepared a detailed complaint (and amended complaints); responded to a motion to dismiss; obtained more than 300,000 pages of documents from Defendants; deposed ten witnesses; won a contested class certification motion; retained and consulted multiple experts; and engaged in a multiple mediations. *Richter Decl. ¶¶ 12-22.*

*Vance,* No. 18-12098, ECF No. 32, at 21 (May 6, 2019) (memorandum supporting successful preliminary approval motion noting that motion to dismiss was pending at the time of settlement); *In re M3*, 270 F.R.D. at 63 (finding production of more than 100,000 documents to be sufficient discovery for purposes of preliminary approval); *Hill v. State Street Corp.*, 2015 WL 127728 (D. Mass. Jan. 8, 2015) (finding extensive document production and depositions over more than two years to be sufficient discovery); *Bussie v. Allmerica Fin. Corp.*, 50 F. Supp. 2d 59, 77 (D. Mass. 1999) (retention of expert before settlement was probative of the settlement's fairness).

Further, "[w]hen the parties' attorneys are experienced and knowledgeable about the facts and claims, their representations to the court that the settlement provides class relief which is fair, reasonable and adequate should be given significant weight." *Hill*, 2015 WL 127728 at * 7 (citation omitted). Once again, that is the situation presented here. Class Counsel are knowledgeable and experienced in ERISA class actions, *see Richter Decl. ¶¶ 26-29*, and have concluded that the relief provided by the Settlement is fair and reasonable, *id. ¶ 11*.

Finally, the Settlement Class Members have been adequately represented by the Class Representatives in this case. The Class Representatives have fulfilled their duties to the class by (among other things) reviewing the complaints, producing documents, reviewing and signing written discovery responses, communicating regularly with Class Counsel, testifying at their depositions, appearing and testifying at trial, and reviewing the proposed Settlement. *See Brotherston Decl. ¶ 2*; *Glancy Decl. ¶ 2*.

### B. The Settlement Provides Significant Relief to Class Members through an Effective Distribution Method, and Treats Class Members Equitably

The product of these serious and informed negotiations was a Settlement that provides significant relief to the Settlement Class. The $12,500,000 in monetary relief speaks for itself. This recovery is substantial not only in the aggregate, but also on a per-participant basis

(approximately $2,000 per Class Member) and as a percentage of Plan assets (1.9%). *Richter Decl.*

*¶ 6.* This compares favorably to other recent class action settlements involving 401(k) plans. *Id.*

For example, in *Eaton Vance*, plaintiffs' recovery of $3.45 million represented approximately

$1,596 per class member and 0.66% of the plan's assets. *Richter Decl. ¶ 6* (citing *Price v. Eaton*

*Vance Corp.*, No. 18-12098, ECF No. 41-6 (D. Mass. May 17, 2019)).

      The negotiated settlement amount also represents a significant portion of the damages that

Plaintiffs calculated were caused by Defendants' alleged fiduciary breaches. *Richter Decl. ¶ 7.* At

the trial of Plaintiffs' case-in-chief, Plaintiffs' expert calculated the following losses:

- Losses from retention of funds in Plan versus Vanguard comparators: $45.5 million
  (Tr. Transcript, Day 7, Part 2, 118:25-119:2);

- Losses from retention of funds in Plan versus BNY Mellon comparators: $44.2
  million (Tr. Transcript, Day 7, Part 2, 125:19-21)

*Id.* The $12.5 million recovery represents approximately 28% of the total damages that Plaintiffs'

expert testified were associated with Defendants' alleged fiduciary breaches. *Id.* This recovery also

compares favorably to other class action settlements. *See Urakhchin v. Allianz Asset Mgmt. of Am.,*

*L.P.*, No. 8:15-cv-01614, ECF No. 185 (C.D. Cal. July 30, 2018) (approving $12 million ERISA

