# Exhibit A

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

JOHN BROTHERSTON and JOAN GLANCY,    :
individually and as representatives of a class of
similarly situated persons, and on behalf of the    :
Putnam Retirement Plan,

    :

           Plaintiffs,           Civil Action
    :   No. 15-13825-WGY

        v.

    :

PUTNAM INVESTMENTS, LLC, PUTNAM
INVESTMENT MANAGEMENT, LLC, PUTNAM    :
INVESTOR SERVICES, INC., the PUTNAM
BENEFITS INVESTMENT COMMITTEE, the    :
PUTNAM BENEFITS OVERSIGHT COMMITTEE,
and ROBERT REYNOLDS,    :

           Defendants.    :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**CLASS ACTION SETTLEMENT AGREEMENT**

This Class Action Settlement Agreement, dated April 17, 2020 (the "Settlement Agreement"), is made and entered into by and among:  (i) Plaintiffs John Brotherston and Joan Glancy (on behalf of themselves and each Class Member), by and through their counsel of record in the Litigation; and (ii) Defendants Putnam Investments, LLC; Putnam Investment Management, LLC; Putnam Investor Services, Inc.; the Putnam Benefits Investment Committee ("PBIC"); the Putnam Benefits Oversight Committee ("PBOC"); and Robert Reynolds, by and through their counsel of record in the Litigation.[1]  The Settlement Agreement is intended to fully, finally, and forever resolve, discharge, and settle the Released Claims, subject to the approval of the Court and the terms and conditions set forth in this Stipulation.

**ARTICLE I**

**DEFINITIONS**

1.1    "Action" means the civil action captioned *Brotherston, et al. v. Putnam Investments, LLC, et al.*, Civil Action No. 15-13825-WGY, pending in the United States District Court for the District of Massachusetts.

---

[1]    Except as otherwise specified, all capitalized terms shall have the meanings set forth in Article I of this Stipulation.

1.2     "Active Participant" means any Class Member who, as of the date of the Preliminary Approval Order, has a Plan account with a balance greater than $0.00 and is eligible to make contributions to the account.

1.3     "Administrative Expenses" means expenses incurred in the administration of this Settlement Agreement, including (a) all fees, expenses, and costs associated with the production and dissemination of the Notice to Class Members and related tax expenses (including taxes and tax expenses described in Section 4.5); (b) all expenses incurred by the Settlement Administrator in administering and effectuating this settlement; (c) all fees and expenses associated with the Settlement Website and telephone support line described in Article III; (d) all fees charged by the Settlement Administrator; and (e) all fees and expenses charged by the Independent Fiduciary and Escrow Agent.  Administrative Expenses shall be paid from the Gross Settlement Amount.

1.4     "Alternate Payee" means a person, other than an Active Participant, Inactive Participant, Former Participant, or Beneficiary, who is entitled to a benefit under the Plan as a result of a Qualified Domestic Relations Order.

1.5     "Attorneys' Fees and Costs" means the amount awarded by the Court as compensation for the services provided by Class Counsel and the costs and expenses incurred by Class Counsel in connection with the Action, including the investigation leading to it, which shall be recovered from the Gross Settlement Amount.

1.6     "Beneficiary" means a person who currently is entitled to receive a benefit under the Plan that is derivative of the interest of an Active Participant, Inactive Participant, or Former Participant, other than an Alternate Payee.  A Beneficiary includes, but is not limited to, a spouse, surviving spouse, domestic partner, or child who currently is entitled to a benefit.

1.7     "CAFA Notice" means the notice required to be provided pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715.

1.8     "Class" means the settlement class proposed for certification, which is comprised of all participants and beneficiaries of the Putnam Retirement Plan at any time during the period from November 13, 2009 to the date of the Court's Final Approval Order.  Excluded from the class are Defendants, members of the PBIC, members of the PBOC, and members of the Putnam Investments, LLC Board of Directors.

1.9     "Class Counsel" means James H. Kaster, Paul J. Lukas, Kai H. Richter, Carl F. Engstrom, and Jacob Schutz of Nichols Kaster, PLLC, and Jason M. Leviton and Jacob A. Walker of Block & Leviton LLP.

1.10     "Class Member" means a member of the Class.

1.11     "Class Period" means November 13, 2009 through the date of the Final Approval Order, inclusive.

1.12     "Class Representative" means the named Plaintiffs in this Action, John Brotherston and Joan Glancy.

1.13    "Company" means Putnam Investments, LLC.

1.14    "Complaints" means the document filed in this Action at ECF No. 1 on November 13, 2015, the document filed at ECF No. 24 on April 24, 2016, and the document filed at ECF No. 73 on November 22, 2016.

1.15    "Court" means the United States District Court for the District of Massachusetts.

1.16    "Defendants" means Defendants Putnam Investments, LLC, Putnam Investment Management, LLC, Putnam Investor Services, Inc., the PBIC, PBOC, and Robert Reynolds.

1.17    "Defendants' Counsel" means James R. Carroll, Eben P. Colby, and Michael S. Hines of Skadden, Arps, Slate, Meagher & Flom LLP.

1.18    "Defendants' Released Claims" means all claims, whether arising under federal, state, or any other law, which have been, or could have been, asserted in the Action or in any court or forum, by Defendants against Plaintiffs or any Class Members, or their attorneys (including Class Counsel), which arise out of the institution, prosecution or settlement of the Action, except for claims to enforce the Settlement Agreement.

1.19    "Effective Date" means one business day following the later of (a) the date upon which the time expires for filing or noticing any appeal of the Final Approval Order; or (b) if there are any appeals, the date of dismissal or completion of any appeal, in a manner that finally affirms and leaves in place the Final Approval Order without any material modifications, and all proceedings arising out of the appeal(s) (including, but not limited to, the expiration of all deadlines for motions for reconsideration or rehearing or petitions for review and/or certiorari, all proceedings ordered on remand, and all proceedings arising out of any subsequent appeal(s) following decisions on remand).

1.20    "Entitlement Amount" means that portion of the Net Settlement Amount payable to an individual Class Member, as determined according to the procedures described in Article V herein.

1.21    "ERISA" means the Employee Retirement Income Security Act of 1974, as amended.

1.22    "Escrow Account" means an account at an established financial institution agreed upon by the Parties that is established for the deposit of the Gross Settlement Amount and amounts relating to it, such as income earned on the investment of the Gross Settlement Amount.

1.23    "Escrow Agent" means Analytics Consulting, LLC, an independent contractor to be retained by Class Counsel and approved by the Court, or its designee, which will serve as escrow agent for any portion of the Gross Settlement Amount deposited in or accruing in the Escrow Account pursuant to this Settlement.

1.24    "Fairness Hearing" means the hearing to be held before the Court pursuant to Federal Rule of Civil Procedure 23(e) to determine whether the Settlement Agreement should receive final approval by the Court.

1.25    "Final Approval Order" means the order and final judgment of the Court approving the Settlement, in substantially the form submitted in connection with Plaintiffs' Motion for Final Approval of the Settlement.

1.26    "Former Defendants" means current and former members of the PBIC, current and former members of the Putnam Benefits Administrative Committee ("PBAC"), the PBAC and Ellen Neary.

1.27    "Former Participant" means any Class Member who had a Plan account with a balance greater than $0.00 during the Class Period but who does not have a Plan account with a balance greater than $0.00 as of the date of the Preliminary Approval Order.

1.28    "Former Participant Rollover Form" means the form described generally in Section 5.3 herein, substantially in the form attached as Exhibit A hereto.

1.29    "Former Participant Rollover Form Deadline" means a date that is no later than ten (10) calendar days before the Fairness Hearing.

1.30    "Gross Settlement Amount" means the sum of twelve million five hundred thousand U.S. dollars (USD $12,500,000.00), contributed to the Qualified Settlement Fund as described in Article IV herein.  The Gross Settlement Amount shall be the full and sole monetary payment to the Plaintiffs, Class Members, and Class Counsel made on behalf of Defendants in connection with this Settlement Agreement.

1.31    "Inactive Participant" means any Class Member who, as of the date of the Preliminary Approval Order, has a Plan account with a balance greater than $0.00 and is ineligible to make contributions to the account.

1.32    "Independent Fiduciary" means the person or entity selected by the Company to serve as an independent fiduciary with respect to the Settlement Agreement for the purpose of rendering the determination described in Section 2.2 herein.

1.33    "Net Settlement Amount" means the Gross Settlement Amount, plus any interest or income earned on the Qualified Settlement Fund, less Administrative Expenses, Attorneys' Fees and Costs, any Service Award, and any other Court-approved deductions.

1.34    "Notice" means the form of Court-approved notice of this Settlement Agreement that is disseminated to Class Members.  The Parties shall propose that the Court approve the form of notice attached as Exhibit B hereto.  The Notice to Former Participants will include the Former Participant Rollover Form.

1.35    "Non-Proprietary Funds" means the following funds, regardless of share class:  BNY Mellon Aggregate Bond Index Fund; BNY Mellon International Stock Index Fund;

4

BNY Mellon Large Cap Growth Index Fund; BNY Mellon Large Cap Stock Index Fund; BNY Mellon Large Cap Value Index Fund; BNY Mellon Small Cap Stock Index Fund.

      1.36    "Non-Rollover-Electing Former Participant" means a Former Participant who has not submitted a completed, satisfactory Former Participant Rollover Form by the Former Participant Rollover Form Deadline set by the Court, or whose Former Participant Rollover Form is rejected by the Settlement Administrator.

      1.37    "Parties" means Plaintiffs and Defendants.