401(k) settlement that represented approximately one-quarter of estimated total plan-wide losses

of $47 million). *Johnson v. Fujitsu Tech. & Business of America, Inc.*, 2018 WL 2183253, at *6-

7 (N.D. Cal. May 11, 2018) (approving $14 million ERISA 401(k) settlement that represented

"just under 10% of the Plaintiffs' most aggressive 'all in' measure of damages"); *Hochstadt*, 708

F. Supp. 2d at 109 (D. Mass. 2010) (recovery of approximately 27% of conservatively estimated

damages was "plainly reasonable"); *see also In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706,

715 (E.D. Pa. 2001) (noting that since 1995, class action settlements have typically "recovered

between 5.5% and 6.2% of the class members' estimated losses"); *Medoff v. CVS Caremark Corp.*,

2016 WL 632238, at *6 (D.R.I. Feb. 17, 2016) (settlement providing recovery of 5.33% of

maximum recoverable damages was well above the median percentage of settlement recoveries in comparable securities class action cases); *see also Eaton Vance,* No. 18-12098, ECF No. 32, at 12 (May 6, 2019) (memorandum supporting successful preliminary approval motion noting that recovery represented 23% of calculated likely damages).[8]

Moreover, in addition to the foregoing monetary compensation, the Settlement also provides for multiple forms of prospective relief. *Richter Decl. ¶ 8.* For a period of no less than two years, Defendants have agreed to maintain an investment policy statement ("IPS") for the Plan, maintain a charter for the PBIC, arrange annual fiduciary training for Plan fiduciaries, and maintain a suite of low-cost third-party passive CIT options in the Plan. *Settlement Agreement ¶ 6.1.* Moreover, the PBIC will meet no less than quarterly, hold two meetings a year to review Putnam-affiliated options, hold one meeting a year to review the third-party passive CIT options with representatives of the third-party CIT provider, hold one meeting a year to review the plan's default investment options (e.g., the Plan's "QDIAs"), and hold one meeting a year to review PanAgora options with PanAgora representatives. *Id.*

This prospective relief addresses many of the core issues raised in this lawsuit, although Defendants have not fully presented their defenses on those issues. For example, Plaintiffs presented evidence at trial that the Plan's lack of an IPS "contrast[ed] with Putnam's recommendation to other plan sponsors," which "strongly recommended that other plan sponsors

---

[8] Defendants argued on appeal that Plaintiffs' damages calculations should not include all funds in the Plan, focusing in particular on the Plan's qualified default investment alternatives ("QDIAs"). *Brief of Defendants-Appellees, Brotherston v. Putnam Invs., LLC,* No. 17-1711, at 33-34 (1st Cir. Jan. 10, 2018). Removing these funds from Plaintiffs' calculations would decrease their overall damages by millions of dollars under both models. *Richter Decl. ¶ 7 n.6.* While Plaintiffs are confident in their expert's damages calculations, a recovery of the full estimated amount was not guaranteed, as discussed in more detail below. *See infra* at § 2(C); *see also In re Relafen Antitrust Litigation,* 231 F.R.D. 52, 73 (D. Mass. 2005) (quoting *Reynolds v. Beneficial Nat. Bank,* 288 F.2d 277, 285 (7th Cir. 2002)) ("A high degree of precision cannot be expected in valuing a litigation, especially regarding the estimation of the probability of particular outcomes.").

adopt Investment Policy Statements, which document qualitative and quantitative criteria for monitoring and removing funds from 401(k) plans." *ECF No. 202 at p.19 n.9.* Similarly, Plaintiffs presented evidence that the PBIC (the named investment fiduciary for the Plan) "failed to monitor the Plan investments independently" and seemingly "delegate[ed] … that function to Putnam's investment division." *Id. at 25.* Under the terms of the Settlement, the PBIC will now regularly review all of the funds in the Plan, and maintain an IPS as an objective guidepost. This prospective relief further supports settlement approval. *See Bezdek v. Vibram USA Inc.*, 79 F. Supp. 3d 324, 346-47 (D. Mass. 2015) (noting that prospective relief is "a valuable contribution" to a settlement agreement); *Nilsen v. York Cty.*, 400 F. Supp. 2d 266, 284 (D. Me. 2005) (prospective relief benefitting class members supports settlement); *Marcoux v. Szwed*, 2017 WL 679150, at *3 (D. Me. Feb. 21, 2017) (same).