      1.38    "Plaintiffs" means John Brotherston and Joan Glancy.

      1.39    "Plaintiffs' Released Claims" means any and all claims, actions, demands, rights, obligations, liabilities, damages, attorneys' fees, expenses, costs, and causes of action against any of the Released Parties with respect to the Plan arising on or before the Effective Date:

      (a)    that were asserted in the Action or could have been asserted in the Action that arise out of, are based on, or have any connection with any of the allegations, acts, omissions, purported conflicts, representations, misrepresentations, facts, events, matters, transactions, or occurrences asserted in the Action, whether or not pleaded in the Complaints, including but not limited to those that arise out of, are based on, or have any connection with: (1) the selection, retention, and monitoring of the Plan's investment options and service providers, (2) the performance, fees, and other characteristics of the Plan's investment options and their specific share classes, (3) the Plan's fees and expenses, (4) the nomination, appointment, retention, monitoring, and removal of the Plan's fiduciaries, and (5) the approval by the Independent Fiduciary of the Settlement Agreement;

      (b)    that would be barred by res judicata based on the Court's entry of the Final Approval Order;

      (c)    that arise from the direction to calculate, the calculation of, and/or the method or manner of the allocation of the Net Settlement Fund pursuant to the Plan Of Allocation; or

      (d)    that arise from the approval by the Independent Fiduciary of the Settlement Agreement.

      Notwithstanding anything herein, the following shall not be included in the definition of Plaintiffs' Released Claims: (i) claims to enforce the Settlement Agreement, and (ii) claims for denial of benefits from the Plan.

      1.40    "Plan" means the Putnam Retirement Plan.

      1.41    "Plan Of Allocation" means the methodology for allocating and distributing the Net Settlement Amount as described in Article V herein.

1.42    "Preliminary Approval Order" means the order of the Court preliminarily approving the Settlement Agreement, in substantially the form submitted in connection with Plaintiffs' Motion for Entry of Preliminary Order.

1.43    "PTE 2003-39" means U.S. Department of Labor Prohibited Transaction Exemption 2003-39, 68 Fed. Reg. 75,632 (Dec. 31, 2003), as amended.

1.44    "Proprietary Funds" means the following funds, regardless of share class: George Putnam Balanced Fund; Marsh & McLennan Companies, Inc. Common Stock; PanAgora US Large Cap Stock Selector Fund; Putnam Absolute Return 500 Fund; Putnam American Government Income Fund; Putnam Asia Pacific Equity Fund; Putnam Bond Index Fund; Putnam Capital Opportunities Fund; Putnam Capital Spectrum Fund; Putnam Convertible Securities Fund; Putnam Diversified Income Trust; Putnam Dynamic Asset Allocation Balanced Fund; Putnam Dynamic Asset Allocation Conservative Fund; Putnam Dynamic Asset Allocation Growth Fund; Putnam Dynamic Risk Allocation Fund; Putnam Emerging Markets Equity Fund; Putnam Emerging Markets Income Fund; Putnam Equity Income Fund; Putnam Equity Spectrum Fund; Putnam Europe Equity Fund; Putnam Fixed Income Absolute Return Fund; Putnam Floating Rate Fund; Putnam Focused Equity Fund; Putnam Fund For Growth & Income; Putnam Global Communications Fund; Putnam Global Consumer Fund; Putnam Global Dividend Fund; Putnam Global Energy Fund; Putnam Global Equity Fund; Putnam Global Financials Fund; Putnam Global Health Care Fund; Putnam Global Income Trust; Putnam Global Natural Resources Fund; Putnam Global Sector Fund; Putnam Global Technology Fund; Putnam Global Telecommunications Fund; Putnam Global Utilities Fund; Putnam Government Money Market Fund; Putnam Growth Opportunities Fund; Putnam High Yield Fund; Putnam High Yield Trust; Putnam Income Fund; Putnam International Capital Opportunities Fund; Putnam International Equity Fund; Putnam International Growth Fund; Putnam International Value Fund; Putnam Investors Fund; Putnam Large Cap Value Trust; Putnam Low Volatility Equity Fund; Putnam Mortgage Opportunities Fund; Putnam Mortgage Securities Fund; Putnam Multi-Asset Absolute Return Fund; Putnam Multi-Cap Core Fund; Putnam Money Market Fund; Putnam PanAgora Managed Futures Strategy; Putnam PanAgora Market Neutral Fund; Putnam PanAgora Risk Parity Fund; Putnam Research Fund; Putnam Retirement Advantage 2020 Trust; Putnam Retirement Advantage 2025 Trust; Putnam Retirement Advantage 2030 Trust; Putnam Retirement Advantage 2035 Trust; Putnam Retirement Advantage 2040 Trust; Putnam Retirement Advantage 2045 Trust; Putnam Retirement Advantage 2050 Trust; Putnam Retirement Advantage 2055 Trust; Putnam Retirement Advantage 2060 Trust; Putnam Retirement Advantage Maturity Trust; Putnam Retirement Income Lifestyle 1 Fund; Putnam Retirement Income Lifestyle 2 Fund; Putnam Retirement Income Lifestyle 3 Fund; Putnam RetirementReady 2010 Fund; Putnam RetirementReady 2015 Fund; Putnam RetirementReady 2020 Fund; Putnam RetirementReady 2025 Fund; Putnam RetirementReady 2030 Fund; Putnam RetirementReady 2035 Fund; Putnam RetirementReady 2040 Fund; Putnam RetirementReady 2045 Fund; Putnam RetirementReady 2050 Fund; Putnam RetirementReady 2055 Fund; Putnam RetirementReady 2060 Fund; Putnam RetirementReady Maturity Fund; Putnam S&P 500 Index Fund; Putnam Short Duration Bond Fund; Putnam Small Cap Growth Fund; Putnam Small Cap Value Fund; Putnam Stable Value Fund; Putnam Strategic Volatility Equity Fund; Putnam Sustainable Future Fund; Putnam Sustainable Leaders Fund;  Putnam Ultra Short Duration Income Fund; Putnam Vista Fund; and Putnam Voyager Fund.

1.45    "Qualified Domestic Relation Order" means a judgment, decree, or order (including the approval of a property settlement) that is made pursuant to state domestic relations law (including community property law) and that relates to the provision of child support, alimony payments, or marital property rights for the benefit of a spouse, former spouse, child, or other dependent of an Active Participant, Inactive Participant, or Former Participant and which has been determined qualified pursuant to the Plan's procedures.

1.46    "Qualified Settlement Fund" means the interest-bearing settlement fund account to be established and maintained by the Escrow Agent as described in Article IV herein.

1.47    "Recordkeeper" means Empower Retirement, LLC, as successor in interest to Great-West Life & Annuity Insurance Company.

1.48    "Released Parties" means each Defendant or Former Defendant and its present, former, or future affiliates, agencies, agents, assigns, associates, directors, employees, officers, parents, partners, representatives, subsidiaries, predecessors and successors, and all respective heirs, executors, administrators, agents, attorneys, personal representatives, predecessors, successors, stockholders, partners, servicers, subrogees, officers, directors, associates, controlling persons, employees, attorneys, counselors, insurers, financial or investment advisors, consultants, accountants, investment bankers, commercial bankers, or advisors of any of the foregoing.

1.49    "Rollover-Electing Former Participant" means a Former Participant who has submitted a completed, satisfactory Former Participant Rollover Form by the Former Participant Rollover Form Deadline set by the Court and whose Former Participant Rollover Form is accepted by the Settlement Administrator.

1.50    "Service Award" means the amount of incentive or service award awarded by the Court to the Plaintiffs.

1.51    "Settlement Administrator" means Analytics Consulting LLC, an independent contractor to be retained by Class Counsel and approved by the Court.

1.52    "Settlement Agreement" means the compromise and resolution embodied in this agreement and its exhibits.

1.53    "Settlement Allocation Score" has the meaning ascribed to it in Section 5.1 herein.

1.54    "Settlement Website" means the internet website established by the Settlement Administrator as described in Section 3.3 herein.

## ARTICLE II

## SETTLEMENT APPROVAL

2.1     <u>Preliminary approval by Court.</u>  On or before April 17, 2020, Plaintiffs, through Class Counsel, shall apply to the Court for entry of the Preliminary Approval Order, which shall include, among other provisions, a request that the Court:

(a)     appoint Plaintiffs as Class Representatives of the Class;

(b)     appoint Class Counsel to represent the Class;

(c)     approve the Parties' selection of Settlement Administrator and Escrow Agent;

(d)     certify the Class under Federal Rule of Civil Procedure 23(b)(1) for settlement purposes;

(e)     preliminarily approve this Settlement Agreement for purposes of disseminating notice to the Class;

(f)     approve the form and contents of the Notice (including the Former Participant Rollover Form to be sent to Former Participants) and hold that mailing copies of the Notice to Class Members by first class mail, postage prepaid complies fully with the requirements of Federal Rule of Civil Procedure 23, the United States Constitution, and any other applicable law;

(g)     preliminarily bar and enjoin the institution and prosecution of any Plaintiffs' Released Claims against any Released Parties by Class Members and their respective heirs, Beneficiaries, executors, administrators, estates, past and present partners, officers, directors, agents, attorneys, predecessors, successors, and assigns, pending final approval of this Settlement Agreement, even if any Class Member may thereafter discover facts in addition to or different from those which the Class Members or Class Counsel now know or believe to be true with respect to the Action and Plaintiffs' Released Claims;

(h)     provide that Class Members may object to the Settlement Agreement prior to the Fairness Hearing according to a designated schedule; and

(i)     schedule a Fairness Hearing to (1) review comments and/or objections regarding this Settlement Agreement, (2) consider the fairness, reasonableness, and adequacy of this Settlement Agreement, (3) consider whether the Court should issue a Final Approval Order approving this Settlement Agreement, awarding any Attorneys' Fees and Costs and Service Awards, and dismissing this Action with prejudice, and (4) consider such other matters as the Court may deem appropriate.