Finally, the Settlement treats all Class Members equitably and will be delivered through an effective method of distribution. The Net Settlement Amount will be allocated among all eligible Class Members on a *pro rata* basis in proportion to their weighted account balances in the Plan's investments, with balances in Proprietary Funds (affiliated with Putnam) weighted four times more heavily than balances in the Non-Proprietary Funds. *Settlement Agreement ¶ 5.1.* This four-to-one weighting of Proprietary to Non-Proprietary Funds is consistent with the settlement this Court recently approved in *Eaton Vance*, a similar ERISA suit that focused on proprietary funds within a 401(k) plan. *See Eaton Vance*, No, 18-12098, ECF No. 41-6 § 5.1 (May 17, 2019).

Current Participants will have their accounts automatically credited with their share of the Settlement Fund. *Id. ¶ 5.2.* Former Participants may submit a Rollover Form to roll over their potion of the settlement to a qualified individual retirement account or other eligible employee plan. *Id. ¶ 5.3.* Former Participants who do not provide such a Rollover Form will be sent a check.

*Id.* This method of distribution also has been approved in similar ERISA class action settlements. *See Eaton Vance,* No, 18-12098, ECF No. 41-6 § 5.3 (May 17, 2019); *Velazquez v. Mass. Fin. Servs. Co.*, No. 1:17-CV-11249, ECF No. 91-1 §§ 6.5-6.6 (D. Mass. June 14, 2019); *Urakhchin v. Allianz Asset Mgmt. of Am., LP*, No. 8:15-cv-01614, ECF No. 174-1 at 6 (C.D. Cal. Dec. 26, 2017); *Sims v. BB&T Corp.*, No. 1:15-cv-732, ECF No. 437 at 3-4 (M.D.N.C. Nov. 30, 2018).

### C.   Plaintiffs Would Have Faced Potential Litigation Risks and Substantial Delay in the Absence of the Settlement

In the absence of a Settlement, Plaintiffs would have faced significant litigation risk. *See Hill*, 2015 WL 127728, at *10 (noting that the risk of continued litigation includes the risk that there could be no recovery at all); *In re Lupron*, 228 F.R.D. at 97 ("[A] significant element of risk adheres to any litigation taken to binary adjudication"). These risks are objectively illustrated by the procedural history of this case. As noted above, Plaintiffs initially lost their prohibited transaction claims on the case stated record, and their remaining claims at trial. *See supra* at 3. Although the First Circuit partially vacated this Court's orders in favor of Defendants, it did not direct the Court to enter judgment in favor of Plaintiffs on the claims that were revived – it simply remanded the case for further proceedings. *See Brotherston*, 907 F.3d at 41-42. In doing so, the First Circuit expressly noted that (1) there were fact issues regarding whether Defendants satisfied the requirements of Prohibited Transaction Exemption 77-3; and (2) there was no "definitive ruling" as to whether a breach of prudence had been established. *See Brotherston*, 907 F.3d at 30-31.[9] Thus, it is uncertain whether Plaintiffs ultimately would have prevailed. In two other recent trials involving defined contribution plans, the defendants were the prevailing party. *See Wildman*

---

[9] In its order for judgment on partial findings, this Court explicitly "refrain[ed] from making conclusive findings and rulings on whether the Defendants breached their duty of prudence." *ECF No. 202 at 25.* Although the Court stated that "it would be warranted in ruling that PBIC … failed to monitor the Plan investments independently," it made these remarks "tentatively," and stated that it was "perfectly conceivable that the Defendants would present compelling evidence that they were in fact in full compliance with their ERISA fiduciary duties." *Id.*

*v. Am. Century Servs., LLC*, 362 F. Supp. 3d 685, 711 (W.D. Mo. 2019); *Sacerdote v. New York Univ.*, 328 F. Supp. 3d 273 (S.D.N.Y. 2018).