2.2     <u>Review by Independent Fiduciary.</u>  The Company shall, in its sole discretion, select and retain the Independent Fiduciary, on behalf of the Plan, to determine whether to approve and authorize Plaintiffs' Released Claims on behalf of the Plan.

 (a) The Independent Fiduciary shall comply with all relevant requirements set forth in PTE 2003-39.

 (b) The Independent Fiduciary shall notify the Company and Class Counsel of its determination in writing and in accordance with PTE 2003-39, which notification shall be delivered no later than thirty (30) calendar days before the Fairness Hearing.

 (c) If the Independent Fiduciary disapproves or otherwise does not authorize the Settlement Agreement or refuses to execute the release on behalf of the Plan, the Defendants (and only the Defendants) may (but need not) terminate the Settlement Agreement.

 (d) The Parties shall comply with reasonable requests for information made by the Independent Fiduciary.

 (e) All fees and expenses associated with the Independent Fiduciary's retention and determination shall be considered Administrative Expenses.

 2.3 <u>Final approval by Court.</u> No later than fourteen (14) calendar days before the Fairness Hearing, or by such other deadline as specified by the Court, Class Counsel shall apply to the Court for entry of the Final Approval Order, which shall include, among other provisions, a request that the Court:

 (a) dismiss the Action with prejudice and without costs, except as contemplated by this Settlement Agreement;

 (b) decree that neither the Final Approval Order nor this Settlement Agreement constitutes an admission by any Defendant or Released Party of any liability or wrongdoing whatsoever;

 (c) bar and enjoin all Class Members from asserting any of Plaintiffs' Released Claims against any of the Released Parties;

 (d) determine that this Settlement Agreement is entered into in good faith and represents a fair, reasonable, and adequate settlement that is in the best interests of the Class Members; and

 (e) preserve the Court's continuing and exclusive jurisdiction over the Parties and all Class Members to administer, construe, and enforce this Settlement Agreement in accordance with its terms for the mutual benefit of the Parties, but without affecting the finality of the Final Approval Order.

### ARTICLE III

### <u>SETTLEMENT ADMINISTRATION</u>

 3.1 <u>CAFA Notice.</u> No later than ten (10) calendar days after the Plaintiffs' filing of this Settlement Agreement and motion for entry of the Preliminary Approval Order with the Court, the Settlement Administrator shall provide appropriate notice of this Settlement

Agreement to the Attorney General of the United States and to the Attorneys General of all states in which Class Members reside, as specified in 28 U.S.C. § 1715(b).  The costs of such notice shall be considered an Administrative Expense.  Upon completing such notice, the Settlement Administrator shall provide written notice to Class Counsel and Defendants' Counsel.

        3.2    <u>Notice to Class Members.</u>

        (a)    The Company shall cause the Recordkeeper (or its designee) to provide to the Settlement Administrator all information necessary to disseminate the Notice to Class Members and implement the Plan Of Allocation no later than fourteen (14) calendar days after the entry of the Preliminary Approval Order.

        (b)    No later than thirty five (35) calendar days after the entry of the Preliminary Approval Order, or by such other deadline as specified by the Court, the Settlement Administrator shall send the Notice by first-class mail, postage prepaid to Class Members.

        (c)    The Notice shall be in the form approved by the Court, which shall be in substantially the form attached as Exhibit B hereto.  The Notice to Former Participants will include the Former Participant Rollover Form.

        (d)    The Notice shall be sent to the last known address of each Class Member provided by the Recordkeeper (or its designee), unless an updated address is obtained by the Settlement Administrator through its efforts to verify the last known address provided by the Recordkeeper (or its designee).

        (e)    The Settlement Administrator shall use commercially reasonable efforts to locate any Class Member whose Notice is returned and mail such Notices to those Class Members one additional time.

        (f)    The Settlement Administrator shall post a copy of the Notice and the Former Participant Rollover Form on the Settlement Website.

        3.3    <u>Settlement Website.</u>

        (a)    No later than thirty five (35) calendar days after the entry of the Preliminary Approval Order, the Settlement Administrator shall establish the Settlement Website.  The Settlement Administrator shall maintain the Settlement Website until no later than one year after the Effective Date or thirty (30) calendar days after the receipt of the notice(s) referenced in Section 5.5, whichever is earlier, at which point the Settlement Administrator shall take down the Settlement Website.

        (b)    The Settlement Website shall contain a copy of the Notice, Former Participant Rollover Form, and relevant case documents, including but not limited to a copy of all documents filed with the Court in connection with the Settlement.  No other information or documents will be posted on the Settlement Website unless agreed to in advance by the Parties in writing.

(c)     The Settlement Website shall also include a toll-free telephone number and mailing address through which Settlement Class Members may contact the Settlement Administrator (or its designee) directly.  With approval and input from Class Counsel and Defendants' Counsel, the Settlement Administrator shall develop a question-and-answer script for use with callers to the toll-free telephone number.

3.4     Distribution of Net Settlement Amount.  The Settlement Administrator shall distribute the Net Settlement Amount to Class Members in accordance with the Plan Of Allocation as described in Article V herein.  Within thirty (30) calendar days of the Final Approval Order, the Company shall use reasonable efforts to cause the Recordkeeper (or its designee) to provide an updated list of Active Participants and Inactive Participants prior to the distribution, so as to identify any such participants who have taken a full distribution from their Plan account and no longer have a Plan account with a balance greater than $0.00.

3.5     Maintenance of records.  The Settlement Administrator shall maintain reasonably detailed records of its activities carried out under this Settlement Agreement.  The Settlement Administrator shall maintain all such records as required by applicable law in accordance with its business practices and provide same to Class Counsel and Defendants' Counsel upon their request. The Settlement Administrator shall provide such information as may reasonably be requested by Plaintiffs or Defendants or their counsel relating to the administration of the Settlement Agreement.

3.6     No liability.  Defendants, Former Defendants, Defendants' Counsel, and Defendant Released Parties shall have no responsibility for, interest in, or liability whatsoever, with respect to:

(a)     any act, omission, or determination of the Settlement Administrator;

(b)     any act, omission, or determination of Class Counsel or their designees or agents in connection with the administration of the Settlement Agreement;

(c)     the management, investment, or distribution of the Settlement Fund; or

(d)     the determination, administration, calculation, or payment of any claims asserted against the Qualified Settlement Fund.

## ARTICLE IV

## ESTABLISHMENT OF QUALIFIED SETTLEMENT FUND

4.1     Establishment of the Qualified Settlement Fund.  No later than five (5) business days after entry of the Preliminary Approval Order, the Escrow Agent shall establish an escrow account.  The Parties agree that the escrow account is intended to be, and will be, an interest-bearing Qualified Settlement Fund within the meaning of U.S. Department of Treasury Regulation § 1.468B-1 (26 C.F.R. § 1.468B-1).  In addition, the Escrow Agent timely shall make such elections as necessary or advisable to carry out the provisions of this paragraph, including the "relation-back election" (as defined in 26 C.F.R. § 1.468B-1(j)(2)) back to the earliest

11

permitted date.  Such elections shall be made in compliance with the procedures and requirements contained in such regulations.  It shall be the responsibility of the Escrow Agent to prepare and deliver, in a timely and proper manner, the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

4.2     Funding of the Qualified Settlement Fund.  In consideration of all the promises and agreements set forth in the Settlement Agreement, the Company will contribute, or cause to be contributed, the Gross Settlement Amount to the Qualified Settlement Fund.  No other Defendant shall have any obligation to contribute financially to the Qualified Settlement Fund.  The Company shall contribute the Gross Settlement Amount to the Qualified Settlement Fund, and this funding, in the aggregate, together with any interest and investment earnings thereon, shall constitute the Qualified Settlement Fund:

(a)     No later than twenty-eight (28) calendar days after the later of (i) the Preliminary Order is entered, or (ii) the escrow account described in Section 4.1 is established and the Escrow Agent shall have furnished to Defendants in writing the escrow account name, IRS W-9 form, and all necessary wiring instructions, the Company shall cause to be deposited one hundred thousand U.S. dollars (USD $100,000.00) of the Gross Settlement Amount into the Qualified Settlement Fund to fund any Administrative Expenses that arise before the entry of the Final Approval Order.

(b)     No later than thirty (30) calendar days after entry of the Final Approval Order, the Company shall cause the remaining portion of the Gross Settlement Amount (twelve million, four hundred thousand U.S. dollars (USD $12,400,000.00)) to be deposited in the Qualified Settlement Fund.

4.3     Qualified Settlement Fund administrator.  For the purpose of § 468B of the Internal Revenue Code of 1986, as amended (26 U.S.C. § 468B) and the regulations promulgated thereunder, the administrator of the Qualified Settlement Fund shall be the Escrow Agent.  The Escrow Agent, or the Settlement Administrator on its behalf, shall timely and properly cause to be filed all informational and other tax returns necessary or advisable with respect to the Gross Settlement Amount (including without limitation applying for a taxpayer identification number for the Qualified Settlement Fund and filing the returns described in 26 C.F.R. § 1.468B-2(k)).  Such returns, as well as the election described in Section 4.1, shall be consistent with this Article and, in all events, shall reflect that all taxes (including any estimated taxes, interest, or penalties) on the income earned by the Gross Settlement Amount shall be deducted and paid from the Gross Settlement Amount as described in Section 4.5 herein.