Moreover, with respect to damages, the First Circuit noted that there were "questions of fact" regarding whether Plaintiffs' expert had "picked suitable benchmarks, or calculated the returns correctly, or focused on the correct time period." *Brotherston*, 907 F.3d at 34. *American Century* illustrates this risk: the trial court concluded that plaintiffs failed to prove loss based on the damages models of the same expert retained in this case. 362 F. Supp. 3d at 710 (finding Dr. Pomerantz's models "did not use suitable benchmarks and relied on unfounded assumptions"). Similarly, in *Sacerdote*, the court found that "while there were deficiencies in the Committee's processes—including that several members displayed a concerning lack of knowledge relevant to the Committee's mandate—plaintiffs have not proven that … the Plans suffered losses as a result." 328 F. Supp. 3d at 280. Although Plaintiffs believe that Dr. Pomerantz's loss models in this case were sound, these decisions illustrate that Plaintiffs faced risk with respect to damages as well as liability. *See* Restatement (Third) of Trusts, § 100 cmt. b(1) (2012) (noting that determination of investment losses in breach of fiduciary duty cases is "difficult"). This further supports settlement approval in this case. *See Hill*, 2015 WL 127728, at *9; *Kemp-DeLisser v. Saint Francis Hospital and Medical Center,* 2016 WL 6542707, at *9 (D. Conn. Nov. 3, 2016) (finding complex damages analysis weighed in favor of ERISA class settlement).

Aside from these risks, continuing the litigation would have resulted in additional complex and costly proceedings, which would have further delayed relief to Class Members, even if Plaintiffs had ultimately prevailed. It is well-recognized that ERISA 401(k) cases such as this "often lead[] to lengthy litigation." *See Krueger v. Ameriprise*, 2015 WL 4246879, at *1 (D. Minn. July 13, 2015). Indeed, these cases can extend for a decade or longer before final resolution,

sometimes going through multiple appellate proceedings. *See Tussey v. ABB, Inc.*, 850 F.3d 951 (8th Cir. 2017) (recounting lengthy procedural history of case that was initially filed in 2006, and remanding for district court to address the issue of loss a second time); *Tibble v. Edison Int'l*, 2017 WL 3523737, at *15 (C.D. Cal. Aug. 16, 2017) (outlining remaining issues ten years after suit was filed on August 16, 2007). This case has already been pending for nearly five years and trial is not yet complete. Given the risks, cost, and delay of further litigation, it was reasonable and appropriate for Plaintiffs to reach a settlement on the terms that were negotiated. *See Kruger v. Novant Health, Inc.*, 2016 WL 6769066, at *5 (M.D.N.C. Sept. 29, 2016) ("[S]ettlement of a 401(k) excessive fee case benefits the employees and retirees in multiple ways").

## III.   THE CLASS NOTICE PLAN IS REASONABLE AND SHOULD BE APPROVED

In addition to reviewing the substance of the Parties' Settlement Agreement, the Court must ensure that notice is sent in a reasonable manner to all class members who would be bound by the settlement. Fed. R. Civ. P. 23(e)(1). The "best notice" practicable under the circumstances includes individual notice to all class members who can be identified through reasonable effort. Fed. R. Civ. P. 23(c)(2)(B). That is precisely the type of notice proposed here.

The Settlement Administrator will provide direct notice of the Settlement to the Settlement Class via U.S. Mail. *Settlement Agreement ¶ 3.2*. This type of notice is presumptively reasonable. *See Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 812 (1985).