4.4     Investment of the Qualified Settlement Fund.  The Escrow Agent shall invest the Qualified Settlement Fund in short-term United States agency or Treasury securities or other instruments backed by the full faith and credit of the United States government or an agency thereof, or fully insured by the United States Government or an agency thereof, and shall reinvest the proceeds of these investments as they mature in similar instruments at their then-current market rates.

4.5     Taxes on the income of the Qualified Settlement Fund.  All taxes on any income of the Qualified Settlement Fund and expenses and costs incurred in connection with the

taxation of the Qualified Settlement Fund (including, without limitation, expenses of tax attorneys and accountants) are Administrative Expenses and shall be timely paid by the Escrow Agent out of the Qualified Settlement Fund.  The Escrow Agent, or the Settlement Administrator on its behalf, shall be responsible for making provision for the payment from the Qualified Settlement Fund of all taxes and tax expenses, if any, owed with respect to the Qualified Settlement Fund and for all tax reporting, remittance, and/or withholding obligations, if any, for amounts distributed from it.  Defendants, Former Defendants, Defense Counsel, and Class Counsel have no responsibility or any liability for any taxes or tax expenses owed by, or any tax reporting or withholding obligations, if any, of the Qualified Settlement Fund.

## ARTICLE V

## PLAN OF ALLOCATION

5.1     Calculation of payments to individual Class Members.  Payments to each Class Member shall by calculated by the Settlement Administrator as follows, based on information provided by the Recordkeeper:

(a)     For each Class Member, the Settlement Administrator shall determine a Settlement Allocation Score.  A Class Member's Settlement Allocation Score shall be weighted by eighty percent (80%) to his or her Plan account balance invested in Proprietary Funds and by twenty percent (20%) to his or her Plan account balance invested in Non-Proprietary Funds.  Accordingly, each Settlement Allocation Score shall be a Class Member's aggregate year-end Plan account balance during the Class Period, measured in points such that each dollar invested in Proprietary Funds equals four (4) points and each dollar invested in Non-Proprietary Funds equals one (1) point; provided, however, that each Class Member's year-end Plan account balance for the year 2009 shall be multiplied by 48/366, and each Class Member's year-end Plan account balance for the year 2020 shall be the Plan account balance as of March 31, 2020 and shall be multiplied by 90/366.

(b)     The Settlement Administrator shall determine each Class Member's Entitlement Amount by calculating each Class Member's pro rata share of the Net Settlement Amount, based on his or her Settlement Allocation Score compared to the sum of all Class Members' Settlement Allocation Scores.

(c)     The aggregate of all Class Members' Entitlement Amounts may not exceed the Net Settlement Amount.  In the event that the Settlement Administrator determines that aggregate monetary payment pursuant to the Plan Of Allocation would exceed the Net Settlement Amount, the Settlement Administrator is authorized to make such pro rata changes as are necessary to ensure that the aggregate monetary payment pursuant to the Plan Of Allocation does not exceed the Net Settlement Amount.

5.2     Payments to Active Participants and Inactive Participants.

(a)     Upon completing the calculation of each Class Member's Entitlement Amount and no later than thirty (30) calendar days following the Effective Date, the Settlement Administrator shall provide the Company (or its designee), Class Counsel, and the

Recordkeeper information in a mutually agreeable format concerning each Active Participant and each Inactive Participant's Entitlement Amount, and any other information requested by the Company or the Recordkeeper as necessary to effectuate this Article.

(b)     No later than ten (10) calendar days after completing the steps described in Section 5.2(a) herein and upon written notice to the Company and the Recordkeeper, the Settlement Administrator shall effect a transfer from the Qualified Settlement Fund to the Plan of all monetary payments payable to Active Participants and Inactive Participants.  The Recordkeeper shall thereafter credit the individual Plan account of each Active Participant and Inactive Participant in an amount equal to that individual's Entitlement Amount.

(c)     Each Active Participant and each Inactive Participant's Entitlement Amount shall be invested in accordance with and in proportion to such Active Participant's investment elections then on file for new contributions to his or her Plan account.  If the Active Participant or Inactive Participant does not have an investment election on file, then such individual shall be deemed to have directed payment of his or her Entitlement Amount to be invested in the Plan's qualified default investment alternative, as defined in 29 C.F.R. § 2550.404c-5.

(d)     If, as of the date on which the Recordkeeper credits the individual Plan account of each Active Participant and Inactive Participant with his or her Entitlement Amount, an individual believed to be an Active Participant or an Inactive Participant no longer has a Plan account balance greater than $0.00, he or she will be treated as a Former Participant. The Recordkeeper shall promptly transmit a list of such individuals to the Settlement Administrator, who shall effectuate payment to such individuals in accordance with Section 5.3 herein.

5.3     Payments to Former Participants.

(a)     Each Former Participant (or the Beneficiaries or Alternate Payees of Former Participants) will have the opportunity to elect a tax-qualified rollover of his or her Entitlement Amount to an individual retirement account or other eligible employment plan, which he or she has identified on the Former Participant Rollover Form, provided that the Former Participant supplies adequate information to the Settlement Administrator to effect the rollover.  Payments to each Former Participant shall depend on whether each is a Rollover-Electing Former Participant or a Non-Rollover-Electing Former Participant:

(i)     Rollover-Electing Former Participants.  Upon completing the calculation of each Class Member's Entitlement Amount and no later than forty (40) calendar days following the Effective Date, the Settlement Administrator shall effect a rollover from the Qualified Settlement Fund to the individual retirement account or other eligible employer plan elected by each Rollover-Electing Former Participant in his or her Former Participant Rollover Form (if the conditions for such rollover are satisfied) and any associated paperwork necessary to transfer such Entitlement Amount by rollover.  If the Settlement Administrator is unable to effectuate the rollover instructions of any Rollover-Electing Former Participant as provided in his or her Former Participant Rollover Form, he or she will be treated as a Non-Rollover-Electing Former Participant.

14

(ii)     Non-Rollover-Electing Former Participants.  Upon completing the calculation of each Class Member's Entitlement Amount and no later than forty (40) calendar days following the Effective Date, the Settlement Administrator shall issue a check from the Qualified Settlement Fund to each Non-Rollover-Electing Former Participant, in the amount of each Former Participant's Entitlement Amount (less any withholdings).

5.4     Payments to Beneficiaries and Alternate Payees.

(a)     Beneficiaries of Active Participants or Inactive Participants that are entitled to receive all or a portion of an Active Participant's or Inactive Participant's Entitlement Allocation under this Article shall receive such settlement payments in the form of a check issued by the Settlement Administrator.  Beneficiaries of Former Participants that are entitled to receive all or a portion of a Former Participant's Entitlement Allocation under this Article will receive such settlement payments under the methods described in Section 5.3 for Former Participants.

(b)     Alternate Payees of Active Participants or Inactive Participants that are entitled to receive all or a portion of an Active Participant's or Inactive Participant's Entitlement Allocation under this Article shall receive such settlement payments pursuant to the terms of the applicable Qualified Domestic Relations Order.  Alternate Payees of Former Participants that are entitled to receive all or a portion of a Former Participant's Entitlement Allocation under this Article will receive such settlement payments under the methods described in Section 5.3 for Former Participants.

(c)     The Settlement Administrator shall have sole and final discretion to determine the amounts to be paid to Beneficiaries and Alternate Payees in accordance with the Plan of Allocation set forth in this Article and as ordered by the Court.

(d)     All checks issued in accordance with the Plan Of Allocation shall be mailed to the address of each Class Member (or his or her Beneficiary or Alternate Payee) provided by the Recordkeeper or any updated address obtained by the Settlement Administrator.

(e)     All checks issued in accordance with the Plan of Allocation shall expire no later than one hundred twenty (120) calendar days after their issue date.  All checks that are undelivered or are not cashed before their expiration date shall revert to the Qualified Settlement Fund, which limitation shall be printed on the face of each check.  The voidance of checks shall have no effect on Class Members' release of claims, obligations, representations, or warranties as provided herein, which shall remain in full effect.

5.5     Notice of completion of Plan Of Allocation.  Within ten (10) business days of completing all aspects of the Plan Of Allocation, the Settlement Administrator shall provide written notice of its implementation of the Plan Of Allocation to Class Counsel and Defendants' Counsel.  Such notice shall provide, in reasonable detail, a summary of the steps taken to implement the Plan Of Allocation.

5.6     Disbursement of undistributed monies from the Qualified Settlement Fund.  No sooner than one hundred and fifty (150) calendar days following the last date on which any check was mailed pursuant to Section 5.4(d) herein, any portion of the Qualified

Settlement Fund remaining after distributions, including costs and taxes, shall be paid to the Plan for the purpose of defraying administrative fees and expenses of the Plan.

      5.7   <u>Responsibility for taxes.</u>  Each Class Member who receives a payment pursuant to the Settlement Agreement shall be fully and ultimately responsible for payment of any and all federal, state or local taxes resulting from or attributable to the payment received by such person.  Each Class Member shall hold Defendants, Former Defendants, Defendants' Counsel, Released Parties, Class Counsel, and the Settlement Administrator harmless from (a) any tax liability, including without limitation penalties and interest, related in any way to payments or credits under the Agreement, and (b) the costs (including, without limitation, fees, costs and expenses of attorneys, tax advisors, and experts) of any proceedings (including, without limitation, any investigation, response, and/or suit), related to such tax liability.