The content of the Notice is also reasonable. The Notice includes, among other things: (1) a summary of the lawsuit; (2) a clear definition of the Settlement Class; (3) a description of the material terms of the Settlement; (4) a disclosure of the release of claims; (5) instructions for submitting a Former Participant Rollover Form (if applicable); (6) instructions as to how to object to the Settlement and a date by which Settlement Class Members must object; (7) the date, time,

17

and location of the final approval hearing; (8) contact information for the Settlement
Administrator; (9) information regarding Class Counsel and the amount that Class Counsel will
seek in Attorneys' Fees; and (10) the proposed service awards be paid from the Gross Settlement
Amount. *Settlement Agreement Ex. B.* This Notice is clearly reasonable as it "fairly apprise[s] the
prospective members of the class of the terms of the proposed settlement and of the options that
are open to them." *Hill*, 2015 WL 127728, at *15 (D. Mass. Jan. 8, 2015) (quoting *Greenspun v.
Bogan*, 492 F.2d 375, 382 (1st Cir.1974)) (internal citations omitted); *see also Price v. Eaton
Vance Corp.*, No. 18-12098, ECF No. 45 ¶ 8 (May 22, 2019) (approving similar notice).

## IV.   THE PROPOSED CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES

Finally, Plaintiffs request that the Court approve the certification of the Settlement Class.
This Court previously granted Plaintiffs' motion for class certification, *see ECF No. 88*, and the
proposed Settlement Class here is highly similar to the one that was the subject of Plaintiffs' earlier
motion:

| Proposed Settlement Class (Settlement Agreement, ¶ 1.8) | Litigation Class (ECF No. 64) |
|---|---|
| [A]ll participants and beneficiaries of the Putnam Retirement Plan at any time during the period from November 13, 2009 **to the date of the Court's Final Approval Order.** Excluded from the class are Defendants, ~~employees with responsibility for the Plan's investment or administrative functions~~ **members of the PBIC, members of the PBOC, and** members of the Putnam Investments, LLC Board of Directors. | All participants and beneficiaries of the Putnam Retirement Plan at any time on or after November 13, 2009, excluding Defendants, employees with responsibility for the Plan's investment or administrative functions, and members of the Putnam Investments, LLC Board of Directors. |

The only differences are that the Settlement Class now sets forth an end date for the class period
and explicitly identifies those with responsibility for the Plan's investment and administrative
functions.  And although the Court's class certification order divided the litigation class into two

18

subclasses (one for those with releases and one for those without releases), *ECF No. 88*, there is

no need to maintain these subclasses given that (1) the relief for all Class members is the same, (2)

Defendants have not pursued their release defense to date, (3) the Court recently ruled in another

ERISA case that releases cannot operate to prospectively bar ERISA claims. *See Moitoso v. FMR*

*LLC*, No. 1:18-cv-12122-WGY, ECF No. 224 at 16 (Mar. 27, 2020).

For the reasons explained in Plaintiffs' earlier Memorandum in support of their Motion for

Class Certification (ECF No. 65), all necessary criteria for class certification are satisfied in this

case. The Settlement Class meets all of the requirements of Rule 23(a):

- <u>The Class is numerous</u>. Based on information provided by the Plan's recordkeeper, there are approximately 6,000 Class Members. *See supra* at 5.

- <u>Common issues remain</u> regarding (among other things): (a) whether Defendants breached their duty of prudence in violation of 29 U.S.C. § 1104(a)(1)(B); (b) whether Defendants caused the Plan to engage in prohibited transactions in violation of 29 U.S.C. § 1106(b); and (c) the relief, if any, that may be appropriate in this case.

- <u>The Class Representatives are typical</u> of other Class members, as they participated in the Plan during the relevant class period (*see ECF Nos. 67, 68*) and were treated consistently with other class members; and

- <u>The Class Representatives and Class Counsel continue to adequately represent the Class</u>, and have committed substantially more of their time to the suit since Plaintiffs' motion for class certification was originally granted.