## ARTICLE VI

## <u>PROSPECTIVE RELIEF</u>

      6.1   Defendants agree that the following procedures shall apply to the management of the Plan on a prospective basis for a period of no less than two (2) years beginning no later than the Settlement Effective Date:

      (a)   Defendants will maintain a charter for the PBIC that outlines the duties and fiduciary responsibilities of the PBIC and establishes its general quarterly meeting schedule.

      (b)   Defendants will maintain an investment policy statement for the Plan.

      (c)   Defendants will maintain a suite of low-cost third-party passive collective investment trust ("CIT") options in the Plan;

      (d)   PBIC will meet no less than quarterly, and such meetings shall include two meetings a year to review Putnam options in the Plan, with Putnam senior investment representation attending to review the funds; one meeting a year to review the third party passive CIT options in the Plan with representatives of the third party CIT provider(s); one meeting a year to review the Plan's Qualified Default Investment Alternatives; and one meeting a year to review PanAgora options in the Plan with PanAgora representatives; and

      (e)   Defendants will arrange annual training on ERISA fiduciary duties for Plan fiduciaries.

## ARTICLE VII

## <u>ATTORNEYS' FEES AND COSTS AND SERVICE AWARDS</u>

      7.1   <u>Attorneys' Fees and Costs.</u>  No later than fourteen (14) days prior to the deadline provided in the Preliminary Approval Order for Class Members to object to the Settlement Agreement, Class Counsel may file an application with the Court for payment of their

reasonable Attorneys' Fees and Costs, to be deducted from the Gross Settlement Amount. Defendants agree not to object to Class Counsel's application for Attorneys' Fees and Costs. Notwithstanding anything herein, the Court's failure to approve, in whole or in part, any application for Attorneys' Fees and Costs sought by Class Counsel shall not prevent the Settlement Agreement from becoming effective, nor shall it be grounds for termination of the Settlement.

   7.2 <u>Service Award.</u> No later than fourteen (14) days prior to the deadline provided in the Preliminary Approval Order for Class Members to object to the Settlement Agreement, Class Counsel may file an application with the Court for payment of Service Awards to Plaintiffs in an amount not to exceed twenty-five thousand U.S. dollars (USD $25,000.00) each.  Notwithstanding anything herein, the Court's failure to approve, in whole or in part, any application for a Service Award shall not prevent the Settlement Agreement from becoming effective, nor shall it be grounds for termination of the Settlement.

## ARTICLE VIII

## <u>RELEASES AND COVENANT NOT TO SUE</u>

   8.1 <u>Releases.</u> Subject to Article X below, the obligations incurred pursuant to this Settlement Agreement shall be in full and final disposition and settlement of any and all of Plaintiffs' Released Claims.

   (a) Upon the Effective Date, Plaintiffs and every Class Member on behalf of themselves, their heirs, executors, administrators, successors, and assigns, and the Plan (subject to Independent Fiduciary approval as described in Section 2.2 herein) shall, with respect to each and every Released Claim, be deemed to fully, finally and forever release, relinquish and forever discharge each and every Released Claim against any and all of the Released Parties, and forever shall be enjoined from prosecuting any such Released Claim.

   (b) Upon the Effective Date, Defendants, on behalf of themselves and their successors and assigns shall be deemed to fully, finally and forever release, relinquish and forever discharge each and every Defendant's Released Claims, and forever shall be enjoined from prosecuting any such claims.

   (c) Nothing herein shall preclude any action to enforce the Settlement Agreement.

   8.2 <u>Covenant not to sue.</u> As of the Effective Date, the Class Members and the Plan (subject to Independent Fiduciary approval as described in Section 2.2 herein) acting individually or together, or in combination with others, shall not sue or seek to institute, maintain, prosecute, argue, or assert in any action or proceeding (including but not limited to a U.S. Internal Revenue Service determination letter proceeding, a U.S. Department of Labor proceeding, an arbitration, or a proceeding before any state insurance or other department or commission), any cause of action, demand, or claim adverse to Plaintiffs' Released Parties on the basis of, in connection with, or arising out of any of Plaintiffs' Released Claims.  Nothing herein shall preclude any action to enforce the Settlement Agreement.

## ARTICLE IX

## REPRESENTATIONS AND WARRANTIES

9.1     Parties' representations and warranties.   The parties represent and warrant as follows, and each Party acknowledges that each other Party is relying on these representations and warranties in entering into the Settlement Agreement:

(a)     that they are voluntarily entering into the Settlement Agreement as a result of arm's-length negotiations, and that in executing this Settlement Agreement they are relying solely upon their own judgment, belief, and knowledge, and upon the advice and recommendations of counsel, concerning the nature, extent, and duration of their rights and claims hereunder and regarding all matters that relate in any way to the subject matter hereof;

(b)     that they assume the risk of mistake as to facts or law;

(c)     that they recognize that additional evidence may come to light, but that they nevertheless desire to avoid the expense and uncertainty of litigation by entering into the Settlement Agreement;

(d)     that they have carefully read the contents of the Settlement Agreement, and the Settlement Agreement is signed freely by each individual executing the Settlement Agreement on behalf of each Party; and

(e)     that they have made such investigation of the facts pertaining to the subject matter of the Settlement Agreement as they deem necessary.

9.2     Signatories' representations and warranties.   The persons executing the Settlement Agreement represent that they have been duly authorized to do so and that they have the authority to take appropriate action required or permitted to be taken pursuant to the Settlement Agreement in order to effectuate its terms.

## ARTICLE X

## TERMINATION

10.1     Right to terminate by each Party.   Each Party shall have the right to terminate and abandon the Settlement Agreement by providing written notice of their election to do so to the other Party no later than fourteen (14) calendar days after:

(a)     the Court declines to approve the Settlement Agreement or any material part of it;

(b)     the Court declines to enter the Preliminary Approval Order or materially modifies the contents of the Preliminary Approval Order;

(c)     the Court declines to enter the Final Approval Order or materially modifies the contents of the Final Approval Order; or

(d)     the Final Approval Order is vacated, reversed, or modified in any material respect on any appeal or other review or in a collateral proceeding occurring prior to the Effective Date.

Notwithstanding anything herein, no order of the Court, or modification or reversal on appeal of any order of the Court, solely concerning Attorneys' Fees and Costs or any Service Award shall constitute grounds for termination of the Settlement Agreement.

10.2     <u>Right to terminate by Defendants.</u>  Defendants (and only Defendants) shall have the right to terminate and abandon the Settlement Agreement in the event that the Independent Fiduciary disapproves or otherwise does not authorize the Settlement Agreement or refuses to approve the Plan's release of Plaintiffs' Released Claims.  In such an event, no later than fourteen (14) calendar days after receipt of the Independent Fiduciary's determination, Defendants shall provide written notice to Plaintiffs of (a) their election to exercise their right to terminate and abandon the Settlement Agreement, or (b) their election to waive that right.

10.3     <u>Reversion to prior positions.</u>  If the Settlement Agreement is terminated in accordance with this Article, then the Parties and Class Members will be restored to their respective positions immediately before the execution of the Settlement Agreement, this Action shall proceed in all respects as if the Settlement Agreement and any related orders had not been entered, any order entered by the Court pursuant to the terms of this Settlement Agreement shall be treated as vacated *nunc pro tunc*, the fact of this Settlement Agreement and the terms contained herein shall not be admissible in any proceeding for any purpose, and the Parties expressly and affirmatively reserve all claims, remedies, defenses, arguments, and motions as to all claims and requests for relief that might have been or might be later asserted in the Action.

## ARTICLE XI

## <u>NO ADMISSION OF WRONGDOING</u>

11.1     The Settlement Agreement, whether or not consummated, and any proceedings taken pursuant to it, is for settlement purposes only and entered into solely for the purpose of avoiding possible future expenses, burdens, or distractions of litigation, and Defendants, Former Defendants and the Released Parties deny any and all wrongdoing. Defendants, Former Defendants and the Released Parties specifically and expressly deny any and all liability in connection with any claims which have been made or could have been made, or which are the subject matter of, arise from, or are connected, directly or indirectly, with or related in any way to the Action, including, but not limited to, any violation of any federal or state law (whether statutory or common law), rule, or regulation, and Defendants, Former Defendants and the Released Parties deny that any violation of any such law, rule, or regulation has ever occurred.

11.2     The Settlement Agreement, whether or not consummated, and any negotiations, proceedings, or agreements relating to the Settlement Agreement, and any matters arising in connection with settlement negotiations, proceedings, or agreements:

(a)     shall not be offered or received against Defendants, Former Defendants or any of the Released Parties as evidence of, or be construed as or deemed to be evidence of, any presumption, concession, or admission by Defendants, Former Defendants or a Released Party of the truth of any fact alleged by Plaintiffs or the validity of any claim that has been or could have been asserted in the Action or in any litigation, or the deficiency of any defense that has been or could have been asserted in the Action or in any litigation, or of any liability, negligence, fault, or wrongdoing on the part of Defendants, Former Defendants or any of the Released Parties, or the appropriateness of certifying a non-settlement class;

(b)     shall not be offered or received against Defendants, Former Defendants or any of the Released Parties as evidence of a presumption, concession or admission of any fault, misrepresentation or omission with respect to any statement or written document approved or made by Defendants, Former Defendants or any of the Released Parties;

(c)     shall not be offered or received against Defendants, Former Defendants or any of the Released Parties as evidence of a presumption, concession, or admission with respect to any liability, negligence, fault, or wrongdoing, or in any way referred to for any other reason as against Defendants, Former Defendants or any of the Released Parties, in any other civil, criminal or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of this Settlement Agreement; provided, however, that if this Settlement Agreement is approved by the Court, Defendants, Former Defendants or the Released Parties may refer to it to effectuate the liability protection granted them hereunder; and

(d)     shall not be construed against Defendants, Former Defendants or any of the Released Parties as an admission or concession that the consideration to be given hereunder represents the amount which could or would have been recovered after trial of the Action.