Moreover, class certification is appropriate under Federal Rule of Civil Procedure 23(b)(1)

due to the ongoing risk that separate actions would be dispositive of the interests of other

participants not parties to those separate actions, or substantially impair other participants' ability

to protect their own interests. *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 834 (1999) (noting that

a breach of trust action is a "classic example" of a Rule 23(b)(1) class). Indeed, the Advisory

Committee Notes to Rule 23 expressly recognize that class certification is appropriate under Rule

23(b)(1)(B) in "an action which charges a breach of trust by an indenture trustee or other fiduciary

similarly affecting the members of a large class of security holders or other beneficiaries, and

which requires an accounting or like measures to restore the subject of the trust." Fed. R. Civ. P. 23 advisory committee notes (1966). "Given that the present case involves an ERISA § 502(a)(2) claim brought on behalf of the Plan and alleg[es] breaches of fiduciary duty on the part of Defendants that will, if true, be the same with respect to every class member . . . 23(b)(1)(B) is clearly satisfied . . . [and] the Settlement Class should be certified." *Hochstadt*, 708 F. Supp. 2d at 105-106.[10]

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court (1) preliminarily approve the Settlement; (2) approve the proposed Notice and authorize distribution of the Notice; (3) certify the Settlement Class; (4) schedule a final approval hearing; and (5) enter the accompanying Preliminary Approval Order.

Dated: April 17, 2020                          Respectfully Submitted,

**BLOCK & LEVITON LLP**                        **NICHOLS KASTER, PLLP**
Jason M. Leviton (BBO #678331)                 By: s/Kai Richter
Jacob A. Walker (BBO #688074)                  James H. Kaster, MN Bar No. 53946*
Bradley J. Vettraino (BBO #691834)             Paul J. Lukas, MN Bar No. 022084X*
260 Franklin Street                            Kai Richter, MN Bar No. 0296545*
Boston, MA 02110                               Carl F. Engstrom, MN Bar No. 0396298*
Telephone: (617) 398-5600                      Jacob T. Schutz, MN Bar No. 0395648*
Facsimile: (617) 507-6020                              *admitted *pro hac vice*
jason@blockesq.com                             4600 IDS Center, 80 S 8th Street
jake@blockesq.com                              Minneapolis, MN 55402
bradley@blockesq.com                           Telephone: 612-256-3200
                                               Facsimile: 612-338-4878
                                               kaster@nka.com
                                               krichter@nka.com
                                               cengstrom@nka.com

                                               **ATTORNEYS FOR PLAINTIFFS**

---

[10] *See also e.g.*, *Wildman v. Am. Century Servs., LLC*, 2017 WL 6045487 (W.D. Mo. Dec. 6, 2017); *Moreno et al. v. Deutsche Bank Am. Holding Corp.*, 2017 WL 3868803 (S.D.N.Y. Sept. 5, 2017); *Bowers v. BB&T Corp.*, 2017 WL 3730552 (M.D.N.C. Aug. 28, 2017); *Cryer v. Franklin Templeton Res., Inc.*, 2017 WL 4023149 (N.D. Cal. July 26, 2017); *Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*, 2017 WL 2655678 (C.D. Cal. June 15, 2017); *Leber, et al. v. Citigroup 401(k) Plan Inv. Comm.*, 323 F.R.D. 145 (S.D.N.Y. 2017).

## LOCAL RULE 7.1 CERTIFICATION

I, Kai Richter, hereby certify that I conferred with counsel for Defendants in good faith on April 15, 2020 regarding the issues raised in this motion and have been advised that Defendants do not oppose the motion.

Dated: April 17, 2020                    s/Kai Richter
                                         Kai Richter

## CERTIFICATE OF SERVICE

I hereby certify that on April 17, 2020, a true and correct copy of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement was served by CM/ECF to the parties registered to the Court's CM/ECF system.

Dated: April 17, 2020                    s/Kai Richter
                                         Kai Richter

21