## ARTICLE XII

## MISCELLANEOUS

12.1     Exhibits included.  The exhibits to the Settlement Agreement are integral parts of the Parties' agreement and are incorporated by reference as if set forth herein.

12.2     Cooperation.   Class Counsel and Defendant's Counsel agree to cooperate fully with one another in seeking Court entry of the Preliminary Approval Order and Final Approval Order.

12.3     Entire agreement.  This Settlement Agreement and all of the exhibits appended hereto constitute the entire agreement of the Parties with respect to their subject matter and supersede any prior agreement, whether written or oral, as to that subject matter.  No representations or inducements have been made by any Party hereto concerning the Settlement Agreement or its exhibits other than those contained and memorialized in such documents.  The provisions of the Settlement Agreement and its exhibits may not be modified or amended, nor

may any of their provisions be waived, except by a writing signed by all Parties hereto or their successors-in-interest.

12.4    Waiver.  The waiver by any Party of a breach of the Settlement Agreement by any other Party shall not be deemed a waiver of any other breach of the Settlement Agreement.

12.5    Construction of agreement.  This Settlement Agreement shall not be construed more strictly against one Party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the Parties, it being recognized that the Stipulation is the result of arm's-length negotiations between the Parties and all Parties have contributed substantially and materially to its preparation.

12.6    Headings.  The headings herein are used for the purpose of convenience only and are not meant to have legal effect.

12.7    Governing law.  The Settlement Agreement and all documents necessary to effectuate it shall be governed by the internal laws of the Commonwealth of Massachusetts without regard to its conflict of law doctrines, except to the extent that federal law requires that federal law govern, and except that all computations of time with respect to the Settlement Agreement shall be governed by Federal Rule of Civil Procedure 6.

12.8    Fees and expenses.  Except as otherwise expressly set forth herein, each Party shall pay all fees, costs, and expenses incurred in connection with the Action, including fees, costs, and expenses incident to the negotiation, preparation, or compliance with the Settlement Agreement, and including any fees, expenses, and disbursements of its counsel and other advisors.  Nothing in the Settlement Agreement shall require Defendants to pay any monies other than as expressly provided herein.

12.9    Execution in counterparts.  The Settlement Agreement may be executed in one or more counterparts and may be executed by facsimile signature.  All executed counterparts and each of them shall be deemed to be one and the same instrument provided that counsel for the Parties shall exchange among themselves signed counterparts.

12.10   Notices.  Unless otherwise provided herein, any notice, demand, or other communication under the Settlement Agreement (other than Notices to Class Members or other notices provided at the direction of the Court) shall be in writing and shall be deemed duly given upon receipt if it is addressed to each of the intended recipients as set forth below and delivered by hand, sent by registered or certified mail postage prepaid, or delivered by reputable express overnight courier as follows:

(a)    if to Plaintiffs:

Kai Richter
NICHOLS KASTER, PLLP
4600 IDS Center
80 S 8th Street
Minneapolis, MN 55402

    (b)    if to Defendants:

James R. Carroll
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
500 Boylston Street
Boston, Massachusetts 02116

-and-

Jason Tucker
PUTNAM INVESTMENTS
100 Federal Street
Boston, Massachusetts 02110

    12.11  <u>Retention of jurisdiction.</u>  The Parties shall request that the Court retain jurisdiction of this matter after the Effective Date and enter such orders as are necessary or appropriate to effectuate the terms of the Settlement Agreement.


AGREED TO ON BEHALF OF PLAINTIFFS John Brotherston and Joan Glancy, individually and as Class Representatives

Dated: _____April 17, 2020_____    By: _____

    Kai Richter
    NICHOLS KASTER, PLLP
    4600 IDS Center
    80 S 8th Street
    Minneapolis, MN 55402
    612-256-3200
    kaster@kna.com


AGREED TO ON BEHALF OF DEFENDANTS Putnam Investments, LLC, Putnam Investment Management, LLC, Putnam Investor Services, Inc., PBIC, PBOC and Robert Reynolds

Dated: _____April 17, 2020_____    By: _____

    James R. Carroll
    SKADDEN, ARPS, SLATE,
      MEAGHER & FLOM LLP
    500 Boylston Street
    Boston, Massachusetts 02116
    (617) 573-4800
    james.carroll@skadden.com

# Exhibit A

**Putnam Retirement Plan Settlement Administrator**
**P.O. Box [number]**
**[City, State, ZIP]**
**[www.settlementwebsite.com]**

## FORMER PARTICIPANT ROLLOVER FORM

JOHN Q CLASSMEMBER                              Claim Number: 1111111
123 MAIN ST APT 1
ANYTOWN, ST 12345

This Former Participant Rollover Form is **ONLY** for Class Members who are **Former Participants**, or the beneficiaries or alternate payees of Former Participants (all of whom will be treated as Former Participants). A Former Participant is a Class Member who had a Plan account with a balance greater than $0.00 during the Class Period but does not have a Plan account with a balance greater than $0.00 as of the date of [the Preliminary Approval Order].

Former Participants that would like to elect to receive their settlement payment through a rollover to a qualified retirement account must complete, sign, and mail this form with a postmark on or before [RETURN DATE SET FORTH IN PRELIMINARY APPROVAL ORDER].  Please review the instructions below carefully. **Former Participants who do not complete and timely return this form will receive their settlement payment by a check.**  If you have questions regarding this form, you may contact the Settlement Administrator as indicated below:

WWW.SETTLEMENTWEBSITE.COM OR CALL [PHONE NUMBER]

*****************************************************************************************************************

## PART 1: INSTRUCTIONS FOR COMPLETING FORMER PARTICIPANT ROLLOVER FORM

1.  If you would like to receive your settlement payment through a rollover to a qualified retirement account, complete this rollover form.  You should also keep a copy of all pages of your Former Participant Rollover Form, including the first page with the address label, for your records.

2.  **Mail your completed Former Participant Rollover Form postmarked on or before [RETURN DATE SET FORTH IN PRELIMINARY APPROVAL ORDER] to the Settlement Administrator at the following address:**

**Putnam Retirement Plan Settlement Administrator**
**P.O. Box [number] [City, State, ZIP]**

It is your responsibility to ensure the Settlement Administrator has timely received your Former Participant Rollover Form.

3.  Other Reminders:

    •  You must provide date of birth, signature, and a completed Substitute IRS Form W-9, which is attached as part 5 to this form.

    •  If you desire to do a rollover and you fail to complete all of the rollover information in Part 4, below, payment will be made to you by check.

- If you change your address after sending in your Former Participant Rollover Form, please provide your new address to the Settlement Administrator.

- **Timing of Payments to Eligible Class Members.** The timing of the distribution of the Settlement payments are conditioned on several matters, including the Court's final approval of the Settlement and any approval becoming final and no longer subject to any appeals in any court. An appeal of the final approval order may take several years. If the Settlement is approved by the Court, and there are no appeals, the Settlement distribution likely will occur within three months of the Court's Final Approval Order.

4. **Questions?** If you have any questions about this Former Participant Rollover Form, please call the Settlement Administrator at [phone number]. The Settlement Administrator will provide advice only regarding completing this form and will not provide financial, tax or other advice concerning the Settlement. You therefore may want to consult with your financial or tax advisor. Information about the status of the approval of the Settlement and the Settlement administration is available on the settlement website, [www.settlementwebsite.com].

You are eligible to receive a payment from a class action settlement. The Court has preliminarily approved the class settlement of *Brotherston, et al. v. Putnam Investments, LLC, et al.*, Civil Action No. 15-13825-WGY (D. Mass.). That Settlement provides allocation of monies to the individual accounts of certain persons who participated in the Putnam Retirement Plan ("Plan") at any time between November 13, 2009 and the date of the final approval of the class settlement by the court ("Class Members"). Class Members who had a Plan account with a balance greater than $0.00 during the Class Period but who do not have a Plan account with a balance greater than $0.00 as of the date of Date of Preliminary Approval ("Former Participants") will receive their allocations in the form of a check or in the form of a rollover if and only if they mail a valid Former Participant Rollover Form postmarked on or before [RETURN DATE SET FORTH IN PRELIMINARY APPROVAL ORDER] to the Settlement Administrator with the required information to effectuate the rollover. For more information about the Settlement, please see the Notice Of Class Action Settlement And Fairness Hearing, visit [www.settlementwebsite.com], or call [phone number].

Because you are a Former Participant in the Plan, you must decide whether you want your payment (1) sent payable to you directly by check or (2) to be rolled over into another eligible retirement plan or into an individual retirement account ("IRA"). To elect a rollover, please complete and mail this Former Participant Rollover Form postmarked on or before [RETURN DATE SET FORTH IN PRELIMINARY APPROVAL ORDER] to the Settlement Administrator. If you do not return this form, your payment will be sent to you directly by check.

## PART 2: PARTICIPANT INFORMATION

First Name                                             Middle   Last Name

Mailing Address

City                                                                                     State   Zip Code

Home Phone                                    Work Phone or Cell Phone

Participant's Social Security Number          Participant's Date of Birth

M  M          D  D          Y  Y  Y  Y

Email Address

**[FORMER PARTICIPANT ROLLOVER FORM CONTINUES ON THE NEXT PAGE]**

## PART 3: BENEFICIARY OR ALTERNATE PAYEE INFORMATION (*IF APPLICABLE*)

☐ Check here if you are the **surviving spouse or other beneficiary** for the Former Participant and the Former Participant is deceased. **Documentation must be provided showing current authority of the representative to file on behalf of the deceased**. Please complete the information below and then continue on to Parts 4 and 5 on the next page.

☐ Check here if you are an alternate payee under a qualified domestic relations order (QDRO). The Settlement Administrator may contact you with further instructions. Please complete the information below and then continue on to Parts 4 and 5 on the next page.

First Name                                      Middle    Last Name

Mailing Address

City                                                                                  State    Zip Code

Home Phone                          Work Phone or Cell Phone

Participant's Social Security Number         Participant's Date of Birth

Email Address                                   M M        D D      Y Y Y Y

**[FORMER PARTICIPANT ROLLOVER FORM CONTINUES ON THE NEXT PAGE]**

## PART 4: PAYMENT ELECTION

**Direct Rollover to an Eligible Plan** – Check only one box below and complete the Rollover Information Section below:

☐ Government 457(b)          ☐ 401(a)/401(k)          ☐ 403(b)

☐ Direct Rollover to a Traditional IRA          ☐ Direct Rollover to a Roth IRA (subject to ordinary income tax)

### Rollover Information:

Company or Trustee's Name (to whom the check should be made payable)

Company or Trustee's Mailing Address 1

Company or Trustee's Mailing Address 2

Company or Trustee's City          State          Zip Code

Your Account Number          Company or Trustee's Phone Number

## PART 5: SIGNATURE, CONSENT, AND SUBSTITUTE IRS FORM W-9

UNDER PENALTIES OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA, I CERTIFY THAT ALL OF THE INFORMATION PROVIDED ON THIS FORMER PARTICIPANT ROLLOVER FORM IS TRUE, CORRECT, AND COMPLETE AND THAT I SIGNED THIS FORMER PARTICIPANT ROLLOVER FORM.

1. The Social Security number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me); and

2. I am not subject to back up withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding; and

3. I am a U.S. person (including a U.S. resident alien).

M M   D D   Y Y Y Y

**Participant Signature**          **Date Signed** *(Required)*

Note: If you are subject to backup withholding, you must cross out item 2 above. The IRS does not require your consent to any provision of this document other than this Form W-9 certification to avoid backup withholding.

# Exhibit B

<u>UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS</u>

# If you are currently a participant in the Putnam Retirement Plan (the "Plan") or were a participant in the Plan at any time from November 13, 2009 to the present, you are a part of a class action settlement.

IMPORTANT
PLEASE READ THIS NOTICE CAREFULLY
THIS NOTICE RELATES TO THE PENDENCY OF A CLASS ACTION LAWSUIT AND, IF YOU ARE A
SETTLEMENT CLASS MEMBER, CONTAINS IMPORTANT INFORMATION ABOUT YOUR RIGHTS TO
OBJECT TO THE SETTLEMENT

*A Federal Court authorized this notice.  You are not being sued.*
*This is not a solicitation from a lawyer.*

- A Settlement has been reached in a class action lawsuit against Putnam Investments, LLC ("Putnam"), Putnam Investment Management, LLC, Putnam Investor Services, Inc., the Putnam Benefits Investment Committee, the Putnam Benefits Oversight Committee, and Robert Reynolds (collectively, "Defendants"). The class action lawsuit involves whether or not Defendants complied with their duties under the Employee Retirement Income Security Act of 1974 ("ERISA") in managing the Plan.

- You are included as a Class Member if you are currently a Plan participant, or if you were a Plan participant at any time from November 13, 2009 to the present (the "Class Period").

- Putnam has agreed to pay $12,500,000.00 into a settlement fund.  Class Members are eligible to receive a pro rata share of the amount in the settlement fund remaining after payment of administrative expenses, any attorneys' fees and costs that the Court awards to Plaintiffs' lawyers, and any service award to Plaintiffs.  The amount of each Class Member's payment is based on a plan of allocation that takes into account each Class Member's investment in proprietary and non-proprietary funds in the Plan.  Payments to current Plan participants will be deposited into their respective Plan accounts.  Payments to former Plan participants will be made directly to former Plan participants by check, or former Plan participants can instead elect to receive their payment through a rollover to a qualified retirement account.

- Please read this notice carefully. Your legal rights are affected whether you act, or don't act.

| THIS TABLE CONTAINS A SUMMARY OF YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **OBJECT BY [DATE]** | You may write to the Court if you don't like the Settlement to explain why you object. |
| **ATTEND A HEARING** | You may ask to speak in Court about the fairness of the Settlement. |
| **DO NOTHING** | You will get a share of the Settlement benefits to which you are entitled and will give up your rights to sue Defendants about the allegations in this case. |

## BASIC INFORMATION

| **1. What is this notice and why should I read it?** |
| --- |

A court authorized this notice to let you know about a proposed settlement of a class action lawsuit called *Brotherston, et al. v. Putnam Investments, LLC, et al.,* D. Mass. Civil Action No. 15-13825-WGY (the "Action"), brought on behalf of the Class Members, and pending in the United States District Court for the District of Massachusetts.  You need not live in Massachusetts to get a benefit under the Settlement. This notice describes the Settlement. Please read this notice carefully.  Your rights and options—**and the deadlines to exercise them**—are explained in this notice.  Please understand that if you are a settlement class member, your legal rights are affected regardless of whether you act.

| **2. What is a class action lawsuit?** |
| --- |

A class action is a lawsuit in which one or more plaintiffs—in this case, one current and one former Plan participant ("Plaintiffs")—sue on behalf of a group of people who allegedly have similar claims. After the Parties reached an agreement to settle this case, the Court granted preliminary approval of the Settlement and preliminarily determined that the case should be treated as a class action for settlement purposes. Among other things, this preliminary approval permits Class Members to voice their support of or opposition to the Settlement before the Court makes a final determination as whether to approve the Settlement. In a class action, the Court resolves the issues for all class members.

## THE CLAIMS IN THE LAWSUIT AND THE SETTLEMENT

| **3. What is this lawsuit about?** |
| --- |

Plaintiffs allege that the Defendants breached their fiduciary duties and committed prohibited transactions under ERISA by including investment options in the Plan that are affiliated with Putnam ("Proprietary Funds").  A more complete description of what Plaintiffs allege is in the Second Amended Complaint, which is available on the Settlement Website at [ ].

Defendants deny Plaintiffs' claims of wrongdoing or liability against them, and assert that their conduct was lawful.  Defendants are settling the Action solely to avoid the expense, inconvenience, and inherent risk and disruption of litigation.

| **4. Why is there a Settlement?** |
| --- |

In 2017, the district court granted judgment in favor of the Defendants on Plaintiffs' claims in connection with a motion for summary judgment and seven-day bench trial.  On appeal, the First Circuit reversed the district court's decisions for certain claims, which have now been remanded to the district court for further proceedings.  The district court has not decided in favor of either side in the case with respect to these remaining claims.  Instead, both sides agreed to a Settlement. That way, both sides avoided the cost and risk of additional trial proceedings, and the affected current and former Plan participants will get substantial benefits that they would not have received if Plaintiffs had litigated the remanded claims and lost. The Plaintiffs and their attorneys believe the Settlement is in the best interests of the Class Members.

## WHO'S INCLUDED IN THE SETTLEMENT?

| 5. How do I know if I am in the Settlement Class? |
|---|

The Court decided that everyone who fits this description is a member of the **Settlement Class**:

All participants and beneficiaries of the Plan at any time during the period from November 13, 2009 to the date on which the Settlement is finally approved by the Court.

The Court has excluded from the Settlement Class the Defendants and the members of the Putnam Benefits Investment Committee, the Putnam Benefits Oversight Committee, and the Putnam Investments, LLC Board of Directors.

If you meet the definition above, you are a member of the Settlement Class.

## THE SETTLEMENT BENEFITS

| 6. What does the Settlement provide? |
|---|

Putnam has agreed to pay $12,500,000 into a Qualified Settlement Fund to resolve the claims of Class Members. The Net Settlement Amount (after deduction of any Court-approved expenses associated with administering the Settlement, attorney's fees and costs, and service awards to Plaintiffs) will be allocated to Class Members according to the plan of allocation set forth in the Settlement Agreement. Under the plan of allocation, monies will be distributed to Class Members pro rata based on their account balances during the Class Period, with account balances invested in Proprietary Funds (affiliated with Putnam) weighted more heavily than other investments to reflect the nature of the allegations in the lawsuit.

If you are a Class Member (see Question No. 5) and you are currently a Plan participant or beneficiary, your payment will be deposited into your Plan account in accordance with your investment elections for new contributions.  If you have not made any such elections, your payment will be invested in the Plan's qualified default investment alternative. If you are an Alternate Payee of a current Plan participant pursuant to a Qualified Domestic Relations Order, your portion of the Settlement will be distributed pursuant to the terms of that Order.

If you are a Class Member and you **_previously_** participated in the Plan but no longer do so (or you are a Beneficiary or an Alternate Payee of such a Class Member), then you will receive a payment under the Settlement directly in the form of a check.  You do not have to submit a claim to receive a payment under the Settlement.  If, however, you would prefer to receive your settlement payment through a rollover to a qualified retirement account, you must complete, sign, and mail the enclosed Former Participant Rollover Form by [RETURN DATE SET FORTH IN PRELIMINARY APPROVAL ORDER].

# HOW TO GET BENEFITS

### 7. How do I get benefits?

Class Members do not have to submit claim forms in order to receive settlement benefits.

The benefits of the Settlement will be distributed automatically once the Court approves the Settlement, either to Class Members' Plan accounts (for current Plan participants) or by check or rollover. (See Question No. 6.)  **Former Plan participants who would prefer to receive their settlement payment through a rollover to a qualified retirement account must complete, sign, and mail the enclosed Former Participant Rollover Form by [RETURN DATE SET FORTH IN PRELIMINARY APPROVAL ORDER].**  Former Plan participants who fail to complete, sign, and mail their Former Participant Rollover Form will receive their Settlement distribution by check.

### 8. When will I get my payment?

If you are a current Plan participant or beneficiary, then you will receive your pro rata share of the $12,500,000 in the form of a deposit into your Plan account effective no later than forty (40) days after the Settlement has received final approval and becomes effective. The hearing to consider the final fairness of the Settlement is scheduled for [Fairness Hearing, 2020].  Any Alternate Payees of current Plan participants will also receive their payment within 40 days, in accordance with the terms of their Qualified Domestic Relations Order.

If you are a former Plan participant (or a Beneficiary or Alternate Payee of such participant) who timely submits a Former Participant Rollover Form, the Settlement Administrator will effect a rollover of your pro rata share of the $12,500,000 to your qualified retirement account selected in that Form within 40 days after the Settlement has received final approval and becomes effective.  If you are a former Plan participant (or a Beneficiary or Alternate Payee of such participant) who does <u>not</u> submit a Former Participant Rollover Form, a check will be issued to you within the same 40 day period.

All checks will expire and become void 120 days after they are issued, if they have not been cashed.

These payments may have certain tax consequences; you should consult your tax advisor.

# THE LAWYERS REPRESENTING YOU

### 9. Who represents the Settlement Class?

For purposes of the Settlement, the Court has appointed lawyers from the law firm of Nichols Kaster, PLLP and Block & Leviton LLP as Class Counsel.  If you want to be represented by your own lawyer, you may hire one at your own expense.  In addition, the Court appointed Plaintiffs John Brotherston and Joan Glancy to serve as the Class Representatives.  They are also Class Members.

Subject to approval by the Court, Class Counsel has proposed that up to $25,000 may be paid to each of the Plaintiffs as the Class Representatives in recognition of the time and effort they expended on behalf of the Settlement Class.  The Court will determine the proper amount of any award to Plaintiffs.   The Court may award less than that amount.

### 10. How will the lawyers be paid?

From the beginning of the case, which was filed in November 2015, to the present, Class Counsel have not received any payment for their services in prosecuting the case or obtaining the Settlement, nor have they been reimbursed for any out-of-pocket expenses they have incurred.  Class Counsel

will apply to the Court for an award of reasonable attorneys' fees (not to exceed one-third of the $12,500,000 settlement amount) plus their costs and expenses incurred in prosecution of the case. Defendants have agreed not to object to such an application.  The Court will determine the proper amount of any attorneys' fees and expenses to award Class Counsel.

Any attorneys' fees and costs awarded by the Court will be paid to Class Counsel from the $12,500,000 settlement fund.  The Class Members will not have to pay anything out-of-pocket toward the fees or costs of Class Counsel.

## YOUR RIGHTS AND OPTIONS

### 11. What is the effect of final approval of the Settlement?

If the Court grants final approval of the Settlement, a final order and judgment dismissing the case will be entered in the Action.  Payments under the Settlement will then be processed and distributed. The release by Class Members will also take effect.  All members of the Settlement Class will release and forever discharge Defendants, Former Defendants and each of the Released Parties from any and all Released Claims (as defined in the Settlement Agreement).  Please refer to Paragraphs 1.39 and 1.48 of the Settlement Agreement for a full description of the claims and persons that will be released upon final approval of the Settlement.

No Class Member will be permitted to continue to assert Released Claims in any other litigation against Defendants or the other persons and entities covered by the Release.  If you object to the terms of the Settlement Agreement, you may notify the Court of your objection.  (See Table on page 1 of this Notice.)  If the Settlement is not approved, the case will proceed as if no settlement had been attempted or reached.

If the Settlement is not approved and the case resumes, there is no guarantee that members of any certified class will recover more than is provided for under the Settlement, or anything at all.

### 12. What happens if I do nothing at all?

If you do nothing, you will release any claims you may have against Defendants, Former Defendants or the Released Parties concerning the conduct Plaintiffs allege in their complaint.  (See Question No. 11.)  You may also receive a payment as described in Question No. 6.

### 13. How do I get out of the Settlement?

If the Court approves the Settlement, you will be bound by it and will receive whatever benefits you are entitled to under its terms.  You cannot exclude yourself from the Settlement, but you may notify the Court of your objection to the Settlement.  (See Question No. 15.)  If the Court approves the Settlement, it will do so under Federal Rule of Civil Procedure 23(b)(1), which does not permit Class Members to opt-out of the Class.

### 14. Can I sue Putnam for the same thing later?

No.  If the Court approves the Settlement, you will have given up any right to sue Putnam for the claims being resolved by this Settlement.

**15. How do I object to the Settlement?**

You can object to the Settlement if you don't like any part of it. If you object, you must give the reasons why you think the Court should not approve the Settlement. The Court will consider your views. Your objection to the Settlement must be postmarked no later than [OBJECTION DEADLINE, 2020] and must be sent to the Court and the attorneys for the Parties at the addresses below:

| Court | Class Counsel | Defendant's Counsel |
|---|---|---|
| Clerk of the Court<br>United States District Court<br>District of Massachusetts<br>John Joseph Moakley<br>    U.S. Courthouse<br>1 Courthouse Way,<br>    Suite 2300<br>Boston, MA 02210 | Kai Richter<br>NICHOLS KASTER, PLLP<br>4600 IDS Center<br>80 S 8th Street<br>Minneapolis, MN 55402 | James R. Carroll<br>Eben P. Colby<br>Michael S. Hines<br>SKADDEN, ARPS, SLATE,<br>    MEAGHER & FLOM LLP<br>500 Boylston Street<br>Boston, MA 02116 |

The objection must be in writing and should include the case name *Brotherston, et al. v. Putnam Investments, LLC, et al.,* Civil Action No. 15-13825-WGY; as well as include your (a) name; (b) address; (c) a statement that you are a member of the Settlement Class; (d) the specific grounds for the objection (including all arguments, citations, and evidence supporting the objection); (e) all documents or writings that you desire the Court to consider (including all copies of any documents relied upon in the objection); (f) your signature; and (g) a notice of intention to appear at the Fairness Hearing (if applicable).   (If you are represented by counsel, you or your counsel must file your objection through the Court's CM/ECF system.)  The Court will consider all properly filed comments from Settlement Class Members.  If you wish to appear and be heard at the Fairness Hearing in addition to submitting a written objection to the Settlement, you or your attorney should say so in your written objection.

Class Counsel will file with the Court its request for attorneys'
fees two weeks prior to [OBJECTION DEADLINE, 2020], and post it on the Settlement Website.

## THE COURT'S FAIRNESS HEARING

| **17. When and where will the Court hold a hearing on the fairness of the Settlement?** |
| --- |

A Fairness Hearing has been set for [DATE] at [TIME], before The Honorable William G. Young at the John Joseph Moakley U.S. Courthouse, 1 Courthouse Way, Boston, Massachusetts 02210 in [COURTROOM].   At the hearing, the Court will hear any comments, objections, and arguments concerning the fairness of the proposed Settlement, including the amount requested by Class Counsel for attorneys' fees and costs and the service awards to Plaintiffs as the Class Representatives.   You do not need to attend this hearing.  You also do not need to attend to have an objection considered by the Court.  (See Question No. 15.)

**Note:**  The date and time of the Fairness Hearing are subject to change by Court Order, but any changes will be posted at [www.[website].com].

| **18. Do I have to come to the Fairness Hearing?** |
| --- |

No. Class Counsel will answer any questions the Court may have.  But you are welcome to come at your own expense.  If you send an objection, you don't have to come to Court to talk about it.  As long as any written objection you choose to make was filed and mailed on time and meets the other criteria described in the Preliminary Approval Order, the Court will consider it.  You may also pay another lawyer to attend, but you don't have to.

| **19. May I speak at the hearing?** |
| --- |

You may ask the Court for permission to speak at the hearing concerning any part of the proposed Settlement by following the instructions in Question No. 15 above.

## GETTING MORE INFORMATION

| **20. Where can I get additional information?** |
| --- |

This notice provides only a summary of the matters relating to the Settlement.  For more detailed information, you may wish to review the Settlement Agreement.  You can view the Settlement Agreement and get more information at [WWW.WEBSITE.COM].  You can also get more information by writing to the Settlement Administrator at [ ] or calling toll-free [ ].  The Agreement and all other pleadings and papers filed in the case are available for inspection and copying during regular business hours at the office of the Clerk of the U.S. District Court located at the John Joseph Moakley U.S. Courthouse, One Courthouse Way, Suite 2300, Boston, Massachusetts 02210.

**PLEASE DO <u>NOT</u> CONTACT THE COURT, THE JUDGE, OR PUTNAM WITH QUESTIONS ABOUT THE SETTLEMENT.**